UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Middesk, Inc.**<br><br>             **Plaintiff,**<br><br>        v.<br><br>**Osiris Ratings, Inc. d/b/a Baselayer, and**<br><br>**Jonathan Awad, and**<br><br>**Josh Leviloff,**<br>             **Defendants.** | CIVIL ACTION NO. 1:25-CV-02677<br><br>**REPLY IN SUPPORT OF ORDER TO SHOW CAUSE** |

**PLAINTIFF MIDDESK, INC.'S REPLY
IN SUPPORT OF ORDER TO SHOW CAUSE**

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................................ 1

NATURE OF THE DISPUTE ............................................................................................................ 2

ARGUMENT ....................................................................................................................................... 3

    I.    Good Cause for Expedited Discovery Exists Because Initiating this Lawsuit Has Immediately Unearthed Even More Troubling Facts Confirming Defendants' Misappropriation of Trade Secrets and Spoliation. ........................................................... 3

    II.   Admissions Within Awad's Own Declaration Supports a Finding of Good Cause for Expedited Discovery ............................................................................................................ 5

    III.  Self-Serving Statements Within Awad's Declaration Cannot Rebut the Motion ............... 7

    IV.  The Cases and Arguments Cited by Defendants Are Inapposite. ....................................... 8

    V.   The Appropriate Scope of Computer Forensics................................................................. 10

    VI.  Middesk's Requested Relief Addresses Awad and Baselayer's Privacy Concerns. ........ 12

    VII. Middesk Has No Objection to Defendants Serving Reasonable Expedited Discovery. .. 12

CONCLUSION.................................................................................................................................. 13

CERTIFICATE OF COMPLIANCE WITH THE WORD LIMIT ............................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Enneagram Personality Types, Inc. v. Kajtezovic*,
 No. 24-CV-06747, 2025 WL 718977 (W.D.N.Y. 2025) ........................................................5, 8

*Frees, Inc. v. McMillian*,
 2007 U.S. Dist. LEXIS 4343, 2007 WL 184889 (W.D. La. 2007), *aff'd*, 2007
 U.S. Dist. LEXIS 32736, 2007 WL 13088388 (W.D. La. 2007) ...........................................7, 8

*Monsanto Co. v. Woods*,
 250 F.R.D. 411 (E.D. Mo. 2008) ................................................................................................6

*N. Atl. Instruments, Inc. v. Haber*,
 188 F.3d 38 (2d Cir. 1999) .........................................................................................................8

*N. Atl. Operating Co. v. Evergreen Distributors, LLC*,
 293 F.R.D. 363 (E.D.N.Y. 2013) ...............................................................................................6

*Stern v. Cosby*,
 246 F.R.D. 453 (S.D.N.Y. 2007) ...............................................................................................6

**Other Authorities**

Local Civil Rule 7.1 ..........................................................................................................................14

**INTRODUCTION**

This is not a typical trade secrets matter involving an isolated incident of misappropriation by a lower-level employee. This case involves a calculated plot to steal and use Middesk's trade secrets by the CEO of a direct competitor. Since filing this case, Middesk has received information from Defendant Leviloff that Defendants Awad and Baselayer chose not to disclose to the Court. Leviloff asserts, under penalty of perjury, in a declaration attached as Exhibit A, that in February 2025:

> **Awad told me over the phone that he would pay me a significant sum of money (it was either $10,000 or $20,000 but I don't remember the exact figure) if I sent him a list of Middesk's prospects and customers from Salesforce**.[1]

Leviloff further admitted that he has, in fact, shared with Awad and Baselayer "Middesk's **pricing information** with Awad **and prospects** that I knew were actively in conversations with Middesk."[2]

Leviloff also confirmed Awad's direct theft of Middesk's trade secrets:

> When I started working at Baselayer, Awad continued to exclaim that **when he left Middesk he had taken "everything" with him**. Awad claimed to have taken customer lists, and details of how the product was built. Awad was proud of the fact he did this.[3]

Further, buried between the apologies and handwaving excuses, Awad made the following admissions in his declaration in opposition to the Motion:

- Awad emailed/downloaded Middesk's documents to his personal email and Google Drive before leaving Middesk.[4]

- Baselayer and Awad maintained those documents for years, including when Awad launched Baselayer.[5]

---

[1] *See* Exhibit A, Declaration of Josh Leviloff, ¶ 3.
[2] *Id.* ¶ 5.
[3] *Id.* ¶ 6.
[4] Dkt. 33-1 ¶¶ 22-24.
[5] Dkt. 33-1 ¶¶ 22-24.

1

- After receiving a preservation notice from Middesk's counsel in March 2025, Awad deleted relevant documents and information.[6]

Of similar importance are the things that Defendants have chosen *not* to address. Namely:

- Defendants do not and cannot dispute that Awad solicited Leviloff while he was still a Middesk employee to misappropriate Middesk's confidential information before leaving to join Baselayer.[7]

- Defendants do not dispute that Leviloff, in fact, shared the Middesk's confidential information with Baselayer and Awad.[8]

This evidence provided not by Middesk, but by Defendants Leviloff, Awad, and Baselayer surpasses *any* standard for this Court to order expedited discovery and computer forensics.

## NATURE OF THE DISPUTE

Since receiving the Complaint and Order to Show Cause (the "Motion"), Defendant Leviloff agreed to cooperate with expedited discovery and computer forensics.[9] Awad and Baselayer have taken a different approach. They have offered expedited discovery and forensics that—according to Middesk's forensics expert Julian Ackert at iDS—would leave significant gaps based on the facts known today. For example, Awad and Baselayer refuse to agree to expedited discovery that includes (i) depositions or (ii) any document requests or interrogatories directed to Defendant Baselayer.[10] Further, Awad and Baselayer excluded from any offered computer forensics: 1) Awad's personal cell phone; 2) Awad's personal computer; and 3) Awad's personal email.[11] These refusals are particularly concerning given that Awad has now admitted that he still

---

[6] Dkt. 33-1 ¶ 23.
[7] Dkt. 33-1.
[8] Dkt. 33-1.
[9] Dkt. 29 ¶ 1.
[10] Exhibit B, April 3, 2025 Email from Matt Gorman.
[11] *Id.*

has Middesk files on his personal Google Drive and had them on Baselayer's Google Drive, both of which can be accessed by all three of the devices at issue. *Id.*

On April 8, 2025, through a Stipulated Temporary Restraining Order, Leviloff also agreed to broad relief in which he is restrained from any use of Middesk's information and documents.[12] On April 8, 2025, Awad and Baselayer also agreed to a Stipulated Temporary Restraining Order; however, their counsel demanded significant caveats that allow Awad and Baselayer to use Middesk information unless they "reasonably understand [it] to constitute trade secrets or confidential or proprietary information."[13] Given Awad's conduct to date and the admissions within the Awad Declaration and Leviloff Declaration, Middesk understandably has serious concerns about how Awad's personal interpretation of that provision. Expedited discovery is needed to ensure that Middesk can investigate and fully identify to the Court the Baselayer documents, products, and services that may be infected with Middesk's trade secrets and therefore included within a preliminary injunction. For these reasons, a dispute exists about the appropriate scope of expedited discovery and computer forensics.[14]

## ARGUMENT

**I.    Good Cause for Expedited Discovery Exists Because Initiating this Lawsuit Has Immediately Unearthed Even More Troubling Facts Confirming Defendants' Misappropriation of Trade Secrets and Spoliation.**

On February 28, 2025, counsel for Middesk sent Baselayer and Awad preservation notice informing Defendants to "preserve and maintain" and "refrain from destroying" documents and information "that may relate in any way . . . to Middesk's trade secrets, proprietary or confidential

---

[12] Dkt. 29-1.
[13] Dkt. 28-1 ¶¶ 1-2.
[14] Exhibit C, April 6, 2025 Email from Justin Victor.

3

information, and use or disclosure of same."[15]  On March 31, 2025, Middesk filed a Verified Complaint and Motion.

On April 3, 2025, and only after Middesk initiated this action, counsel for Awad and Baselayer disclosed to Middesk that: 1) Awad maintained Middesk files for years on his personal Google drive; and 2) Awad's Baselayer computer contains Middesk information.[16]

On the other hand, on April 3, 2025, Leviloff provided Middesk a declaration under penalty of perjury concerning his recruitment to Baselayer by Awad.  This declaration includes the following new revelations:

*First*, in February 2025 Awad "**asked [Leviloff] to get him a list of Middesk's customers and prospects. Awad told me over the phone that he would pay me a significant sum of money (it was either $10,000 or $20,000 but I don't remember the exact figure) if I sent him a list of Middesk's prospects and customers from Salesforce**."[17]  Julian Ackert's Declaration confirms that Leviloff accessed Salesforce information, including information related to prospects and customers, right before his departure from Middesk.[18]

*Second*, Awad instructed Leviloff—while Awad knew Leviloff was still employed by Middesk—to relay Middesk's trade secrets to Awad.[19]  Leviloff confirmed that he did, in fact, gather the information requested by Awad, for the benefit of Baselayer.[20]

*Third*, Awad instructed Leviloff not to tell anyone at Middesk he was going to join Baselayer.[21]

---

[15] Exhibit D, February 28, 2025 Letter.
[16] Exhibit B.
[17] Exhibit A ¶ 3.
[18] Dkt. 1-3 ¶¶ 45-52.
[19] Exhibit A ¶ 2.
[20] *Id*.
[21] *Id*. ¶ 3.

4

*Fourth*, in March 2025, Leviloff disclosed to Awad and Baselayer Middesk's confidential pricing information and Middesk's active prospects.[22]

*Fifth*, other Baselayer employees, in addition to Awad, also solicited information related to Middesk's product performance, and Leviloff provided that information to Baselayer.[23]

*Sixth*, Awad told Leviloff that Awad took "**everything**" with him when he left Middesk including, customer lists and details concerning how the product was built.[24] Awad was "**proud**" he did this.[25]

This new evidence is consistent with the allegations in Middesk's Verified Complaint and further supports the arguments within the Motion.

## II.    Admissions Within Awad's Own Declaration Support a Finding of Good Cause for Expedited Discovery.

Awad's own declaration provides some of the strongest support for the expedited discovery requested by Middesk. Within Awad's declaration are hidden admissions that Awad personally and recently: (i) *deleted* relevant Middesk documents and information from a Baselayer Google drive and (ii) sifted through Leviloff's Baselayer computer and email.[26] Awad did this despite an explicit instruction from Middesk's counsel **not** to destroy any relevant documents, and despite the fact that Baselayer had already retained counsel in this matter.[27]

The deletion of relevant documents is inexcusable and reason alone to fine good cause to grant expedited discovery and computer forensics. *See, e.g.*, *Enneagram Personality Types, Inc. v. Kajtezovic*, No. 24-CV-06747, 2025 WL 718977, at *6 (W.D.N.Y. 2025) (granting plaintiff's

---

[22] *Id*. ¶ 5.
[23] *Id*. ¶ 5.
[24] *Id*. ¶ 6.
[25] *Id*.
[26] Dkt. 33-1 ¶ 23, ¶ 45.
[27] Exhibit D.

5

motion for expedited discovery in light of spoliation risk: "[p]laintiff has also shown a risk of spoliation in that the domain registrations for two of the Four Websites were updated after [p]laintiff's counsel indicated its intention to file the instant motion for expedited discovery"); *N. Atl. Operating Co. v. Evergreen Distributors, LLC*, 293 F.R.D. 363, 370 (E.D.N.Y. 2013) (granting request for expedited discovery, including depositions, where plaintiff's initial investigation demonstrated defendants' potential destruction of evidence).

Pursuant to the Supplemental Declaration of Julian Ackert, who has over 20 years of experience in consulting and litigation technologies that focus on electronic discovery and computer forensics, expedited discovery and computer forensics are needed as "**as soon as possible**, as information in the audit log related to the access of and deletion of those Middesk files may also be deleted in short order."[28]

Defendants seem to argue that Awad's deliberate destruction of evidence weighs in his favor. It does not. His actions "could very well have endangered the integrity of the judicial process," *Stern v. Cosby*, 246 F.R.D. 453, 458 (S.D.N.Y. 2007), and impaired Middesk's ability to uncover the extent of damage caused by him and Baselayer, which is itself irreparable harm. *See Monsanto Co. v. Woods*, 250 F.R.D. 411, 414 (E.D. Mo. 2008) (granting expedited discovery because "plaintiffs have shown the potential for spoliation of evidence and . . . [t]he loss of this evidence would result in irreparable injury to plaintiffs' claims").

Denying Middesk's Motion when Awad improperly destroyed evidence would reward conduct that should be sanctioned and put important evidence and data at immediate risk of being lost forever.[29]

---

[28] Exhibit E, April 10, 2025 Supplemental Declaration of Julian Ackert ¶ 5.
[29] *Id*.

6

### III. Self-Serving Statements Within Awad's Declaration Cannot Rebut the Motion.

In the face of a Verified Complaint, two declarations from Julian Ackert, and the declaration of a current Baselayer employee (Leviloff), Awad submits a single self-serving declaration to oppose Middesk's Motion. The declaration is without reference to computer forensics or a computer forensics consultant. Throughout, Awad hedges on key representations, such as: "to the best of my recollection, I did not open the Middesk folder that was on my Baselayer Google Drive, nor did I share it with anyone."[30]

"**A party cannot, by his own self-serving statements, deny the other party access to potentially relevant information**." *See Frees, Inc. v. McMillian*, 2007 U.S. Dist. LEXIS 4343, 2007 WL 184889, *2 (W.D. La. 2007) (ordering computer forensics of defendant's computer where plaintiff attempted to avoid computer forensics through a "self-serving" declaration), *aff'd*, 2007 U.S. Dist. LEXIS 32736, 2007 WL 13088388 (W.D. La. 2007).

In *Frees*, the plaintiff discovered through the company's own internal investigation that a former employee had taken proprietary information while still employed. *Id*. *3. In granting the plaintiff's request for computer forensics, the court expressly rejected two of the exact arguments Awad makes here. First, the court rejected the defendant's "self-serving" affidavit denying use the trade secrets in light of other evidence. *Id*. at *5. Second, the court made clear that the passage of "two years" since the initial alleged theft of the trade secrets should not prevent an order of computer forensics. *Id*. ("Moreover, as *Frees* points out, **the fact that the computers were allegedly acquired two years after the misappropriation is said to have occurred in no way forecloses the existence of the pilfered data, or information related to such data, on the**

---

[30] Dkt. 33-1 ¶ 24; see also ¶ 21 ("To the best of my recollection, the Files were related to customer deals…"); ¶ 21 ("I do not recall 'editing' this document, nor do I recall the specific details of this document…"); ¶ 22 ("From what I can recall…").

7

**computers**."). Further, the court in *Frees* ordered computer forensics based on the *assumption* that the computers ordered for forensic imaging were the "most likely" places where the plaintiff's data was downloaded or stored. *Id*. Here, Awad's admissions provide evidence that exceeds "most likely": it is not in dispute where Middesk's information exists and has existed.

### IV. The Cases and Arguments Cited by Defendants Are Inapposite.

The arguments and decisions cited by Baselayer and Awad do not support denying Middesk's Motion. First, Defendants argue that "Plaintiff overstates the extent to which courts in the Southern District have rejected the *Notaro* test in favor of the more flexible "good cause" standard."[31] Not so. Just last month, a court in a sister district observed that the "majority of courts in the Second Circuit apply the more flexible 'good cause' standard when evaluating motions for expediting discovery." *Enneagram Personality Types, Inc. v. Kajtezovic*, 24-CV-06747, 2025 WL 718977, at *4 (W.D.N.Y. Mar. 6, 2025). But ultimately, as established in Middesk's moving papers, the standard applied by the Court is of no moment because Middesk meets both the good cause standard and the *Notaro* test.

Even considering factors under the *Notaro* test, which are more appropriate when deciding a fully briefed preliminary injunction after expedited discovery, expedited discovery is warranted. Take, for example, Middesk's likelihood of success on the merits for Middesk's trade secret claim. The elements of trade secret misappropriation under New York law are 1) that Plaintiff "possessed a trade secret," and 2) that Defendant "used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43-44 (2d Cir. 1999).

---

[31] Dkt. 33 at 7.

Here, Middesk has established a convincing likelihood of success on the merits against Defendants Awad and Baselayer given the recent admissions by Awad that: 1) he still has possession of Middesk's documents from over two years ago and had them while he launched Baselayer; 2) he sent himself those documents or downloaded them while he was still employed by Middesk; and 3) Awad launched Baselayer while he had possession of Middesk's documents. The Leviloff Declaration takes this "likely" success on the merits to a near certainty and includes sworn testimony that: 1) Leviloff shared Middesk's trade secret information with Awad and Baselayer; 2) that Awad bragged about how he had previously taken "everything" from Middesk, including customer pricing and product development information; and 3) Awad offered Leviloff between $10,000 and $20,000 to steal additional trade secrets and expand what he already had from Middesk. Given these facts, it is critical for Middesk to be allowed to immediately investigate—through expedited discovery and computer forensics—and seek an appropriately tailored preliminary injunction to prevent, the substantial harm of misappropriation that still exists today and the loss of evidence and data through spoliation.

As to the substance of Middesk's actual arguments, Defendants have little to offer. None of the cases cited by Defendants involves the misappropriation of trade secret and confidential information by high-level employees of a competitor, let alone misappropriation by a competitor's CEO. Likewise, none involves circumstances, like here, where a competitor admitted to being in possession of the plaintiff's non-public business information and the record demonstrated that the competitor had actively sought to obtain more. And none involved a situation, like here, where the defendants admitted to recently destroying evidence after receiving a preservation notice.

V. **The Appropriate Scope of Computer Forensics.**

Since filing the Verified Complaint and Motion, Defendants have made key admissions and concessions. In response, Ackert, Middesk's forensic expert from iDS, has prepared a Supplemental Declaration.[32] Based on this new information, specifically the Awad Declaration, admissions by Awad, and the Leviloff Declaration, Ackert identifies known devices and data sources that would need to be examined to adequately evaluate what Middesk documents Awad and Baselayer have taken and used.[33] Ackert explains why gaps still exists and why the limited set of devices and data sources that Defendants have offered for forensic examination are "insufficient to determine the full extent of Middesk data in Mr. Awad's possession and what may have been done with this Middesk data, including access, opening, editing and deleting Middesk data."[34]

Middesk is only requesting computer forensics from sources where the evidence before the Court directly supports a forensics examination.

| Source | Evidence-Based Justification with Citation |
|---|---|
| Awad's Baselayer Google Drive<br><br>Awad's Baselayer Computer | Awad admits as of March 17, 2025 his Baselayer Google Drive contained Middesk documents. Dkt. 33-1 at ¶ 23.<br><br>Awad also admits that after he received a preservation letter from Middesk's counsel he deleted Middesk documents from the Baselayer Google Drive. Dkt. 33-1 at ¶ 23.<br><br>Awad said he took "everything" when he left Middesk. Leviloff Declaration at ¶ 6. |

---

[32] Exhibit E.
[33] *Id.* ¶ 6.
[34] *Id.*

|  |  |
|---|---|
| Awad's Personal Google Drive<br><br>Awad's Personal Computer | Awad admits that he has Middesk files on his personal Google Drive. Dkt. 33-1 at ¶ 23.<br><br>Awad said he took "everything" when he left Middesk. Leviloff Declaration at ¶ 6. |
| Awad's Personal Email | Awad admits he sent himself Baselayer documents to his personal email address. Dkt. 33-1 at ¶ 23.<br><br>Awad said he took "everything" when he left Middesk. Leviloff Declaration at ¶ 6. |
| Awad Baselayer Email | Awad admits as of March 17, 2025 his Baselayer Google Drive contained Middesk documents. Dkt. 33-1 at ¶ 23.<br><br>Awad claimed to have Middesk customer lists and details of how the product was built. Leviloff Declaration at ¶ 6. |
| Awad's personal and/or work cell phone | Awad admits he communicated with Leviloff via text and texted him to access Middesk information to share with Baselayer. Dkt. 33-1 at ¶ 33. |
| Leviloff Baselayer Computer | Awad admits he has possession of Leviloff's Baselayer computer and accessed it after receiving the preservation notice. Dkt. 33-1 at ¶ 45. |
| Leviloff Baselayer Email | Awad admits he has possession of Leviloff's Baselayer email and accessed it after receiving the preservation notice. Dkt. 33-1 at ¶ 45. |

11

## VI. Middesk's Requested Relief Addresses Awad and Baselayer's Privacy Concerns.

Awad and Baselayer raise alleged privacy concerns, even though they admittedly have had possession of Middesk documents for nearly two years and Awad recently deleted relevant documents to this dispute. In other words, Awad and Baselayer invited this scrutiny.

In any event, these concerns are easily addressed through a protective order and computer forensics protocol. Middesk has already drafted and is prepared to circulate a protective order with confidentiality protections that includes attorneys' eyes-only designations. Further, if the Court issues an order on computer forensics, Middesk will also circulate a draft computer forensics protocol. The protocol will allow Defendants: (i) to review the list of documents identified by the examiner before the documents are actually produced to Middesk; and (ii) allow Defendants the opportunity to raise privilege or other appropriately tailored objections to the documents' production. For efficiency, Middesk would prefer the parties agree to use iDS since Defendant Leviloff has agreed to use iDS and using one examiner will minimize costs. However, if a separate computer forensics vendor is needed for Baselayer and Middesk, so be it. That is not and should not be an impediment for the Court to order what Middesk contends are necessary computer forensics related to Awad's and Baselayer's admitted possession and recent deletion of Middesk documents.

## VII. Middesk Has No Objection to Defendants Serving Reasonable Expedited Discovery.

Awad and Baselayer argue that unilateral expedited discovery before the preliminary injunction hearing is "inequitable." Baselayer has not shared any proposed discovery with Middesk, which makes it impossible for Middesk or the Court to evaluate that request. However, Middesk agrees that the preliminary injunction hearing should be fair and agrees Defendants

12

should be permitted to serve appropriately tailored discovery related to Middesk's preliminary injunction motion, as directed by the Court.

## **CONCLUSION**

For these reasons, the Court should order expedited discovery and computer forensics so Middesk can have a complete and fair understanding of the extent of Defendants' misappropriation of Middesk's trade secrets before the preliminary injunction hearing. Plaintiff Middesk has attached a revised Proposed Order.[35]

Dated: April 11, 2025

Respectfully submitted,

/s/ Jason D. Burns
Jason D. Burns
Shira M. Poliak
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9294
Jason.Burns@gtlaw.com
Shira.Poliak@gtlaw.com

Justin K. Victor (*phv*)
Fredric J. Bold, Jr. (*phv*)
Rushton Pope (*phv*)
GREENBERG TRAURIG, LLP
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
(678) 553-2100
Victorj@gtlaw.com
Rick.Bold@gtlaw.com
Rushton.Pope@gtlaw.com

*Counsel for Plaintiff Middesk, Inc.*

---

[35] Exhibit F, Proposed Order.

13

## CERTIFICATE OF COMPLIANCE WITH THE WORD LIMIT

Pursuant to Local Civil Rule 7.1, Plaintiff Middesk, Inc. states that its Reply in Support of Order to Show Cause, filed on April 11, 2025, complies with the 3,500 word limit. The reply is 3,408 words.

Dated:  April 11, 2025                              Respectfully submitted,

                                                    /s/ Jason D. Burns
                                                    Jason D. Burns
                                                    Shira M. Poliak
                                                    GREENBERG TRAURIG, LLP
                                                    One Vanderbilt Avenue
                                                    New York, NY 10017
                                                    (212) 801-9294
                                                    Jason.Burns@gtlaw.com
                                                    Shira.Poliak@gtlaw.com

                                                    Justin K. Victor (*phv*)
                                                    Fredric J. Bold, Jr. (*phv*)
                                                    Rushton Pope (*phv*)
                                                    GREENBERG TRAURIG, LLP
                                                    3333 Piedmont Road NE, Suite 2500
                                                    Atlanta, GA 30305
                                                    (678) 553-2100
                                                    Victorj@gtlaw.com
                                                    Rick.Bold@gtlaw.com
                                                    Rushton.Pope@gtlaw.com

                                                    *Counsel for Plaintiff Middesk, Inc.*