

Fredric J. Bold, Jr.
Tel 678.553.2254
Fax 678.553.2212
Rick.Bold@gtlaw.com

April 28, 2025

<u>**VIA ECF AND E-MAIL**</u>
Hon. P. Kevin Castel
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street,
New York, NY 10007
CastelNYSDChambers@nysd.uscourts.gov

Re: <u>*Middesk, Inc. v. Osiris Ratings, Inc. et al.*</u>, No. 1:25-cv-02677 (PKC)

Dear Judge Castel:

  We represent Plaintiff Middesk, Inc. ("Middesk") in the above-referenced action. We write pursuant to Paragraphs 1.B. and 3.B. of the Court's Individual Practices in Civil Cases. Despite Middesk's repeated attempts to resolve the issues raised in this letter, it has become clear that Defendant Osiris Ratings, Inc. d/b/a Baselayer's ("Baselayer") and Defendant Jonathan Awad's ("Awad") (together, "Defendants") are desperate to slow down and limit the scope of the Court-ordered forensic review. Frustratingly, Defendants continue to relitigate issues already addressed by the Court and despite significant written and Zoom conferral over many days, Defendants will not agree to the forensic discovery that this Court already ordered.

  For example, the Court expressly ruled during the April 15 hearing that Middesk will unilaterally select search terms for the forensic collection/review and that Defendants may not edit or negotiate those terms. Despite that ruling, Defendants, have objected to and are **refusing to run "Middesk"** as a search term without qualifications—even though this is a case about Defendants' misappropriation of Middesk's trade secrets and confidential information. That position is objectively unreasonable, not to mention contrary to the process for search terms that the Court has already ordered.

  This shouldn't be controversial. The entire point of the forensic collection/review is to ensure that Middesk has a complete picture and collection of all the improperly obtained Middesk documents and trade secrets, as well as any improper fruit developed by Defendants as a result of that misappropriation. The protocol is necessary due to Defendant Awad's own admissions of

**Greenberg Traurig, LLP | Attorneys at Law**
Terminus 200 Building | 3333 Piedmont Road NE, Suite 2500 | Atlanta, Georgia 30305 | T +1 678.553.2100 | F +1 678.553.2212

Albany. Amsterdam. Atlanta. Austin. Berlin¬. Boston. Charlotte. Chicago. Dallas. Delaware. Denver. Fort Lauderdale. Houston. Kingdom of Saudi Arabia⸱. Las Vegas. London⸱. Long Island. Los Angeles. Mexico City⁺. Miami. Milan». Minneapolis. Munich¬. New Jersey. New York. Northern Virginia. Orange County. Orlando. Philadelphia. Phoenix. Portland. Sacramento. Salt Lake City. San Diego. San Francisco. São Paulo⸱. Seoul∞. Shanghai. Silicon Valley. Singapore⸱. Tallahassee. Tampa. Tel Aviv*. Tokyo⸱. United Arab Emirates¬. Warsaw~. Washington, D.C. West Palm Beach. Westchester County.

Operates as: ¬Greenberg Traurig Germany, LLP; ⁺Greenberg Traurig Khalid Al-Thebity Law Firm; *A separate UK registered legal entity; +Greenberg Traurig, S.C.; » Greenberg Traurig Studio Legale Associato; ⸱Greenberg Traurig Brazil Consultores em Direito Estrangeiro – Direito Estadunidense; ∞Greenberg Traurig LLP Foreign Legal Consultant Office; "Greenberg Traurig Singapore LLP; ⁺A branch of Greenberg Traurig, P.A., Florida, USA; ≡GT Tokyo Horitsu Jimusho and Greenberg Traurig Gaikokuhojimubegoshi Jimusho; ⸱Greenberg Traurig Limited; ~Greenberg Traurig Nowakowska-Zimoch Wysokiński sp.k..

www.gtlaw.com

April 28, 2025
Page 2

deletion before discovery even started in this matter. Moreover, given the accelerated discovery and case schedule set by the Court, that fast-track schedule makes sense only if this initial forensic collection is robust, complete, and enables Middesk to receive not just the metadata about what Defendants have done but then also the actual documents and information that Defendants misappropriated and used/created to improperly compete with Middesk.

**The severity and scope of Middesk's concerns with Defendants misappropriation grows by the day.** On Friday, April 25, 2025, Defendants **disclosed for the first time** that in addition to Defendant Awad, Baselayer Co-Founder Tim Hyde and Baselayer employee Jeremy Faber had administrative access to the Baselayer Google Drive containing Middesk's "Files." As discussed at the hearing and in prior submissions to the Court, the only way to analyze the use of these documents is to include the Baselayer and personal devices that were used to access the Baselayer Google Drive. This now must include Mr. Hyde and Mr. Faber's devices because a Google Drive is accessed through a device.

For the reasons above and explained in more details below, Middesk respectfully requests that this Court enter Middesk's attached Proposed Forensics Protocol or, in the alternative, set an immediate conference pursuant to Local Civil Rule 37.2 to resolve this pressing dispute. *See* **Exhibit A**, "Middesk's Proposed Forensic Protocol."[1]

**Background**

On March 31, 2025, Middesk filed an Order to Show Cause requesting computer forensics. Dkt. 15.

On April 9, 2025, Defendants Awad and Baselayer filed a response in opposition. Dkt. 33. In this filing, Defendants failed to disclose that in addition to Defendant Awad, Messrs. Hyde and Farber also had administrative access to the Google Drive at issue with Middesk documents and information. Defendants also failed to disclose the number of documents and pages of documents at issue within Defendants' possession.

On April 15, 2025, this Court ordered the forensic examination of every device Middesk identified in its Order to Show Cause (ECF No. 44, at 8:2-11:3), proposed high level terms for a forensic protocol (*Id.* at 11:9-12:21), accepted the Parties' agreed-upon forensic protocol terms into the record (*Id.* at 13:14-16:18); and granted Middesk's request to unilaterally present search terms for the forensic examiner to apply (*Id.* at 16:20-18:22).

The parties agreed on the record to the following terms:

- Defendants would pay for the computer forensics protocol.

---

[1] Middesk has also attached as **Exhibit B** a redlined version of Middesk's Proposed Forensic Protocol comparing Middesk's original draft with the version that Middesk asks the Court to enter, showing the significant changes that Middesk agreed to through the conferral process with Defendants.

- Defendants would engage an independent computer forensics examiner to conduct the protocol.

- The protocol would cover all of the Devices listed within Middesk's revised order, including any Devices that were attached to the Google Drives at issue with Middesk documents and within Baselayer and Awad's possession.

At the hearing, the Court denied Defendants' request to object to Middesk's search terms.

After multiple attempts to resolve the parties' disputes, including a Zoom meet-and-confer, the parties remain at a standstill that has delayed Middesk's Court-ordered computer forensics.

**Why Defendants' Complaints Are Without Merit**

Defendants' complaints with the proposed protocol fall into two main buckets: 1) confidentiality concerns; 2) overbreadth concerns. Both are meritless and have been addressed by Middesk and the Court.

**1) Confidentiality**

The parties have already agreed to a Protective Order in this matter. *See* Dkt. 42. The Protective Order specifically includes "ATTORNEYS EYES ONLY" ("AEO") designations. To the extent that Defendants appropriately believe that a search term hit contains Baselayer information that is confidential and/or proprietary in nature, those documents can be designated AEO. So, confidentiality is a phantom concern.

**2) Appropriate Scope**

Defendants continue to push back, claiming that the scope of the protocol is too broad. They have complained about costs and time, without even seeing a hit report for any search terms. This position also meritless.

First, as Middesk stated on the record, Middesk offered to pay for the computer forensics to avoid any cost concerns and delay. Defendants chose to refuse that offer. Now, they have increased costs to both parties by requiring Court intervention and briefing on the specifics of the protocol. This is exactly what the Court sought to avoid when it denied at the hearing Defendants' request to negotiate and edit Middesk's search terms.

**Second, the protocol is result of and tailored to the evidence before the Court in this case.** It is not Middesk's fault that there is staggering evidence of possession in this case; without any affirmative discovery Defendants have had to concede that Baselayer's systems are infested with Middesk documents and information and that both co-founders of Baselayer had access to Middesk documents and information.

Defendants' own admissions justify a comprehensive protocol and search terms. Defendant Awad submitted a declaration in this matter in which he concedes that he:

April 28, 2025
Page 4

- Has Middesk documents and files on his personal Google Drive.

- Has/had Middesk documents and files on his Baselayer Google Drive.

- Tried to and did delete files after receiving a litigation hold from Middesk's counsel.

- Has Middesk files in his personal email.

- Accessed Leviloff's Baselayer computer and email after receiving a litigation hold in this matter.

Middesk has pressed Defendants to disclose the volume of documents within these Google Drives, but they have refused to answer.

In addition, Defendant Leviloff has provided a declaration under oath that:

- Defendant Awad **"took everything"** when he left Middesk.

- Defendant Awad took customer information and pricing.

- Defendant Awad took information related to Middesk's products.

- Defendant Leviloff shared customer information with Baselayer and Awad.

- Defendant Awad offered between $10,000 and $20,000 for Leviloff to steal Middesk information and provide it to Baselayer.

To date, Defendants have not denied these allegations in any submission to the Court and (before they knew the Leviloff Declaration existed) failed to disclose these facts in Awad's lengthy declaration.

For these reasons, the protocol proposed by Middesk covers common-sense search terms, like "Middesk," the names of specific documents that Defendant Awad had access to or accessed while at Middesk, customer names and prospective customer names, and documents/customer information that Leviloff had access to or accessed at Middesk. The protocol also includes a forensic analysis of deleted files because Awad admitted to deleting files and to going onto Leviloff's Baselayer computer and email account.

Every single category of information and documents sought by Middesk is supported by sworn declaration testimony from ***Defendants*** or computer forensics. And that evidentiary support comes before even a scrap of affirmative discovery through this litigation.

One of the problems necessitating this letter is that—despite all the evidence discussed above and that led to this Court's order for full forensics—Defendants are now attempting to artificially impose a 10,000 document cap on any search term presented by Middesk. That arbitrary

April 28, 2025
Page 5

limit is unwarranted under these facts. The Court and Middesk have no idea how many Middesk documents were taken by Awad through the multiple Google Drives and other devices. Defendants have refused to confirm this number. These Google drives alone could have hundreds or thousands of Middesk documents and therefore generate thousands of hits. Those same hits would then likely also hit with multiple other devices searched: for example, Awad's personal email, Awad's Baselayer email, Awad's personal computer, Awad's Baselayer computer, and/or Awad's cell phone. Middesk cannot determine what Middesk information Defendants have taken, how they have been used, and who used them without forensics from each device analyzed. Nor does the Court or Middesk know how many more documents exist from Defendants' improper use of Middesk's documents and information when setting up and running Baselayer given the evidence that Awad took "everything" just weeks before founding Baselayer—and bragged about it.

For context, it is worth noting that Baselayer is not a massive company that has existed for decades—Middesk understands that it is only about two years old and employs fewer than 20 employees, facts that limit the scope of what Baselayer is searching. In any event, Defendants alone, through their conduct and admissions, have made it necessary to conduct the specific computer forensics requested.

### **Middesk Repeatedly Conferred to Try to Narrow and Resolve the Dispute**

On Friday, April 18, 2025, Middesk provided all Defendants with a draft stipulated computer forensics protocol for review. This draft was substantially similar to the draft Middesk provided the Court and Defendants at the April 15, 2025 Order to Show Cause Hearing (the "Hearing"), and the revisions incorporated the Parties' agreement reached during the Hearing and the Court's ruling.

Defendant Leviloff agreed to all the proposed terms within Middesk's proposed protocol, and the Court already entered that stipulated order. *See* Dkt. 43. Defendants Awad and Baselayer have taken the opposite approach.

On Monday, April 21, 2025, Defendants provided Middesk a heavily revised protocol ("Defendants' Proposed Protocol") that significantly limits the scope of the forensic examination, is contrary to the Parties' agreement reached during the Hearing, and violates this Court's orders. For example, Defendants sought to narrow the stipulated devices that the Court had already ordered to be imaged. Further, Defendants' Proposed Protocol removed provisions that are standard to forensic protocols and essential to maintain the integrity and guarantee the accuracy of the forensic examination. For example, Defendants sought to inappropriately restrict or remove:

- The "Deleted Files Analysis" provision, which, consistent with Awad's admission of deleting documents after receiving the demand letter from Middesk, analyzes data about any documents that have been deleted; and

April 28, 2025
Page 6

- The "Anti-Forensic Evaluation" provision, which reveals whether anti-forensic tools were applied to devices to manipulate the metadata and limit the forensic analysis.[2]

In a good-faith effort to alleviate Defendants' concerns, the parties repeatedly conferred by email and, on April 23, 2025, Middesk provided Defendants with a revised proposed forensic protocol that qualified and limited certain terms to which Defendants objected. The Parties also met and conferred on April 23, 2025, over Zoom about Middesk's objections to Defendants' remaining proposed revisions, but the Parties were unable to resolve their dispute. Following that conferral, Defendants sent another revised draft of the protocol on April 24, 2025. Unfortunately, that draft included significantly expanded redlines and an entirely new process for Defendants to object to and limit Middesk's search terms, including an arbitrary cap on the number of hits certain terms could return and objection to basic search terms such as "Middesk." The parties continued conferral over email thereafter and through Friday, April 25, 2025 (as they had been doing for the prior week) to try to resolve the dispute. *See* **Exhibit C** (Email chain between counsel for Middesk and Defendants).

The proposed protocol attached as Exhibit A that Middesk asks the Court to enter includes many of the revisions Defendants proposed in their latest April 24 draft as well as some final revisions by Middesk to provide greater clarity and ensure the protocol is comprehensive and appropriate. Middesk is not able to accept some of the Defendants' remaining demands, including limits on Middesk's search terms and caps on resulting hits, Defendants' attempts to limit the reporting done by the Forensic Examiner, and efforts not to image and review the full scope of applicable devices and sources that possessed, sent, or received Middesk documents and information. Given the accelerated schedule set by the Court, the parties have reached an impasse, and Middesk respectfully requests that the Court enter the protocol attached as Exhibit A ("Middesk's Proposed Forensic Protocol").

Under these circumstances, Defendants' after-the-fact attempts to renegotiate the forensic protocol and reject standard forensic protocol provisions can only be viewed as an improper effort to conceal the true extent of the facts, render the forensic analysis less comprehensive, prevent Middesk from identifying the full extent of Defendants' possession and use of its trade secrets, and conceal additional evidence of spoliation.

The consequences Middesk will face if this Court does not enter Middesk's Proposed Forensic Protocol far outweigh any burden Defendants may face by complying with it. Indeed, Defendants already benefit from the built-in protections of the Parties' stipulated Protective Order. *See* Dkt. 42. But Defendants' objections to Middesk's Proposed Forensic Protocol will jeopardize Middesk's ability to fairly and completely investigate and prosecute its claims on the Court's accelerated discovery schedule. If the Court does not enter Middesk's Proposed Forensic Protocol, Middesk faces substantial risks that:

---

[2] In subsequent email conferral, Defendants relented and agreed to include a "Deleted Files Analysis" and "Anti-Forensic Evaluation."

April 28, 2025
Page 7

- the forensic examination is significantly delayed due to an impasse between the Parties related to search terms;

- the Forensic Examiner searches an incomplete set of collected data or fails to identify the complete universe of documents that hit on Middesk search terms;

- the Forensic Examiner cannot confirm whether Awad opened, edited, or deleted Middesk documents, including the files to which Awad attested in his Declaration;

- the forensic analysis excludes important and revealing metadata about Middesk documents on Awad's or Baselayer's devices;

- the Forensic Examiner cannot access certain devices without data corruption; and

- the forensic analysis excludes certain email accounts that opened, downloaded, edited, or sent Middesk documents.

**Conclusion**

In light of (i) Leviloff's allegation that Awad "had taken everything with him" upon leaving Middesk; (ii) Leviloff's admission that he provided confidential information, including client data and product development plans, to Awad; (iii) Awad's admission that he possesses an untold volume of Middesk documents on his and Baselayer's devices and accounts; (iv) Awad's admission to spoliating evidence after Middesk placed Awad on notice of its claims; and (v) new admission that Defendant Baselayer co-founder, Tim Hyde, and another employee also had access to Middesk's documents and information, ***Middesk has strong grounds for concern.*** *See* Dkt. 35-1, ¶¶ 5, 6; Dkt. 33-1, ¶¶ 21, 23. That is precisely why the Court already ordered a full forensic examination without qualification and over the vehement objection of Defendants Awad and Baselayer at the Hearing.

A fair and complete forensic analysis is the only way for Middesk to learn the full extent of Defendants' misappropriation of its trade secrets and subsequent conduct. Middesk's Proposed Forensic Protocol is tailored to the evidence before the Court and is necessary to maintain the integrity and accuracy of this analysis. Therefore, Middesk respectfully requests that the Court enter Middesk's Proposed Forensic Protocol attached as Exhibit A or, in the alternative, set a conference with the Parties as soon as the Court's schedule allows to resolve the outstanding dispute.

We appreciate the Court's attention to this matter.

April 28, 2025
Page 8

        Respectfully,

        */s/ Justin K. Victor*
        */s/ Fredric J. Bold, Jr.*

        Justin K. Victor
        Fredric J. Bold, Jr.
        *Counsel for Plaintiff Middesk, Inc.*

***Enclosures***:   Exhibits A-C

***cc via e-mail***:   Justin Victor    Anthony Rainone
                      Jason Burns     Heather Diles
                      Shira Poliak     Matt Gorman
                      Rushton Pope