# EXHIBIT C

**Hall, Heather (Para-ATL-LT)**

| | |
|---|---|
| **From:** | Gorman, Matt <mgorman@wsgr.com> |
| **Sent:** | Saturday, April 26, 2025 7:36 PM |
| **To:** | Victor, Justin K. (Shld-ATL-LT) |
| **Cc:** | GTMiddeskTeam; Diles, Heather; Bold, Rick (Shld-ATL-LT) |
| **Subject:** | Re: Middesk v Baselayer - Request for immediate meet and confer on edits |

Hi Justin,

I will ask Kroll to give us the exact number of files at issue when they run the collection.

I am not exactly following why the number of these files matters for purposes of the search terms. Regardless of whether there are 10 or 10,000 files, the term "Middesk" is still going to return the same number of hits outside of the Drive. It also has no impact on the number of hits for the phone numbers or all of the employee names included. Our proposal for determining a reasonable number of hits also specifically excluded the Middesk files.

We identified Farber and Hyde as admins of the Baselayer Google Drive, not Kroll. As such, we imaged their emails too. We do not agree to imaging additional repositories. There is no evidence that they accessed any of the Middesk files, let alone that they have them on another device. We will certainly reconsider this and cooperate in the return and deletion of any Middesk files if Kroll's analysis shows that they downloaded any of the files.

Sent from my iPhone


On Apr 26, 2025, at 9:11 AM, victorj@gtlaw.com wrote:


EXT - victorj@gtlaw.com

Matt and Heather:

Thank you for committing to produce these documents.

I have a couple questions that I think will assist the court when discussing our dispute concerning the protocol and a request.

## Questions:

How many files are there in the Folder? How many pages of documents are there within the Folder? Middesk has asked this question before the hearing, during the hearing, at meet-and-confer, and now multiple times in email. Now that the devices are imaged this information is readily available.

This information is important to know for purposes of our dispute. If there are hundreds of documents and thousands of pages, Defendants current arguments related to the hit limits become even more absurd because even hundreds of documents will easily generate thousands of hits over the numerous devices at issue.

The disclosure of this information will assist the court in analyzing the parties dispute.

**Request:**

Krolls initial analysis has confirmed that in addition to Defendant Awad, Baselayer employees Jared Farber and Tim Hyde (the co-founder of Baselayer) have access to the Google Drive with the undisclosed number of Middesk files.

As a result, all of Mr. Faber's and Mr. Hyde's devices need be added to the computer forensics protocol (computers/phones). As you are aware, the Google Drive is the repository for documents and the drive is only accessed through a physical device like a phone or computer.

We assume this is not controversial, but if it is and Defendants refuse to add these devices to the protocol, please let us know as soon as possible so Middesk can bring the Court's attention.

Best,
Justin

**Justin K. Victor**
Shareholder

Greenberg Traurig, LLP
3333 Piedmont Road NE | Suite 2500 | Atlanta, GA 30305
T +1 678.553.2169 | C + 1 248.563.7754
victorj@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

<image001.png>

---

**From:** Gorman, Matt <mgorman@wsgr.com>
**Sent:** Friday, April 25, 2025 2:53 PM
**To:** Victor, Justin K. (Shld-ATL-LT) <victorj@gtlaw.com>
**Cc:** GTMiddeskTeam <GTMiddeskTeam@gtlaw.com>; Diles, Heather <hdiles@wsgr.com>; Bold, Rick

(Shld-ATL-LT) <Rick.Bold@gtlaw.com>
**Subject:** RE: Middesk v Baselayer - Request for immediate meet and confer on edits

OK.

For this initial request, we will ask Kroll to pull and produce the files in the "Middesk" folder in Awad's personal Drive and the PowerPoint titled, "Middesk Series B Deck_2022," from his laptop. These are the Middesk files on his Drive and laptop that we have been referring to.

For the production, we will instruct Kroll to do it as per the ESI Protocol, the relevant excerpts I have included below. We will also ask Kroll to provide metadata showing last date of access, if and how many times the file was opened, and whether the files have been shared with anyone else.

1. **Format of Production**
    1. <u>General Production of Documents</u>. Unless the parties mutually agree to produce documents in an alternative format for certain document types, and subject to Section (8)(i), ESI, and non-ESI shall be produced to the requesting party in the following format:  single page non-searchable TIFF images and associated multi-page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite information including relevant metadata. The producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting and the metadata. All productions will include these additional specifications:
        1. Each production shall include a sequential production volume identifier;
        2. Document-level .txt files shall contain the extracted full text of the original document if available; OCR text shall be provided instead if extracted text is not available or if the document has been redacted;
        3. Bates number branding and confidentiality designation, as defined in the Stipulated Protective Order, (if any) on the face of the image; and
        4. all hidden text (*e.g.*, track changes, hidden columns, comments, notes, markups, etc.) will be expanded, extracted, and rendered in the TIFF file; this specifically includes, but is not limited to, the inclusion of any notes or comments contained within any PowerPoint slides/presentations; any tracked changes, comments, and hidden text contained within Word Processing files; and hidden rows, columns, and worksheets contained within Spreadsheet or Worksheet Files.
    2. <u>Native Files</u>. File types that should be produced in native format are file types not easily converted to image format, such as spreadsheets (*e.g.*, Excel), desktop databases (*e.g.*, Access files), audio/video multimedia files, and text message communications. To the extent feasible, spreadsheets that require redaction may be redacted natively and produced in Native Format along with the original file metadata and text re-extracted after redaction. Native files requiring redaction may also be produced as TIFF images with OCR Text Files in lieu of a native file. All text messages shall be collected using a forensic collection tool that preserves the metadata associated with each message.
    3. <u>Native Production Format</u>. Native files will be produced only to the extent described in the section above, as the parties may agree, or as the Court may order.  If native files are produced, their formatting will be as follows:
        1. Native files will be produced with a Bates-stamped image indicating that the file was produced natively and, if applicable, endorsed with the corresponding confidentiality designation.
        2. Native files will be named the same as the beginning Bates number as the Bates stamped image and will include the confidentiality designation of the document, or an abbreviation of the designation so the designation is clear in the native file name.

3. Where documents are produced in native form, a full path to the native document must be included in a Native Link field in the metadata.

4. <u>Metadata Fields</u>. The parties are obligated to provide the following metadata for all ESI produced, to the extent such metadata exists: All Custodians, File Path, Email Subject, Conversation Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Subject, File Name, Author, Date Created, Time Created, Date Modified, Time Modified, MD5 Hash, File Extension, File Size, Pages, Begin Bates, End Bates, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof), Attachment Count, Prod Vol., Text Link, Native Link, Confidentiality Designation, Last Modified By, and Company.

5. <u>Color</u>. The parties will accommodate reasonable and proportional requests made in good faith for the production of specific color images originally produced in greyscale TIFF format to the extent available and where reasonably necessary to decipher the complete meaning, context, or content of the documents on a case-by-case basis.

6. <u>Organization of Production</u>. Production of custodian and original file path information, to the extent available, constitutes production in the usual course of business for electronic files.

7. <u>Family Relationships of Electronic Files</u>. Parent-child relationships between ESI (*e.g.*, the association between an attachment and its parent e-mail) must be preserved by assigning sequential Bates numbers to all files within a parent-child group, and by providing accurate attachment ranges for those files in the metadata fields required.

8. <u>Production Media and Encryption of Productions</u>. Unless otherwise agreed, the Parties shall provide document productions via a secure electronic transfer method, such as through a file transfer protocol (FTP). The Parties shall encrypt the production data using password protection or encryption and forward the password to decrypt the production data separately. If the production exceeds reasonable transfer limits, the parties will coordinate in good faith on alternative production methods.

**Matthew D. Gorman | Partner | Wilson Sonsini Goodrich & Rosati**
One Boston Place, 201 Washington Street, Suite 200 | Boston, MA 02109
direct: 212.497.7786 | mobile: 315.945.0236 | mgorman@wsgr.com

**From:** victorj@gtlaw.com <victorj@gtlaw.com>
**Sent:** Friday, April 25, 2025 10:37 AM
**To:** Gorman, Matt <mgorman@wsgr.com>
**Cc:** GTMiddeskTeam@gtlaw.com; Diles, Heather <hdiles@wsgr.com>; Rick.Bold@gtlaw.com
**Subject:** RE: Middesk v Baselayer - Request for immediate meet and confer on edits

EXT - victorj@gtlaw.com

Matt – we would request that Kroll/Defendant produce the meta data and formatting of all the files as proposed within the ESI protocol for production of documents. Happy to discuss any concerns with this.

**Justin K. Victor**
Shareholder

Greenberg Traurig, LLP
3333 Piedmont Road NE | Suite 2500 | Atlanta, GA 30305

T +1 678.553.2169 | C + 1 248.563.7754
victorj@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

<image001.png>

---

**From:** Gorman, Matt <mgorman@wsgr.com>
**Sent:** Friday, April 25, 2025 10:09 AM
**To:** Victor, Justin K. (Shld-ATL-LT) <victorj@gtlaw.com>
**Cc:** GTMiddeskTeam <GTMiddeskTeam@gtlaw.com>; Diles, Heather <hdiles@wsgr.com>; Bold, Rick (Shld-ATL-LT) <Rick.Bold@gtlaw.com>
**Subject:** Re: Middesk v Baselayer - Request for immediate meet and confer on edits

We certainly do not agree that this is having any impact on the expedited discovery schedule but have no objection in principle to the two items you note below. I will say, however, that there is no argument that Baselayer needs to make this production now or that the failure to have done so to date is any sort of "delay." We said from the beginning that Baselayer and Awad were willing to work with you to return Middesk files and this is the first time any such request has been made.

To get this rolling, we will identify for Kroll the Files as defined the Awad Declaration. When you refer to "metadata," can you let us know exactly what you would like Kroll to provide with these files so we can ensure we are on the same page and know what instruction we should give to Kroll? From our perspective, at a minimum, we would like Kroll to be able to show last date of access, if and how many times opened, and whether the files have been shared with anyone else.

How would you like to facilitate the access to Awad's Middesk laptop?

Sent from my iPhone

> On Apr 24, 2025, at 8:16 PM, victorj@gtlaw.com wrote:

EXT – victorj@gtlaw.com

---

Matt:

Middesk is reviewing your email below and will continue to make revisions to the extent appropriate based follow up with IDS.

Since the parties continue to have substantial disagreement concerning the protocol which will impact timing with our expedited discovery/trial schedule can you please confirm by tomorrow close of business Defendants will do the following to keep things moving:

1.  Defendants will produce with metadata from Kroll all the documents within the Google Drives with Middesk information as soon as possible. It cannot be in dispute that Middesk is entitled to these documents. To date, Defendants have refused to disclose the volume of documents within the google drive and volume of documents deleted. There is no reason to delay this production from Kroll since they have no been engaged and imaged the Google drives.

2.  As we discussed, Defendants will provide Awad's apple id and password ATTORNEYS EYES ONLY as soon as possible (tomorrow if possible) so that IDS can unlock Awad's computer.

Best,
Justin

**Justin K. Victor**
Shareholder

Greenberg Traurig, LLP
3333 Piedmont Road NE | Suite 2500 | Atlanta, GA 30305
T +1 678.553.2169 | C + 1 248.563.7754
victorj@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

<image001.png>

---

**From:** Gorman, Matt <mgorman@wsgr.com>
**Sent:** Thursday, April 24, 2025 5:51 PM
**To:** Victor, Justin K. (Shld-ATL-LT) <victorj@gtlaw.com>
**Cc:** GTMiddeskTeam <GTMiddeskTeam@gtlaw.com>; Diles, Heather <hdiles@wsgr.com>; Bold, Rick (Shld-ATL-LT) <Rick.Bold@gtlaw.com>
**Subject:** RE: Middesk v Baselayer - Request for immediate meet and confer on edits

Justin,

We had no idea when we spoke yesterday that Middesk was going to make this outrageous proposal for search terms. That required a dramatic rethinking of how the protocol would work in light of what Middesk is proposing. Nevertheless, we endeavored to take an approach that takes into account the interests of both parties in this process. We are more than happy to raise this point with the court again if we cannot reach an agreement. What Middesk has proposed here is just entirely unnecessary, unworkable, and unduly burdensome on the parties.

It is actually absurd that you would propose "Middesk" as a search term for standard ESI discovery, let alone for a forensic protocol which includes all files within multiple email accounts, Google Drives, laptop computers. You are making wildly speculative claims about what could have happened with Middesk's files with no factual basis whatsoever. Indeed, Awad's declaration already addressed this supposition by confirming that he did not even remember having this folder and did not even recall accessing the files therein. Setting aside those points, you do not need the term "Middesk" in order to get back the Middesk documents. We made clear from the beginning that we would give these back but for purposes of the protocol all that would be needed is the names of those files. Simply using the term "Middesk" is obviously going to include Baselayer's own files and emails. There are countless instances in which that term could be used that are entirely divorced from Middesk's trade secrets or property. Any argument that this term by itself is necessary or narrowly tailored is specious.

I don't know what you mean by conditions on the search terms. When we spoke yesterday, you said that you were open to revising the terms if they returned too many hits. We incorporated a process for doing that. The fact you continue to bring up Leviloff's declaration and place so much emphasis on it is quite telling. There is no reason to give that allegation any credence, nor is there is any basis for saying it constitutes evidence of Awad's possession of any specific Middesk information.

I told you when we spoke after the hearing that Leviloff's allegation that Awad offered to pay him for Middesk's trade secrets is preposterous. Why would we need to file a responsive declaration to Leviloff's blatant misrepresentations when Awad was right there to denounce them had the court been at all interested in Leviloff's accusations. He was not and therefore we had no reason to inform the Court how ridiculous his claims are. Middesk can certainly propound a document request asking for similar communications, ask an interrogatory on the subject, and even ask Awad about it at his deposition. That does not mean it is a proper subject for a forensic protocol and there is no justification for using this process to try to prove accusations that are unrelated to the possession of Middesk trade secrets.

The Court was very clear that Middesk should be reasonable and thoughtful in its proposed search terms. Middesk has obviously ignored that guidance. Without even getting into the specifics of the terms proposed, having to use Middesk's search terms creates an unworkable process. We are trying to keep the process going and address this very likely eventuality on the front end by having Kroll run a hit count as a first step so we can understand what we are looking at. If that proposal is not acceptable then we agree that this will need to go to the Court.

**Matthew D. Gorman | Partner | Wilson Sonsini Goodrich & Rosati**
One Boston Place, 201 Washington Street, Suite 200 | Boston, MA 02109
direct: 212.497.7786 | mobile: 315.945.0236 | mgorman@wsgr.com

---

**From:** victorj@gtlaw.com <victorj@gtlaw.com>
**Sent:** Thursday, April 24, 2025 5:18 PM
**To:** Diles, Heather <hdiles@wsgr.com>; Rick.Bold@gtlaw.com; Gorman, Matt <mgorman@wsgr.com>
**Cc:** GTMiddeskTeam@gtlaw.com
**Subject:** RE: Middesk v Baselayer - Request for immediate meet and confer on edits

EXT - victorj@gtlaw.com

Heather:

We are reviewing the edits now, but it appears the parties are further apart than yesterday.

The suggestion that the "Middesk" is not an appropriate term is absurd. That is the most important term. **Your client has admitted to having a Google Drive of Middesk documents in multiple locations.** This alone could be thousands, if not tens of thousands of documents since they could have been used and sent around Baselayer for nearly two years. Of course there will be lots of hits.

Also, we will not add any conditions on our search terms. Again, t**here is declaration testimony that your client bragged about taking "everything" when he left Middesk including all customer information, pricing and product development information.** If a certain hit yields an amount of results that don't seem to match the term, we will consider working with you to modify, but we will not and cannot be bound to commit to do so for key terms like Middesk.

Further, there is declaration evidence that your client offered $10,000 to $20,000 to steal our clients trade secrets to a then current employee. Middesk is certainly entitled to search the if he had similar communications with other known employees and made similar offers.

To date Defendant Awad has not filed any statement denying a single assertion within the Leviloff Declaration. He did not deny those statements at the hearing, despite being there.

The scope of the forensics reflects the scope of the evidence before the court.

Concerning search terms, we already had this exact argument before the court on the record and the Defendants' position was directly rejected.

In sum, we will review the edits made and adopt anything that is acceptable. The rest of the issues need to go to the Court.

Best,
Justin


**Justin K. Victor**
Shareholder

Greenberg Traurig, LLP
3333 Piedmont Road NE | Suite 2500 | Atlanta, GA 30305
T +1 678.553.2169 | C + 1 248.563.7754
victorj@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

<image001.png>

---

**From:** Diles, Heather <hdiles@wsgr.com>
**Sent:** Thursday, April 24, 2025 4:08 PM
**To:** Victor, Justin K. (Shld-ATL-LT) <victorj@gtlaw.com>; Bold, Rick (Shld-ATL-LT)
<Rick.Bold@gtlaw.com>; Gorman, Matt <mgorman@wsgr.com>
**Cc:** GTMiddeskTeam <GTMiddeskTeam@gtlaw.com>
**Subject:** RE: Middesk v Baselayer - Request for immediate meet and confer on edits

Justin,

Yes, we can make the introduction between GT and Kroll.  I'll send an initial email
shortly introducing you to the legal team at Kroll who had a few questions about the
protective order.  We of course note that the forensic protocol must be signed first
before Kroll can be ordered to run the search terms/begin the examination itself.

Please find attached the revised protocol (clean and redlined) a few explanations in
footnotes.  A few notes to explain further:

1. Overall, we have made changes to address our discussion from the meet and
   confer.  We think this makes significant progress to achieving a resolution.
2. As previewed, there are a few technical changes from Kroll just based on how
   they conduct the imaging and examination, such as preparing an E01/AFF4
   Forensic Image File.  Kroll explained that the methods they use are the latest
   industry standards (and the ones from IDS may be a bit out of date). To
   reiterate, we are open to having Kroll and IDS speak directly if there are any
   issues that need to be hashed out.
3. The major concern here is the search terms.  The search terms you have
   provided are so extraordinarily broad that they cannot conceivably be designed
   to be recovering Middesk documents or determining whether Defendants have
   used or disclosed Middesk trade secrets. For example, the list includes 105
   phone numbers. Is Kroll supposed to return every message with each of these
   numbers? The list also includes the basic term, "Middesk," which would yield
   tens of thousands (if not more) hits of standard Baselayer commercial and
   business documents and communications that have nothing to do with Middesk
   trade secrets. Similarly, there are more than 600 customer names, 100

employee names, and 100 individual email addresses.  It appears that Middesk's intention here is to find every single communication Baselayer has had with customers, potential customers, vendors, potential vendors, and current and former employees without any consideration for the fact that these searches will turn up a massive number of hits with no relation to this case or Middesk's information.  While we have no way of knowing the results at this point, we fully expect the search terms you have proposed will yield hundreds of thousands of hits, if not more.  If that is allowed not only will it be entirely impractical for us to review and provide objections within 7 business days, but we certainly cannot permit all of those documents to be turned over to you if they are not privileged or personal.  We understand from the meet and confer that it is not your intent to create such an onerous burden and that you are willing to address the issue.  We have attempted to include a solution for this into the protocol so we can avoid the need to go to court on this issue now and can keep the forensic process going.  Our solution would be for Kroll to run an initial search on the Devices using your terms to create an initial hit list reflecting just the number of hits for each term. If it is more than 10,000, we would then meet and confer within a short period of time thereafter to try to winnow down the search terms to those that will create a manageable number of results. If we cannot do so, then the parties can go to the court. Let us know your thoughts. If you are not amenable to that approach, we will involve the court at this point as this is a gating item that must be addressed before Kroll can start its work.

Best,
Heather

<image002.png>

**Heather Diles | Associate | Wilson Sonsini Goodrich & Rosati**
1301 Avenue of the Americas | New York, NY 10019-6022
212.497.7723 | hdiles@wsgr.com

---

**From:** victorj@gtlaw.com <victorj@gtlaw.com>
**Sent:** Thursday, April 24, 2025 11:03 AM
**To:** Diles, Heather <hdiles@wsgr.com>; Rick.Bold@gtlaw.com; Gorman, Matt <mgorman@wsgr.com>
**Cc:** GTMiddeskTeam@gtlaw.com
**Subject:** RE: Middesk v Baselayer - Request for immediate meet and confer on edits

EXT - victorj@gtlaw.com

---

Matt and Heather:

Thank you for the call yesterday.

Please let us know when you will provide redline edits per our call. Middesk needs to bring any issues that are left – hopefully very few - to the Court by tomorrow close of business.

Further, please introduce u GT directly to Kroll. Since the examiner is an independent, now is the time to bring us in, even if the protocol is still being negotiated.

Thank you,
Justin

**Justin K. Victor**
Shareholder

Greenberg Traurig, LLP
3333 Piedmont Road NE | Suite 2500 | Atlanta, GA 30305
T +1 678.553.2169 | C + 1 248.563.7754
victorj@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

<image001.png>

---

**From:** Victor, Justin K. (Shld-ATL-LT) <victorj@gtlaw.com>
**Sent:** Wednesday, April 23, 2025 2:57 PM
**To:** hdiles@wsgr.com; Bold, Rick (Shld-ATL-LT) <Rick.Bold@gtlaw.com>;
mgorman@wsgr.com
**Cc:** GTMiddeskTeam <GTMiddeskTeam@gtlaw.com>
**Subject:** RE: Middesk v Baselayer - Request for immediate meet and confer on edits

Heather:

Attached is a revised protocol in redline with comments and edits.

In sum, to try and alleviate Defendants' concerns, Middesk has agreed to:
1. Delete ParentID for section 9
2. Add the following qualifier to sections 9-13 "This Report provided within this section will be limited to hits within Plaintiff's Data Search Terms. However to run Plaintiff's Data Search, it is necessary to conduct the foregoing analysis."
3. Narrowed the scope of section 13.

I have also responded with comments why Middeak cannot agree to the other requested deletions and why.

The pushback on some of these basic terms is frustrating. For example, continued attempts to remove standard terms related

to the preparation of documents/devices and an analysis of deletion history are not just non-starters but very concerning in terms of what it looks like Defendants are trying to hide. The history and undisputed facts matter here.

The Court ordered computer forensics over Defendants' objection both directly in the response papers and live at the hearing. After being told at the hearing that Middesk would be granted computer forensics, the parties negotiated the broad key terms of the protocol, in which Defendants committed to paying for the protocol to avoid IDS conducting the protocol. Middesk and IDS have analyzed all of Defendants edits to the protocol to limit the ability to get to the bottom of what Defendant Awad and Baselayer have been doing with Middesk documents and information. That is the primary concern. Typically, when defendants are facing allegations of trade secrets misappropriation **with admissions of possession and deletion**, they take the opposite approach – like Defendant Leviloff has in agreeing to the proposed protocol �� and offer whatever is requested to show that their clients were not misappropriating trade secrets.

In terms of scope and what Middesk should get; Middesk is entitled to receive all documents that are hits, as long as they are not non-privileged/non-personal in nature. There is a stipulated protective order in place with attorneys eyes only designations so there is no valid concern related to confidentiality. The reasoning for the specific scope of what is being searched is due to uncontested facts admitted to by Defendants at this point. Leviloff has provided a declaration under oath that Awad has told him he took ��everything" from Middesk including, but not limited to, client/customer information and product development plans. He also said he did in fact share pricing and customer information with Awad. Awad himself admitted that he has an entire google drive of Middesk documents on both his personal Google Drive and had one on a Baselayer Google Drive. Awad has also admitted to deliberate deletion at least one Google Drive with Middesk documents and information.

Best,
Justin

**Justin K. Victor**

Shareholder

Greenberg Traurig, LLP

3333 Piedmont Road NE | Suite 2500 | Atlanta, GA 30305
T +1 678.553.2169 | C + 1 248.563.7754
victorj@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

<image001.png>

---

**From:** Diles, Heather <hdiles@wsgr.com>
**Sent:** Tuesday, April 22, 2025 9:14 PM
**To:** Victor, Justin K. (Shld-ATL-LT) <victorj@gtlaw.com>; Bold, Rick (Shld-ATL-LT)
<Rick.Bold@gtlaw.com>; Gorman, Matt <mgorman@wsgr.com>
**Cc:** GTMiddeskTeam <GTMiddeskTeam@gtlaw.com>
**Subject:** RE: Middesk v Baselayer - Request for immediate meet and confer on edits

Justin,

You write, "The parties agreed, on the record, that the forensic review would include all
the devices, systems, and email referenced in Plaintiff's draft forensic protocol."  We
hope this was an error, as the parties certainly did not agree to whatever was in
Plaintiff's draft forensic protocol as we were not even provided a copy of the protocol
by the hearing. The latest protocol you sent is essentially the same to your prior version,
save for a few minor edits.  It should not surprise you that we cannot agree to the
revised protocol on those terms. We reviewed your concerns and have responded
below. We are open to trying to work out a compromise to keep things moving forward
and think there are likely some points we can agree on since it seems that you may have
misunderstood the purpose of many of our edits. We do, however, need to make sure
that the protocol is reasonable in scope and is aligned with the purpose under which the
forensic review was sought – the search for Middesk files and information and the
remediation of Defendants' possession of the same. Our responses to the points you
raised are below, but let us know if you would like to meet and confer tomorrow. We
are open to a discussion if there is something we are missing on any of these points. As
of now, we are free from 11am – 1pm ET or 2:30 – 5pm ET.

1.  <u>Scope of the protocol</u>: It appears we are concerned about different matters.  We
    want to make sure that Middesk cannot use information from the review (e.g.
    documents, hits, reports) that are unconnected to Middesk.  We are OK with the
    documents belonging to Middesk being used as evidence in this case, but there
    will certainly be information implicated that does not belong to Middesk and we
    must limit how such information can be used, especially since we have no
    control over the search terms and no idea what terms Middesk will ultimately
    choose.  This also goes to why the scope of Sections 9-13 are problematic from
    our perspective: for instance, it does not make sense for Middesk to be
    permitted to have a log of every single file on these devices – that would be an
    alarming amount of information on a competitor that Middesk has no valid
    basis to obtain and there is a real risk that Middesk would use it improperly,
    given that Middesk has already attempted to interfere with Baselayer's
    relationship with one of its significant customers. There is also no justification
    for such a report when the entire purpose of this exercise is to identify Middesk

files and information through the use of Middesk's search terms. What purpose would those serve if Kroll is just creating a report of every single file in the repositories?

2. <u>Devices</u>: We are in alignment that the review will include Awad's personal and Baselayer email, in addition to his computers.  We have always agreed to that, and the omission of Awad's Baselayer email from the list below was simply inadvertent.  As for other employees, the Baselayer Google Drive activity will show who else, if anyone, at Baselayer had access to the drive and their activity in the drive.  That should be sufficient, as it would show which employees (if any) accessed or downloaded the Middesk files. This forensic review should be aimed at addressing the allegations that Awad and Leviloff have documents, not a far-reaching review into the activities of other employees at Baselayer.

3. <u>Preparation for Review and Search of Images</u>: This would entail recovery of all deleted files on the devices dating back forever.  This is significantly far too reaching and is incredibly overbroad. We cannot agree to that as is.

4. <u>Section 8</u>: We can add back in this section, except Kroll has asked specifically for clarification by what is meant by ParentID.  Does this mean the Parent/Child folder structure?

5. <u>Sections 9, 10, 11, 12, 13</u>: See comment above in #1, we are concerned about these inclusions since this information is incredibly broad and burdensome. These terms cannot be included.  These terms would provide a report of tens of thousands of images and documents, it would include every file on every device, every single email, basically asking for all the contents of the phone, etc.  These provisions would entirely defeat the purpose of a hit report, as Middesk would simply have access to everything, which is outrageous, plus it would be incredibly burdensome for us to go through every single item to mark as Highly Confidential, etc.  It's just untenable and would eviscerate the proposal of search terms and a hit report that the court had ordered.

6. <u>Anti-Forensics</u>: This is far too overbroad to include and is not relevant.  Kroll has explained that they have never seen anti-forensics used even by the most sophisticated players who are covering up for the most serious of allegations.  It's simply unwarranted here.  And there is not any explanation of what is considered anti-forensics; there is not enough detail and thus the review would go on for an unlimited duration.  Kroll did suggest that if there was something in particular you wanted searched, such as ccleaner, they can check for that and make a notation if it is detected.  But we would need very specific guidance here.

<u>&lt;image002.png&gt;</u>    **Heather Diles | Associate | Wilson Sonsini Goodrich & Rosati**
1301 Avenue of the Americas | New York, NY 10019-6022
212.497.7723 | hdiles@wsgr.com

**From:** victorj@gtlaw.com <victorj@gtlaw.com>
**Sent:** Tuesday, April 22, 2025 12:04 PM
**To:** Diles, Heather <hdiles@wsgr.com>; Rick.Bold@gtlaw.com; Gorman, Matt <mgorman@wsgr.com>
**Cc:** GTMiddeskTeam@gtlaw.com
**Subject:** RE: Middesk v Baselayer - Request for immediate meet and confer on edits

EXT - victorj@gtlaw.com

Please see the attached.

**Justin K. Victor**
Shareholder

Greenberg Traurig, LLP
3333 Piedmont Road NE | Suite 2500 | Atlanta, GA 30305
T +1 678.553.2169 | C + 1 248.563.7754
victorj@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

<image001.png>

**From:** Victor, Justin K. (Shld-ATL-LT)
**Sent:** Tuesday, April 22, 2025 11:18 AM
**To:** Diles, Heather <hdiles@wsgr.com>; Bold, Rick (Shld-ATL-LT) <Rick.Bold@gtlaw.com>; Gorman, Matt <mgorman@wsgr.com>
**Cc:** GTMiddeskTeam <GTMiddeskTeam@gtlaw.com>
**Subject:** RE: Middesk v Baselayer - Request for immediate meet and confer on edits

Heather:

As a professional curtesy to Mr. Gorman and respect for his vacation, GT has waited to move forward with its submission to the court, but Middesk needs to get these issues resolved as soon as possible.

Today, GT will send back a revised copy of the protocol that rejects almost all of the redline edits proposed. Please advise by noon tomorrow Wednesday, April 22, 2025 whether you will agree to revised protocol.

As explained by GT's emails email, the edits go against what court clearly actually ordered and the purpose of the court ordered protocol: 1) to identify Defendants possession and use

of Middesk's documents; and 2) move discovery effectively forward.

Additionally, GT has consulted with IDS which has confirmed the following – among other issues - concerning Defendants' proposed edits:

1. **The removal of "Preparation for Review and Search of Images".** The tasks listed in this section allow for the preparation of the collected data sets for searching. Without this section, the forensic neutral will be searching an incomplete collected data set and will end up missing key documents that could hit on the search terms.

2. **The removal of nearly all of the forensic reports, and the removal of audit logs from the collection set.** These edits are extremely concerning and show evidence to avoid what is required to do a forensic examination. **These types of forensic reports, along with the collection and analysis of available audit logs, is a standard practice.** Specifically, the reports and audit logs are crucial to understanding whether and how any of Plaintiff's documents were opened, edited, accessed, viewed, copied, interacted with, and/or deleted. As Mr. Awad stated in his declaration, he did not open the

Middesk folder or the files in question "to the best of [his] recollection". These reports and logs would allow the neutral to forensically confirm Mr. Awad's testimony. Excluding these reports and audit logs does not make sense based on the allegations in this matter.

3. **The removal of anti-forensic evaluation.** For any forensic neutral matter, this step is important as the forensic neutral needs to understand what, if any, limitations may be imposed on the analysis due to the use of anti-forensic tools. For example, if there is evidence of date/time data manipulation, that may affect the understanding of any date/time activity analysis performed by the forensic neutral.

I am available to discuss live ay any time and have made myself available since my initial email.

-Justin

**Justin K. Victor**
Shareholder

Greenberg Traurig, LLP
3333 Piedmont Road NE | Suite 2500 | Atlanta, GA 30305
T +1 678.553.2169 | C + 1 248.563.7754
victorj@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

**From:** Diles, Heather <hdiles@wsgr.com>
**Sent:** Monday, April 21, 2025 7:48 PM
**To:** Victor, Justin K. (Shld-ATL-LT) <victorj@gtlaw.com>; Bold, Rick (Shld-ATL-LT)
<Rick.Bold@gtlaw.com>; Gorman, Matt <mgorman@wsgr.com>
**Cc:** GTMiddeskTeam <GTMiddeskTeam@gtlaw.com>
**Subject:** RE: Middesk v Baselayer - Request for immediate meet and confer on edits

Justin,

I inadvertently omitted Awad's Baselayer email from the list of devices/systems. As
shown in 1.(1), we were indeed trying to capture Awad's personal and Baselayer email.

It's not clear why you think our email suggests that we are unwilling to move from the
redline edits. We intended to provide clarity, explain where we were could already find
agreement, and seek more information on outstanding issues. We'll come back to you
with our responses on each point.

<image002.png>    **Heather Diles | Associate | Wilson Sonsini Goodrich & Rosati**

1301 Avenue of the Americas | New York, NY 10019-6022

212.497.7723 | hdiles@wsgr.com

**From:** victorj@gtlaw.com <victorj@gtlaw.com>
**Sent:** Monday, April 21, 2025 6:01 PM
**To:** Diles, Heather <hdiles@wsgr.com>; Rick.Bold@gtlaw.com; Gorman, Matt
<mgorman@wsgr.com>
**Cc:** GTMiddeskTeam@gtlaw.com
**Subject:** RE: Middesk v Baselayer - Request for immediate meet and confer on edits

EXT - victorj@gtlaw.com

Heather:

Mr. Awad and Baselayer have now admitted to possession and
deletion of Middesk's documents and information. This is not a
fishing expedition. The Court ordered your clients to submit to
forensic discovery, after opposition briefing. Your clients'
disagreement with that decision is not a valid basis to object to
that examination.

Our goal is accomplish what the Court has already approved -
a  forensic protocol  that: 1) identifies the Middesk confidential
information within Defendants' possession, custody, or control;

and 2) allows Middesk and the Court to assess how Defendants' have used or disclosed that information.

This is not a remediation exercise alone. Computer forensics is part of the discovery process. Any party may use the documents and information obtained from the forensic analysis in the same way as any other source of discoverable information. The suggestion that Plaintiff cannot present documents obtained from the forensic examination to establish, for example, its claim for misappropriation, makes no sense.

There was no delay in providing a draft protocol. GT provided a substantially similar protocol that covered by Leviloff, Awad, Baselayer the day of the hearing. We then revised that draft to address the Court's order.

Concerning your other comments below:

We are not going to renegotiate the scope of the protocol. The parties agreed, on the record, that the forensic review would include all the devices, systems, and email referenced in Plaintiff's draft forensic protocol. Awad's personal email and Baselayer email must be part of the forensic review, separate from his computers. To the extent other individuals from Baselayer had access to Awad's Baselayer Google drive, they are included in the protocol. The reason is self-explanatory: if another Baselayer employee had access to the Google drive, they could take that information and download it onto their computer/send to their email address.

On search terms, it appears we are in agreement. Kroll will run all search terms provided by Plaintiff.

Concerning Section 9 and 10, these are basic computer forensic functions needed to ensure a thorough analysis.

Since your email confirms that Mr. Awad and Baselayer are unwilling to move from the positions in your email that reflect the redline edits, we will simply move forward.

Best,
Justin

**Justin K. Victor**
Shareholder

Greenberg Traurig, LLP
3333 Piedmont Road NE | Suite 2500 | Atlanta, GA 30305
T +1 678.553.2169 | C + 1 248.563.7754
victorj@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

<image001.png>

---

**From:** Diles, Heather <hdiles@wsgr.com>
**Sent:** Monday, April 21, 2025 3:16 PM
**To:** Victor, Justin K. (Shld-ATL-LT) <victorj@gtlaw.com>; Bold, Rick (Shld-ATL-LT)
<Rick.Bold@gtlaw.com>; Gorman, Matt <mgorman@wsgr.com>
**Cc:** GTMiddeskTeam <GTMiddeskTeam@gtlaw.com>
**Subject:** RE: Middesk v Baselayer - Request for immediate meet and confer on edits

**\*EXTERNAL TO GT\***

Justin, Rick,

First, we need to level set the accusations here.  The Court Hearing was on Tuesday,
April 15 and you represented that you had already prepared a forensic protocol.  Yet
you did not send us the updated protocol until Friday, April 18.  We sent you our
markup of the protocol at the start of the next business morning (today). I don't
appreciate the accusations that we are "intentionally slowing down the forensics
process and hindering [your] ability to have the full forensics."   Now you are demanding
that we meet and confer with you in less than 24 hours (after you took 3 days to revise
the protocol); if it were so urgent, you should have provided the protocol
sooner.   Further, the imaging of the devices does not need to occur until Thursday April
24, so it is not well received that you are claiming we have violated any sort of
agreement, let alone an agreement that has not yet been executed.  On the contrary, it
is very clear that Plaintiff has gone well beyond anything reasonably related to the
actual factual allegations made against Baselayer and Mr. Awad and are attempting to
conduct a widespread fishing expedition untethered to the recovery of Middesk
information and files. Our responses to each point are below to facilitate the resolution
of these items.  We are not available to meet before noon tomorrow as Matt is out of
the country today and then traveling all day tomorrow.  We can discuss Wednesday if a
call is needed.

1.  The Devices: We are in agreement that the devices/systems will include: Awad's
    personal computer, Awad's Baselayer computer, Leviloff's Baselayer computer,
    Awad's personal Google Drive, Awad's Baselayer Google Drive, Awad's personal
    cell phone, Awad's personal email, and Leviloff's Baselayer email.  We
    attempted to explain the removal of the other areas: (1) we understand the
    email accounts that were used to "communicate" with Awad's personal or
    Baselayer Google drive are Awad's personal and Baselayer email accounts, so
    that should be subsumed already.  If there is some other email you are looking
    for, let us know, but the protocol should be clear on which accounts are
    included so there is no ambiguity; (2) for Awad's Apple ID, this ID is simply used

to access his *iCloud* or other Apple accounts, none of which are at issue here, so it does not make sense for his Apple ID to be listed separately as a "Device"; all passwords, accounts, usernames, etc. for the devices will be provided to Kroll but we are not individually listing out what each of those usernames, IDs, etc. are (nor is it appropriate for GT or Middesk to have this information); and (3) for all devices used to communicate with Leviloff: there is no Baselayer cellphone, so we have listed all of the devices in the list above (we want to ensure there's no confusion on the devices, so it is best to list them by name).

2. <u>Search Terms</u>: We are in agreement. In 6, it says "Plaintiff, through its counsel, will provide Plaintiff's Data Search Terms to the Forensic Examiner before he or she conducts the search." You will provide the search terms. The next sentence was added to capture your request to include the names of the files from the Google Drive folder and the powerpoint presentation. The sentence thereafter just says that any additional search terms (beyond the first two sentences) would need to be agreed upon by the parties. Indeed, we don't anticipate there being rounds of search terms: the court made it clear, it is plaintiff's burden to provide the search terms, and if you do a poor job of providing search terms you are happy with, that's your problem. Tr. 18:9-13.

3. <u>(Former) Sections 9 & 10</u>: It is not clear to us why all of these logs would be required. The protocol is to image the devices and apply the search terms to find Middesk's files and information. There is no reason why Kroll should have to create full lists of every document on the devices, internet history reports, etc. You just need the reports on the devices themselves and of the hit report. Anything additional is a significant burden on Kroll and appears only designed to increase costs to our client and is not tailored to the purpose of the engagement or the recovery of any Middesk information and files.

4. <u>(Former) Section 19</u>: Can you explain exactly what is meant by this provision on "anti-forensics evidence elimination techniques"?

5. <u>First Recital/Overall</u>: Our understanding is the forensic review is to be used to locate what Middesk files and information are on Defendants' devices and to have them remediated. There is no other permissible reason for the forensic review. To use your word, it would be alarming if Plaintiff was trying to get access to Mr. Awad's and Baselayer personal and business systems and devices for any other reason.

Best,
Heather

<image002.png>    **Heather Diles | Associate | Wilson Sonsini Goodrich & Rosati**
1301 Avenue of the Americas | New York, NY 10019-6022
212.497.7723 | hdiles@wsgr.com

**From:** victorj@gtlaw.com <victorj@gtlaw.com>
**Sent:** Monday, April 21, 2025 12:43 PM

**To:** Rick.Bold@gtlaw.com; Gorman, Matt <mgorman@wsgr.com>; Diles, Heather <hdiles@wsgr.com>
**Cc:** GTMiddeskTeam@gtlaw.com
**Subject:** Re: Middesk v Baselayer - Request for immediate meet and confer on edits

EXT - victorj@gtlaw.com

---

Please prove times to meet and confer today or tomorrow am before noon.

Middesk needs to go to the court by close of business tomorrow. Due to the expedited schedule this can't wait.

These edits ignore the court's clear ruling/direction.

Middesk reserves the right up seek fees and costs related to issues addressed already at the hearing.

---

**From:** Bold, Rick (Shld-ATL-LT) <Rick.Bold@gtlaw.com>
**Sent:** Monday, April 21, 2025 12:36:43 PM
**To:** mgorman@wsgr.com <mgorman@wsgr.com>; hdiles@wsgr.com <hdiles@wsgr.com>
**Cc:** GTMiddeskTeam <GTMiddeskTeam@gtlaw.com>
**Subject:** RE: Middesk v Baselayer - Request for immediate meet and confer on edits

Heather and Matt,

Following up on Justin's email below, we wanted to provide these additional topics to discuss during the conferral call. Please be prepared to discuss them. We hope you will agree to resolve them.

1. We are very concerned that your edits are trying to pre-emptively limit the parties' use of the forensics and the underlying documents derived from that. That is not appropriate as this is a critical Court-ordered process occurring as part of a fast-tracked discovery and case schedule in this case.

1. We see that you have tried to limit what is occurring through the forensics, and we do not agree. For example, the first recital on page 1 improperly limits the scope to "determine what documents, files, and information may be in Defendants' possession." You have improperly changed our para 8 saying the Hit Report "shall be used **solely** for purposes of determining which files belonging to Plaintiff are on the Devices." And you have improperly changed our para 14 saying the reports "may be used **only** pursuant to such Protective Order" and striking "for purposes of prosecuting this case."

1. We are very concerned that your edits are intentionally slowing down the forensics process and hindering our ability to have the full forensics that the Court ordered on a timely basis consistent with the expedited trial schedule the Court ordered:

1. By cutting out many of the devices/sources from the forensics collection, you have already violated this agreement by not having them imaged by April 21. We need an immediate resolution of the devices/sources being provided to Kroll.
2. As Justin mentions below, the Court has already ordered how to handle search terms. We do not agree that Defendants are allowed to further slow the process by delaying the application of our initial search terms. If your edits pertain only to how to handle subsequent search terms or adjustments to search terms based on the initial results, we can confer about that.

1. We don't understand why you have tried to eliminate large swaths of analysis and reports as well as the examiner's discretion to do whatever is necessary to provide a complete and accurate analysis. See our original Paras 9 and following, including cutting that the Examiner "shall perform additional Review to support the creation of various forensic reports."

Best, Rick

**Rick Bold**
Shareholder

Greenberg Traurig, LLP
Terminus 200 | 3333 Piedmont Road NE | Suite 2500 | Atlanta, GA 30305
T +1 678.553.2254  |  C +1 404.805.1473
Rick.Bold@gtlaw.com  |  www.gtlaw.com

_____

**From:** Victor, Justin K. (Shld-ATL-LT) <victorj@gtlaw.com>
**Sent:** Monday, April 21, 2025 10:55 AM
**To:** Diles, Heather <hdiles@wsgr.com>; Gorman, Matt <mgorman@wsgr.com>
**Cc:** GTMiddeskTeam <GTMiddeskTeam@gtlaw.com>
**Subject:** Middesk v Baselayer - Request for immediate meet and confer on edits

Heather and Matt:

I have reviewed your edits to the protocol and request a meet-and-confer today or at the latest tomorrow to discuss these issues so that we can bring our disagreements to Judge Casteel

for clarification pursuant to his Local Rule 1(b) and/or Section 3(b) of his local rules.

Below is a short list of Plaintiff's.

First, the transcript is clear that Plaintiff's were granted (over the objection of Defendants) every source of requested within the proposed order without exception and that specifically included: 1) email accounts that have sent or received data from Awad's personal or Baselayer google drive; 2) Awad's apply id; 3) all devices used to communicate with Leviloff. Defendants in fact AGREED to all this at the hearing. See Hearing Tr. 14:14-20:12. When Defendnats pushed back on the specific data sources, the Court rejected those arguments. See Tr 9:12-12-17.

Second, I am not sure I am following your edits on search terms. The Court was 100% clear that Plaintiffs will provide and select what search terms Plaintiffs want without input or objection from Defendants. This issue was specifically disputed already and the Court rules in our favor. Tr. 17:12-18:16. Please confirm you agree in an email as I think this may just be a misunderstanding of the edits.

Third, the edits to prior section 9 and 10 are a non-starters.  This is standard for a protocols to ensure forensics is effective and actually finds documents. Unless this is an attempt to hide responsive documents, I don't understand why these edits were made. I can provide a declaration from IDS (and multiple other vendors) to explain further. In short, the edits are concerning, boarding on alarming.

Fourth, concerning Section 19, when there are admissions of deletion and that Awad himself went onto Leviloff's baselayer computer and email, an anti-forensics evaluation is critical.  Plaintiffs cannot agree to delete this section.

Please provide times that work for you and we can tee all this up for Judge Casteel where there is disagreement.

Best,
Justin


**Justin K. Victor**
Shareholder

Greenberg Traurig, LLP
3333 Piedmont Road NE | Suite 2500 | Atlanta, GA 30305
T +1 678.553.2169 | C + 1 248.563.7754
victorj@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

<image001.png>

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.