# WILSON SONSINI

Matthew D. Gorman
Email: mgorman@wsgr.com
Direct dial: 212-497-7786

Wilson Sonsini Goodrich & Rosati
Professional Corporation

One Boston Place
201 Washington Street, Suite 2000
Boston, Massachusetts 02108-4403

O: 617.598.7800
F: 866.974.7329

*[handwritten notes: file on ECF and send versions in MS Word via Chambers email.]*

*[handwritten notes: Submit a clean and marked to show changes version of the proposed revision to the Order by May 6 & Plaintiff may respond by May 8. SO ORDERED.]*

*[handwritten: 5/1/2025]*

May 1, 2025

**Via ECF**

Hon. P. Kevin Castel
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312
CastelNYSDChambers@nysd.uscourts.gov

Re:    ***Middesk, Inc. v. Osiris Ratings, Inc., et al.*; No. 1:25-cv-02677**

Dear Judge Castel:

As Your Honor is aware, we represent Defendants Osiris Ratings, Inc. d/b/a Baselayer (the "Company" or "Baselayer") and Jonathan Awad (together with Baselayer, "Defendants"). We write in response to Middesk, Inc.'s ("Middesk", together with Defendants, the "Parties") letter motion dated April 28, 2025, supplemental letter dated April 29, 2025 (jointly "Plaintiff's Motion"), and the Court's entry of Middesk's proposed forensic protocol yesterday (the "Order"). We write to respectfully request that (1) the Court consider the excessive scope of Middesk's over 1,350 proposed search terms for the forensic analysis, (2) permit Defendants to object to hits resulting from the search terms that contain Defendants' trade secrets and have no indication whatsoever of belonging to Middesk, (3) correct multiple express misrepresentations made by Plaintiff in the protocol, and (4) reconsider ordering the imaging of the personal devices of two Baselayer employees who never worked at Middesk and have nothing to do with the claims in this case. Defendants appreciate the Court's review of these items since Defendants never had an opportunity to respond to Plaintiff's Motions despite having four business days to do so pursuant to Rule 3.B. of Your Honor's Individual Practices in Civil Cases.

First and foremost, we write to express that throughout negotiations of the forensic protocol, Defendants have never once suggested that the forensic examination not be completed or not include metadata, nor have Defendants tried to slow down the process. To the contrary, Defendants have agreed that the forensic examination is important and should be conducted imminently, and Defendants instructed the examiner to conduct interim steps even though the details of the protocol itself were still being finalized. Defendants are focused on achieving an expedited forensic review, with appropriate procedural safeguards to ensure that Defendants' own trade secrets are not disclosed and to ensure the process is not bogged down by an unduly burdensome number of documents to review due to excessively broad search terms. That is precisely what will happen though if this review proceeds with Plaintiff's search terms.

AUSTIN    BEIJING    BOSTON    BOULDER    BRUSSELS    HONG KONG    LONDON    LOS ANGELES    NEW YORK    PALO ALTO

SALT LAKE CITY    SAN DIEGO    SAN FRANCISCO    SEATTLE    SHANGHAI    WASHINGTON, DC    WILMINGTON, DE

**WILSON
SONSINI**

Hon. P. Kevin Castel
May 1, 2025
Page 2


**Search Terms**

On April 23, 2025, the Parties engaged in a productive meet and confer concerning the outstanding terms to be negotiated in the forensic review protocol, including a discussion of how to address potential concerns over the scope of Plaintiff's proposed search terms (which Defendants had yet to see at the time). Notably, on the call, Plaintiff's counsel acknowledged that if the search terms they provide would yield an unwieldy number of hit counts, they were amenable to discussing how to narrow the search terms and extended the time Defendants would be permitted to review the documents for objections. Defendants appreciated this acknowledgment and understood it to mean that the review of the hit log was not intended to be an undue burden and should instead be feasible to complete within the seven-day review period provided in the protocol.

However, after the meet and confer ended, Plaintiff sent to Defendants their proposed search terms. **<u>Plaintiff's list includes a total of 1,353 unique terms</u>**. They include: 8 "basic terms", 1 password, 62 file names, 12 email subjects, 423 customer names, prospect names, and file names, 218 additional customer and prospect names, 118 employee names, 16 Middesk terms and vendors, 105 phone numbers, 105 phone numbers in a second format, 107 personal email accounts, 56 Middesk email accounts, and 122 more customer names, prospect names, and file names. Notably, Middesk did not provide the Court with the specific search terms, or give any indication of exactly how expansive its list really is. The search terms are marked as HIGHLY CONFIDENTIAL INFORMATION, so we have omitted specific examples not already disclosed by Plaintiff, but at a high level, the terms include commonly used words, basic industry terms, names of common banks, names of common vendors and customers in the industry, among other terms that are in no way designed to recover Middesk specific information that may be on Defendants' accounts and devices. Indeed, the search terms include phone numbers and email addresses – which would force Defendants to review every single message between Defendants and these individuals – the vast majority of which (if not all) will have nothing to do with this case. And, not only will Defendants need to review every single message, but Defendants must also review the voluminous reports that accompany each document in order to assess whether the files in any sense "belong" to Middesk, were derived from Middesk documents, or were even opened, sent, downloaded, or otherwise (in addition to the multiple other reports that Middesk has asked for).

The single search term revealed by Plaintiff – "Middesk" – perfectly encapsulates why Plaintiff's proposal is problematic. Including this term will result in a hit every single time that word appears in any file, email, or text message in the multiple different devices and accounts which have been imaged. This is a prime example of using a sledgehammer when a scalpel is needed. The term "Middesk" is going to return hits that have nothing to do with Middesk's alleged trade secrets. Just by way of example, it will return nearly every single communication between Defendants and their attorneys on this matter and it will return every single document that mentions Awad's prior employment history given that he worked at Middesk (including every time he applied for a job after being let go from Middesk). Plaintiff has also included multiple variations on the term "Middesk," each of which is going to increase significantly the number of hits and the likelihood of a considerable number of false positives being returned.

WILSON
SONSINI

Hon. P. Kevin Castel
May 1, 2025
Page 3

Including this term in the protocol is akin to propounding a document request for every document and communication within the repositories using the term, "Middesk." Such a request would be considered patently overbroad and subject to legitimate objections based on relevance, burden, and proportionality.

Plaintiff states that it needs broad search terms to capture every possible document because Kroll could not immediately locate a single file based on a specific file name provided by Defendants' counsel.[1]  Of course, this is not the case. The file in question was entitled "Middesk Series B Deck _ 2022".  Yes, using the term, "Middesk" would have returned this file as a hit, but it also will return hundreds of thousands of other hits. On the other hand, you could craft any number of keyword searches based on the understood file name, including terms using Boolean connectors of the words in the file name or different variations on the full file name in order to make sure all bases were covered. These methods are more than sufficient to locate the relevant files and will not capture more results than necessary. It is not necessary to use the term "Middesk" to find this file or any like it.

Middesk's proposal is entirely untenable.  Defendants had already agreed in the protocol that Plaintiff would be permitted to submit their search terms, but they never anticipated that Plaintiff would propose such a voluminous spreadsheet of terms that would be entirely unworkable.  As a result, Defendants then proposed that the parties mutually agree to a total hit count (not a limit on search terms) and that the seven-day review period not begin until the total hit count was below a mutually agreeable threshold.  Otherwise, Defendants are concerned about the ability to review hundreds of thousands of hits in just seven days.  We are looking for a practical solution to this issue. Plaintiff's proposed search terms would transform what is intended to be an expedited forensic review to halt any potential irreparable harm to instead be a lengthy, protracted review process of hundreds of thousands of documents, most of which likely have no rational connection to Middesk's documents and would instead yield entirely irrelevant documents as well as Defendants' trade secrets. The solution to preventing harm to Plaintiff cannot be to require Defendants to disclose all of their trade secrets.

Defendants proposed that the Parties obtain a hit count on the search terms to understand the exact volume of documents at issue so that the Parties can have an informed discussion, without the need for hypotheticals and suppositions.  Plaintiff originally agreed to this proposal.  Defendants then requested that Kroll provide the hit count, which is currently taking at least two days for Kroll to be able to send the hit count.   In the meantime, Plaintiff is now prohibiting Kroll from running the hit count so the parties do not even understand the full scope of the hits that will be returned from Plaintiff's proposed terms.  The excessiveness of Plaintiff's proposed search terms is further exemplified by the fact that it has taken Kroll two days to generate a basic hit report.

---

[1] We note that the file was found immediately after Defendants' counsel clarified that there were spaces surrounding the "_".

**WILSON
SONSINI**

Hon. P. Kevin Castel
May 1, 2025
Page 4

**Plaintiff Misrepresented the Parties' Agreement and Added New Terms**

Defendants did not see a copy of Plaintiff's latest proposed forensic review protocol that was attached to their letter until they filed it. Notably, Plaintiff's proposed forensic review protocol is littered with brand <u>new</u> terms and changes that were never previously proposed or discussed in all of the calls and emails between the Parties to date. More problematically, the protocol also includes at least five blatant misrepresentations of the parties' agreement over the "Devices" to be covered by the protocol and which had already been imaged by Kroll. The protocol filed by Middesk states that "the Parties have agreed to enter into this Protocol covering the below electronic devices and cloud and email accounts" and then includes bullet points of the supposed devices and accounts which the parties have agreed upon. Dkt. 46-1. Middesk helpfully provided the Court with a redline showing its requested changes from a prior version of the protocol. Among the multiple changes to the scope of "Devices" supposedly agreed upon by the parties, Middesk added (1) Awad's personal email accounts, (2) Baselayer email accounts that sent or received data from Awad's personal Google Drive, (3) Awad's "accounts (e.g. social media apps, LinkedIn, WhatsApp, Slack, etc.)" used to communication with Leviloff, (4) "cell phone cloud backups and synchronized data" for any devices used to communicate with Leviloff, and (5) Leviloff's Baselayer Google Drive. Dkt. 46-2 at pp. 1-2.

The parties never agreed that these items would be included in the scope of "Devices" covered by the protocol. Middesk knew this when it filed the protocol and represented to the Court that this reflected the parties' agreement. Moreover, Middesk knew which accounts and devices had been imaged by the Court-ordered deadline but revised the protocol in such a way that Defendants are now in violation of the Court's order, and the terms of the protocol, by not having the above late-added devices and accounts imaged by the deadline. The scope of the Devices imaged by Kroll, and as understood to encompass the full scope of Devices that would be covered by the protocol is included directly below. Defendants respectfully request that the court replace the "Devices" covered by the ordered protocol with the list of devices and accounts listed below. If the Court is not inclined to do so, Defendants respectfully request a conference with the Court to explain why the scope of "Devices" as proposed by Plaintiff is unnecessary, inapplicable, and overly broad. Among other issues, Plaintiff included Awad's Apple ID as a "Device" despite the fact it is not something that can be imaged, would not otherwise be covered by any of the remaining substantive terms of the protocol, and is now a totally moot point as Middesk has been able to unlock and gain full access to Awad's Middesk laptop without need for the Apple ID.

- "Devices" covered by the protocol and which have already been imaged by Kroll:
    - *Awad's personal Google Drive identified within the Awad Declaration*

    - *Awad's Baselayer Google Drive identified within the Awad Declaration*

    - *Baselayer email accounts that are connected to the Baselayer Google Drive account.*

**WILSON
SONSINI**

Hon. P. Kevin Castel
May 1, 2025
Page 5

- o  *Awad's personal computer*

- o  *Awad's Baselayer computer*

- o  *Awad's personal cell phone*

- o  *Leviloff's Baselayer email*

- o  *Leviloff's Baselayer computer*

Plaintiff now also proposes adding "all computers and phones (business and personal) used by Tim Hyde and Jeremy [sic] Farber".[2]  This proposed addition is a gross invasion of privacy without any reasonable justification. Based on the parties' discussions, Defendants understood that Plaintiff wanted only the Baselayer email accounts that were connected to the Baselayer Google Drive account, which means that they would have had access to the files in the *entirety* of the Google Drive account. Upon learning for the first time on April 24, 2025 that is what Plaintiff was seeking, we promptly notified Plaintiff's counsel that Mr. Hyde and Mr. Farber were the only such employees and had Kroll image their Baselayer email accounts as discussed with Plaintiff's counsel. At this juncture - where there has been no evidence whatsoever that Hyde or Farber used or downloaded any of the Middesk files - there is simply no reason that all of Hyde's and Farber's devices, business and personal, must be forensically examined.  Defendants even told Plaintiff's counsel that if the forensic review of Hyde and Farber's emails and of the Baselayer Google Drive show that Hyde or Farber downloaded any of the Middesk files, then we can discuss their devices to be imaged.  The current forensic review will examine the download activity of the Baselayer Google Drive and will show the hit results in Hyde's and Farber's emails (if any).  Defendants are willing to have the Baselayer computers of Hyde and Farber imaged as well, but we oppose subjecting their personal devices (computers, phones) to forensic imaging unless and until there is any evidence whatsoever that Hyde or Farber used or disclosed the Middesk files and may have Middesk information on personal devices.  To image their personal devices at this juncture would significantly impose on their rights to privacy, particularly as third parties to this action.  Hyde and Farber never worked at Middesk and they are not implicated by any allegations of the Complaint.  Rather, they are simply administrators on the Baselayer drive *generally*.  Their status as admins should not give Middesk *carte blanche* to review all of the files on their personal devices and their personal emails.  Further still, this would exacerbate the issue of the total number of hits we will receive on Plaintiff's search terms, most (if not all) of which will be false positives.

**Scope of the Protocol**

There is an overarching difference of understanding as to the goal of the forensic review. Defendants understand that the forensic examination is intended to prevent any irreparable

---

[2] Plaintiff's protocol, which it had the Court order, does not even identify the correct person.  The protocol refers to a Jeremy Farber, but Jared Farber is the person in question.

**WILSON SONSINI**

Hon. P. Kevin Castel
May 1, 2025
Page 6

harm to Middesk by uncovering any Middesk-specific files on Defendants' devices (including any time such Middesk files are copied, shared, or forwarded) and to ensure removal of such Middesk files from those devices. As such, we believe Defendants should be permitted to object to files in the hit log that are Defendants' confidential information and that have no indication whatsoever of belonging to Middesk or being derived from Middesk files.

As we understand it, Plaintiff believes the forensic examination is a way for them to obtain voluminous discovery in this action and to be entitled to receive every single document that hits on the 1,353 search terms in Defendants' devices (other than privileged or personal documents), and specifically have expressed that they are entitled to every single communication between Defendants and customers or prospective customers. We fundamentally do not agree. Baselayer and Middesk are competitors – it would be entirely outrageous if Plaintiff (or Plaintiff's counsel) were permitted to receive ALL of Baselayer's documents, including trade secret information and other confidential materials, that are not privileged or personal. Plaintiff's search terms would result in producing Baselayer's entire company over to Middesk's counsel. This would entirely eviscerate the discovery process.

Plaintiff believes that this issue is solved by permitting Defendants to mark documents as HIGHLY CONFIDENTIAL INFORMATION. That is not so. It could take hundreds of hours to review the files even to designate them under the Protective Order if there are indeed hundreds of thousands of hits. Additionally, there certainly are risks that with such a voluminous production, that some documents or information contained therein will be shared with Middesk. There is no compelling reason to subject Defendants to a requirement to turn over essentially their entire company files to their competitor. Any documents that are appropriate for this action shall be produced in the normal discovery process in response to document requests from Plaintiff, but not in a massive data dump from Baselayer to Middesk.

Plaintiff argues that the broad scope of the protocol and search terms are necessary based on the Leviloff declaration, and faults Defendants for simultaneously not denying the allegations therein and for not disclosing the facts themselves. This argument is nonsensical. Defendants were not even aware of the Leviloff declaration until it was filed by Plaintiff's reply papers in support of their Order to Show Cause. Defendants had no opportunity before the Court to refute these allegations. Plaintiff also gives significantly undue weight to Leviloff's highly dubious statements, the veracity of which will be addressed during discovery.

Middesk failed to provide any support whatsoever for the need for broad search terms, other than the easily debunked claim about the Middesk PowerPoint addressed above. Middesk gives no thought to the incredible cost and burden that will be imposed on Defendants, nor to the fact that the plainly overbroad search terms will undoubtedly result in an excessive number of hits, including many false positives. The actual consequences that would result, if Plaintiff's proposed protocol is put into effect with their proposed search terms are as follows:

- The forensic examination will be significantly delayed as Defendants are forced to review hundreds of thousands of documents, most of which are presumably irrelevant for this litigation;

**WILSON SONSINI**

Hon. P. Kevin Castel
May 1, 2025
Page 7

- Defendants will be forced to turn over voluminous documents detailing all of Baselayer's trade secrets and confidential information, including potentially every email with customers and potential customers; and

- The forensic examination will be further delayed as Plaintiff now seeks new devices to be imaged (those of Hyde and Farber), after the original imaging was already completed.

**Conclusion**

In light of the foregoing, Defendants would like to ensure an expedited process for the forensic review. Defendants therefore respectfully request that the Court modify the ordered forensic protocol by doing the following: (1) order that a hit count, per search term, be generated on Plaintiff's proposed search terms; (2) in the event that the hit count shows an unreasonable number of documents for a given search term (as the Court may determine or the Parties may agree on after a good faith meet and confer), order Plaintiff to suggest a narrower search term so that the terms are aligned with the purpose under which the forensic review was sought in the first place – to recover Middesk files and information; (3) order that Defendants may object to producing files from the hit count that would include Defendant's confidential information but that have no indication whatsoever of stemming from or belonging to Middesk; and (4) modify the agreed upon devices to be forensically imaged in accordance with the above list and to remove the personal devices of Hyde and Farber.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Matthew D. Gorman