
GT | GreenbergTraurig

May 8, 2025

**VIA ECF AND E-MAIL**
Hon. P. Kevin Castel
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007
CastelNYSDChambers@nysd.uscourts.gov

Re:    ***Middesk, Inc. v. Osiris Ratings, Inc. et al.*, No. 1:25-cv-02677 (PKC)**

Dear Judge Castel:

We represent Plaintiff Middesk, Inc. ("Middesk") in the above-referenced action. Pursuant to the Court's May 1, 2025 Order, Dkt. 54, Middesk respectfully submits the following for consideration in further support of Middesk's request for the entry of the Court-ordered forensics protocol, Dkt. 46 & Dkt. 48.

Exhibit A:    May 8, 2025 Declaration of Julian Ackert

Exhibit B:    A redline and annotated version of Middesk's proposed forensic protocol accepting certain of Defendants' edits in green and rejecting certain of Defendants' edits in red

Exhibit C:    Middesk's proposed forensic protocol

\* \* \*

This is not a misappropriation case where the parties alleged theft of a single document or a handful of emails. Here, even before discovery, there is a sworn statement from Defendant Leviloff that Defendant Awad took **"*everything*"** when he left Middesk to found Baselayer—a Middesk competitor. Dkt. 35-1 ¶ 6. Consistent with that, Defendants have already produced a Google Drive folder containing approximately **1,000** or more Middesk documents that Awad took when he left, likely constituting tens of thousands of pages, and including **99 *subfolders*** organized by the name of Middesk's customers/prospects. And, then, earlier this year, when Leviloff joined Baselayer, Awad offered Leviloff $10,000-$20,000 to try to obtain still more Middesk trade secrets. *Id.* ¶ 3. Leviloff has already produced in discovery photos of a hand-written notebook containing detailed notes and pricing about Middesk's customers/prospects that Middesk believes that Awad viewed—precisely to try to avoid an electronic trail. This is an extraordinary evidentiary record at the case's inception, and it demands a robust and complete forensic collection and examination just like the Court ordered at the April 15 hearing.

**Greenberg Traurig, LLP | Attorneys at Law**
Terminus 200 Building  |  3333 Piedmont Road NE, Suite 2500  |  Atlanta, Georgia 30305  |  T +1 678.553.2100  |  F +1 678.553.2212

Operates as: ~Greenberg Traurig Germany, LLP; «Greenberg Traurig Khalid Al-Thebity Law Firm; *A separate UK registered legal entity; +Greenberg Traurig, S.C.; » Greenberg Traurig Studio Legale Associato; ›Greenberg Traurig Brazil Consultores em Direito Estrangeiro – Direito Estadunidense; ∞Greenberg Traurig LLP Foreign Legal Consultant Office; "Greenberg Traurig Singapore LLP; ^A branch of Greenberg Traurig, P.A., Florida, USA; ¤GT Tokyo Horitsu Jimusho and Greenberg Traurig Gaikokuhojimubegoshi Jimusho; ‹Greenberg Traurig Limited; ~Greenberg Traurig Nowakowska-Zimoch Wysokiński sp.k.

www.gtlaw.com

May 8, 2025
Page 2

Defendants' proposed edits to the forensics protocol fail to reflect the implications or gravity of that evidence and would stunt Middesk's and the Court's ability to completely preserve and assess the scale and scope of Defendants' misappropriation.

While Defendants complain about the potential volume of hits and try to impose an entirely arbitrary cap, given the underlying evidence and admissions by Defendants, it would not be surprising if there are many thousands of hits. The hit count may also be large due to the large number of devices Defendants used to communicate. Under these facts, that is just math, and a large number of hits should be entirely expected. But selectively and arbitrarily limiting the devices searched or capping the number of hits is inappropriate and reduces the comprehensiveness and reliability of the process. Analyzing each device and creating a black-and-white record of what documents exist, who used them, when, and where they went, is critically important and is precisely why the Court ordered computer forensics and a fast-track schedule in this case. The full scope is also important because—since the Complaint—Defendants have admitted that other Baselayer employees, including co-founder Timothy Hyde, had access to Middesk's documents during the past two-plus years.

**Given this context and evidence, the Court should enter Middesk's revised proposed forensics protocol attached as <u>Exhibit C</u>, which accepts some and rejects some of Defendants' proposed edits.** To guide the Court, Middesk has attached as <u>Exhibit B</u> a redlined and annotated version of the forensics protocol that shows in green the edits that Middesk accepted and shows in red the edits that Middesk rejected, along with brief margin comments.

Middesk has also attached as <u>Exhibit A</u> the May 8, 2025 Declaration of Julian Ackert, Managing Director at iDiscovery Solutions, Inc., ("iDS"), which briefly explains why the Court should reject certain of Defendants' edits from a technical standpoint, based on Mr. Ackert's extensive experience and understanding of a typical forensics protocol process.

Middesk highlights just three of the problems with Defendants' edits below.

*First*, Defendants have renewed their already-rejected request to dictate Middesk's search terms. *See* Ex. B at 6. Defendants seek to impose a completely arbitrary 25,000-hit cap. Then, Defendants want to force Middesk to narrow the terms by choosing new terms in a meet-and-conferral process with Defendants—but to do so *without the benefit of any metadata on the initial hits*, just the bare hit counts per search term. Middesk would have no idea why certain terms returned a given number of hits, nor whether that was because they are Middesk documents, Baselayer documents derived from Middesk documents, or unrelated documents. Middesk would then have to simply guess which search terms to change to satisfy the arbitrary cap—all the while potentially missing actual Middesk documents in this process. If there are a large number of hits, Middesk is amenable to a reasonable extension of time for Defendants to review the hits, but the solution is not an arbitrary cap or Defendants dictating Middesk's search terms.

*Second*, Defendants request the ability to "object" to hits being produced beyond the two broad categories contained in the original protocol: 1) attorney-client privilege and 2) personal

May 8, 2025
Page 3

documents.  Those should be readily identifiable categories that do not generate disputes.  But Defendants now seek to add a third objection category that is an enormous, improper loophole: a "Baselayer trade secret or confidential information."  *See* Ex. B at 5.  This expansion threatens to eviscerate the protocol's purpose.  "Confidential information" is an incredibly broad, vague, and undefined term that Defendants could try to argue covers nearly all of their internal documents.  Another significant problem is that a document could contain *both* Middesk trade secrets or information *and* Baselayer confidential information.  That is a document that should be included in the Hit Log, not objected to and excluded by Defendants.  Allowing this loophole would enable Defendants to object to large numbers of hits, force the parties to spend money and months fighting about those objections, delay the production of discovery, and unfairly undermine the fast-track nature of this case.  And, then, when objections are overruled, the Forensic Examiner would have to re-do the reports to then account for the complete universe of documents.  Defendants should not be permitted to unilaterally decide (or guess) on the front end what documents or communications are or were created through, or aided by, Middesk documents and information.  That is not practical or fair, and it is subject to errors and abuse.  Any legitimate concerns that Baselayer has with confidentiality can be addressed by designations under the parties' stipulated Protective Order, including through appropriate Attorneys-Eyes-Only designations.

*Third*, Defendants request that Baselayer Co-Founder Timothy Hyde and Head of Operations and Finance Jared Farber be excluded from the protocol, except for their "Baselayer computers."  *See* Ex. B at 4.  Defendants complain that Middesk added those individuals while the protocol was being negotiated.  But it was Defendants who first disclosed that Hyde and Farber had access to the Google Drive with Middesk documents, a fact of which Middesk was previously unaware.  As soon as Defendants made that disclosure, Middesk requested that they be added to the protocol.  Since Awad deleted documents on Baselayer's Google drive, it is critical to analyze all the devices that had access to the drive to determine what documents were accessed and when.  Here, the devices at issue are no longer just Defendant Awad's but also Hyde's and Farber's.  Middesk should not be precluded from a complete examination of their devices, and Baselayer should not get to arbitrarily restrict that universe.

We appreciate the Court's attention to this matter.

Respectfully,

*/s/ Justin K. Victor*
*/s/ Fredric J. Bold, Jr.*

*Counsel for Plaintiff Middesk, Inc.*

*cc via e-mail*:    Justin Victor    Anthony Rainone    Rushton Pope
                    Jason Burns      Heather Diles
                    Shira Poliak     Matt Gorman