# EXHIBIT A

<u>**SUPPLEMENTAL DECLARATION OF JULIAN ACKERT**</u>

I, Julian Ackert, hereby declare as follows:

<u>**Background and Professional Qualifications**</u>

1. I am a Managing Director at iDiscovery Solutions, Inc., ("iDS"), an expert services and consulting firm that provides independent computer forensics, electronic discovery expert testimony and analysis, original authoritative studies, and strategic consulting services to the business and legal community.

2. I have over 20 years of experience in consulting and litigation technologies that focus on electronic discovery and computer forensics. I have a Bachelor of Science degree in Computer Science from the University of Virginia. My curriculum vitae has been previously provided in this matter.

3. I have been provided the following materials.

   a. Letter from Justin K. Victor and Fredric J. Bold, Jr. to Hon. P. Kevin Castel, dated April 28, 2025;

   b. Letter from Justin K. Victor and Fredric J. Bold, Jr. to Hon. P. Kevin Castel, dated April 29, 2025;

   c. Letter from Matthew D. Gorman to Hon. P. Kevin Castel, dated May 6, 2025; and

   d. Redline of the [Proposed] Order to Perform Forensic Inspection and Protocol Agreement, indicating changes by Defendants counsel [Exhibit B to Letter from Matthew D. Gorman to Hon. P. Kevin Castel, dated May 6, 2025].

4. Based on my review of the redline changes proposed by Defendants and my experience as a forensic neutral on dozens of matters, certain redline changes proposed by Defendants counsel are not appropriate for this matter.  Those proposed redline changes are listed

1

below.

a.    Page 2:   The limitation of Baselayer email accounts to only those that are "connected to" the Baselayer Google Drive.   Defendants propose to exclude Baselayer email accounts that have "sent or received data" from Awad's Baselayer Google Drive and instead limit it to accounts that are "connected to" Awad's Baselayer Google Drive.   Because Awad's Baselayer Google Drive has over 1000 Middesk documents,[1] a limitation of Baselayer accounts that are "connected to" Awad's Baselayer Google Drive is inappropriate as it removes email accounts that are not "connected to" Awad's Baselayer Google Drive but may have historically "sent or received data" from Awad's Baselayer Google Drive.   A more appropriate forensic inspection protocol process for this matter would be to first examine the Baselayer email accounts that at any time could have "sent or received data" from Awad's Baselayer Google Drive, then exclude Baselayer accounts from the forensic protocol that did not "send or receive data" from Awad's Baselayer Google Drive based on that examination.   Defendants proposed change is not appropriate for this matter.

b.    Page 2:  The removal of Baselayer Email accounts that have "sent or received data" from "Awad's personal Google Drive".  Awad's personal Google Drive is in scope for the forensic inspection protocol and identified in the Awad Declaration.  As such, an analysis of Baselayer Email accounts that at any time could have "sent or received data" from Awad's Personal Google Drive would also be in scope.  A

---

[1] Letter from Justin K. Victor and Fredric J. Bold, Jr. to Hon. P. Kevin Castel, dated April 29, 2025.

more appropriate forensic inspection protocol process for this matter would be to first examine the Baselayer email accounts that at any time could have "sent or received data" from Awad's Personal Google Drive, then exclude Baselayer accounts from the forensic protocol that did not "send or receive data" from Awad's Personal Google Drive based on that examination.  Defendants proposed change is not appropriate for this matter.

c.     Page 3:  The removal of "Awad's device(s) and accounts (e.g. social media apps, LinkedIn, WhatsApp, Slack, etc.) used to communicate with Leviloff, including any cell phone and cell phone cloud backups and synchronized data".  A blanket removal of these devices and accounts, without any explanation as to why each particular device or account should be removed, is inappropriate for a forensic inspection protocol that would be implemented in this matter as these are devices and accounts that Awad could have used to communicate with Leviloff.

d.     Page 3:  The removal of "Leviloff's Baselayer Google Drive".  Leviloff is a key custodian in this matter and his Baselayer Email, Baselayer computer, and Baselayer Google Drive need to be examined as part of the forensic inspection protocol.  Excluding his Google Drive is not only inappropriate as it is a key custodial data source for a key custodian, but also inconsistent in that his Baselayer Email and Baselayer computer *are* in scope and not proposed for removal by Defendants.

e.     Page 3:  The limitation of devices for custodians Tim Hyde and Jared Farber to *only* their Baselayer computers.   Defendants have disclosed that both Tim Hyde

3

and Jared Farber had administrative access to Awad's Baselayer Google Drive.[2] There is no evidence that Tim Hyde and Jared Farber did not or could not access Awad's Baselayer Google Drive from non-Baselayer devices, and as such any non-Baselayer devices for Tim Hyde and Jared Farber also need to be included in the forensic inspection protocol.

f.    Parameter 4, Page 3; Step 6, Page 5:  The limitation of search term hit reports to 25,000.  This is not a process I have seen in any of the dozens of matters where I have been engaged as a forensic neutral.  Picking an arbitrary 25,000 number for search term hits is not appropriate.   A search term hit report by itself, without any information, such as metadata, regarding the underlying hits, cannot provide any context as to whether identification and remediation of the resulting documents that hit on the search terms is necessary.   If a search term returns many documents, that doesn't automatically mean that those documents returned are overly broad and include many false positive hits.  There is already admission of over 1000 Middesk documents on Baselayer systems.  As such, this is not a matter where a forensic inspection protocol is intended to identify and remediate only a handful of documents. In this matter, with over 1000 Middesk documents identified on Baselayer Systems, a search term that returns many documents could mean that there are many additional documents in scope for identification and remediation.

g.    Parameter 5, Page 4:   The addition of "Baselayer trade secret or confidential

---

[2] Letter from Justin K. Victor and Fredric J. Bold, Jr. to Hon. P. Kevin Castel, dated April 28, 2025.

5

information" to the objections that Defendants can make to a search hit.  In this matter, there are over 1000 Middesk documents on Baselayer systems.  When I have been engaged as a forensic neutral in similar matters, an appropriate forensic inspection protocol would search for and provide any documents with search term hits to both parties for review, including any documents that contain *both* Middesk confidential information and Baselayer confidential information.  Excluding from the forensic protocol documents that contain both Middesk confidential information *and* Baselayer confidential information defeats the purpose of a forensic inspection protocol that is intended to identify and remediate Middesk information from Baselayer systems.  Those documents should certainly first be screened for privilege and personal information, and these two screens are already included in the forensic inspection protocol.  A more appropriate approach, and one that I have encountered in matters with forensic inspection protocols where I am the forensic neutral, would be to account for "Baselayer trade secret or confidential information" by marking those documents Attorneys Eyes Only.

I reserve the right to supplement or amend these findings and/or opinions should new information become available.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 8th day of May 2025 in Washington, D.C.

_____

Julian Ackert

6