7J: ;4;F C



**Littler Mendelson, P.C.**
900 Third Avenue
New York, New York 10022.3298

Michael Weber
Shareholder
212.583.2660 direct
212.583.9600 main
212.320.0465 fax
MWeber@littler.com

February 28, 2025

**VIA EMAIL AND OVERNIGHT MAIL**

Timothy Hyde
Jonathan Awad
Osiris Ratings, Inc., d/b/a Baselayer
445 Grand St, Unit 2
Brooklyn, New York, 11211-4703
support@baselayerhq.com

<u>Re: Josh Leviloff - Breach of Contract</u>

Dear Mr. Hyde and Mr. Awad:

This firm represents Middesk, Inc. ("Middesk" or the "Company") in connection with the above-referenced matter. We write to put Osiris Ratings, Inc., d/b/a as Baselayer ("Baselayer") on notice of the post-employment contractual obligations that Josh Leviloff owes Middesk under his Proprietary Information and Inventions Agreement dated July 15, 2023 ("PIIA"), which we believe he has breached. A copy of the PIIA is enclosed with this letter.

Mr. Leviloff is in breach of several post-employment restrictive covenants. Please be advised that Mr. Leviloff owes non-disclosure and confidentiality obligations to Middesk. Middesk entrusted Mr. Leviloff with, and provided him with access to, its confidential and proprietary documents and information. In Paragraph 4 of the PIIA, Mr. Leviloff assigned and agreed to hold in confidence for the sole benefit of the Company all  "[i]nventions and all other business, technical and financial information (including, without  limitation, the identity of and information relating to customers or employees) [he]  develop[ed], learn[ed] or obtain[ed] during the term of [his] employment that relate to Company or the business or demonstrably anticipated business of Company." Moreover, pursuant to Paragraph 2 of the PIIA, Mr. Leviloff "all right, title and interest . . . relating to any and all inventions (whether or not patentable), works of authorship, mask works, designs, know-how, ideas and information made or conceived or reduced to practice, in whole or in part, by [him] during the term of [his] employment with Company Inventions to Company."

February 28, 2025
Page 2

Our investigation into Mr. Leviloff's conduct in the final months of his employment with Middesk is ongoing. Preliminarily, there are indications of suspicious activity towards the end of his employment term at Middesk. There is no doubt that Baselayer and Middesk are in competition and will continue to be in the future. Any misappropriation of Middesk's information or data – any information about Middesk that has been shared verbally or in writing by Mr. Leviloff,  including lists of vendors, disclosure of product and data partnerships, use of any of the Company's pricing information or business strategy  – will be treated as a violation of law and of the PIIA.

To the extent that Baselayer was unaware of the provisions in the attached agreements, it is now on notice of them. As such, Baselayer employing or contracting with Mr. Leviloff for the provision of services competitive, indirectly or directly, to those he provided at Middesk or that Middesk reasonably anticipated at the time of his separation, may give rise to claims by Middesk against Baselayer for tortious interference. Middesk is prepared to enforce the PIIA and to take all appropriate actions it deems necessary to protect its rights thereunder.

Given the seriousness of this issue and the necessity of protecting Middesk's contractual and other legal rights, please provide us with the following by the close of business on **Wednesday, March 5, 2025**:

1. Confirmation that Baselayer will not contract with or employ Mr. Leviloff in a position where he is providing any services that would result in a violation of his restrictive covenants. Or if Baselayer is already employing or contracting with Mr. Leviloff in such a position, confirmation that Baselayer will cease doing so.

2. Written confirmation that Baselayer is not presently aware of any Middesk trade secrets, confidential information, or proprietary information on its computer systems or otherwise in its custody, possession or control – including in the custody, possession, or control of its employees, contractors, or owners.

3. Agreement to a forensic protocol for the search and remediation (i.e., identification and deletion), to be carried out by a third-party vendor, of all Middesk confidential information that may exist on Baselayer's devices, systems, electronic storage media, cloud-based accounts, and computer system folders accessed, provided, or related to Mr. Leviloff's engagement with Baselayer.

Finally, this letter places Baselayer on notice of its obligation to preserve and maintain in a discoverable format, and refrain from destroying, altering, transferring, or rendering unavailable, any and all documents or information, in any form or media (including but not limited to any electronically stored information on any computer or other device capable of storing information), that may relate in any way to Baselayer's hiring of Mr. Leviloff, and to Middesk's trade secrets, proprietary or confidential information, and use or disclosure of same. The obligation to retain documents and information includes the obligation to discontinue all

February 28, 2025
Page 3

data destruction and data recycling practices. If Baselayer has not taken steps necessary to preserve relevant evidence, this letter is intended to serve as a preservation letter with respect to all relevant documents, materials, and information, in any form. **Any failure to preserve documents or information could lead to the imposition of sanctions or monetary penalties by a court or an arbitrator in the event of litigation, including, without limitation, a presumption that such materials would have been damaging to your defense.**

Middesk reserves all available rights and remedies, whether expressly referenced above or not, and nothing in this letter is intended or should be construed as a waiver of any rights or remedies available to them in law or in equity.

Very truly yours,

*/s/ Michael Weber*
Michael Weber

# Middesk

**PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT**
**(New York employees)**

The following confirms and memorializes an agreement that **Middesk, Inc.**, a Delaware corporation ("Company") and I (Josh Leviloff) have had since the commencement of my employment (which term, for purposes of this agreement, shall be deemed to include any relationship of service to Company that I may have had prior to actually becoming an employee) with Company in any capacity and that is and has been a material part of the consideration for my employment by Company:

1. I have not entered into, and I agree I will not enter into, any agreement either written or oral in conflict with this Agreement or my employment with Company. I will not violate any agreement with or rights of any third party or, except as expressly authorized by Company in writing hereafter, use or disclose my own or any third party's confidential information or intellectual property when acting within the scope of my employment or otherwise on behalf of Company. Further, I have not retained anything containing any confidential information of a prior employer or other third party, whether or not created by me.

2. Company shall own, and I hereby assign to Company, all right, title and interest (including patent rights, copyrights, trade secret rights, mask work rights, *sui generis* database rights and all other intellectual property rights of any sort  throughout the world) relating to any and all inventions (whether or not patentable), works of authorship, mask works, designs, know-how, ideas and information (collectively, "Inventions") made or conceived or reduced to practice, in whole or in part, by me during the term of my employment with Company (collectively, "Company Inventions"), and I will promptly disclose all Company Inventions to Company. The term "Company Inventions" will not include any Invention that (a) I cannot be required to so assign by law (including, without limitation, pursuant to the applicable statutory provision for my state of employment set forth in Appendix A, if any), or (b) otherwise meets all of the following requirements: (i) the Invention is developed entirely on my own time, (ii) the Invention is developed entirely without use of any of Company's facilities, equipment, Proprietary Information (as defined below) or other assets and (iii) the Invention is not useful with or related to the business of Company or Company's actual or demonstrably anticipated research or development. Without disclosing any third party confidential information, I will also disclose anything I believe is excluded by the foregoing so that Company can make an independent assessment. I shall further assist Company, at Company's expense, to further evidence, record and perfect the foregoing assignment and to perfect, obtain, maintain, enforce, and defend any rights specified to be so owned or assigned. I hereby irrevocably designate and appoint Company as my agent and attorney-in-fact, coupled with an interest and with full power of substitution, to act for and in my behalf to execute and file any document and to do all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by me. If I wish to clarify that something created by me prior to my employment that relates to Company's actual or proposed business is not within the scope of the foregoing assignment, I have listed it on Appendix B in a manner that does not violate any third party rights or disclose any confidential information. Without limiting Section 1 or Company's other rights and remedies, if, when acting within the scope

of my employment or otherwise on behalf of Company, I use or (except pursuant to this Section 2) disclose my own or any third party's confidential information or intellectual property (or if any Company Invention cannot be fully made, used, reproduced, distributed and otherwise exploited without using or violating the foregoing), Company will have, and I hereby grant Company a perpetual, irrevocable, worldwide royalty-free, non-exclusive, sublicensable right and license to exploit and exercise all such confidential information and intellectual property rights.

3.      To the extent allowed by law, paragraph 2 includes all rights of paternity, integrity, disclosure and withdrawal and any other rights that may be known as or referred to as "moral rights," "artist's rights," "droit moral," or the like (collectively "Moral Rights").  To the extent I retain any such Moral Rights under applicable law, I hereby ratify and consent to any action that may be taken with respect to such Moral Rights by or authorized by Company and agree not to assert any Moral Rights with respect thereto.  I will confirm any such ratifications, consents and agreements from time to time as requested by Company.

4.      I agree that all Company Inventions and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees) I develop, learn or obtain during the term of my employment that relate to Company or the business or demonstrably anticipated business of Company or that are received by or for Company in confidence, constitute "Proprietary Information."  I will hold in confidence and not disclose or, except within the scope of my employment, use any Proprietary Information.  However, I shall not be obligated under this paragraph with respect to information I can document is or becomes readily publicly available without restriction through no fault of mine.  Upon termination of my employment, I will promptly return to Company all items containing or embodying Proprietary Information (including all copies), except that I may keep my personal copies of (i) my compensation records, (ii) materials distributed to shareholders generally and (iii) this Agreement.  I also recognize and agree that I have no expectation of privacy with respect to Company's telecommunications, networking or information processing systems (including, without limitation, stored computer files, email messages and voice messages) and that my activity and any files or messages on or using any of those systems may be monitored at any time without notice.

5.      To the extent permitted under applicable law, I agree that until one year after the term of my employment, I will not encourage or solicit any employee or consultant of Company to leave Company for any reason (except for the bona fide firing of Company personnel within the scope of my employment).

6.      I agree that during the term of my employment with Company (whether or not during business hours), I will not engage in any activity that is in any way competitive with the business or demonstrably anticipated business of Company, and I will not assist any other person or organization in competing or in preparing to compete with any business or demonstrably anticipated business of Company.

7.      I agree that this Agreement is not an employment contract for any particular term and that I have the right to resign and

Company has the right to terminate my employment at will, at any time, for any or no reason, with or without cause.  In addition, this Agreement does not purport to set forth all of the terms and conditions of my employment, and, as an employee of Company, I have obligations to Company which are not set forth in this Agreement.  However, the terms of this Agreement govern over any inconsistent terms and can only be changed by a subsequent written agreement signed by the President of Company.

8.    I agree that my obligations under paragraphs 2, 3, 4 and 5 of this Agreement shall continue in effect after termination of my employment, regardless of the reason or reasons for termination, and whether such termination is voluntary or involuntary on my part, and that Company is entitled to communicate my obligations under this Agreement to any future employer or potential employer of mine.  My obligations under paragraphs 2, 3 and 4 also shall be binding upon my heirs, executors, assigns, and administrators and shall inure to the benefit of Company, it subsidiaries, successors and assigns.

9.    Any dispute in the meaning, effect or validity of this Agreement shall be resolved in accordance with the laws of the State of New York, without regard to the conflict of laws provisions thereof.  I further agree that if one or more provisions of this Agreement are held to be illegal or unenforceable under applicable law, such illegal or unenforceable portion(s) shall be limited or excluded from this Agreement to the minimum extent required so that this Agreement shall otherwise remain in full force and effect and enforceable in accordance with its terms. This Agreement is fully assignable and transferable by Company, but any purported assignment or transfer by me is void. I also understand that any breach of this Agreement will cause irreparable harm to Company for which damages would not be an adequate remedy, and, therefore, Company will be entitled to injunctive relief with respect thereto in addition to any other remedies and without any requirement to post bond.

10.    Pursuant to the federal Defend Trade Secrets Act of 2016, I acknowledge receipt of the following notice: "An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made in confidence to a Federal, State, or local government official or to an attorney solely for the purpose of reporting or investigating a suspected violation of law. An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.  An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal; and does not disclose the trade secret, except pursuant to court order."  I further understand that nothing contained in this Agreement limits my ability to (A) communicate with any federal, state or local governmental agency or commission, including to provide documents or other information, without notice to Company, or (B) share compensation information concerning myself or others, except that this does not permit me to disclose compensation information concerning others that I obtain because my job responsibilities require or allow access to such information.

**I HAVE READ THIS AGREEMENT CAREFULLY AND I UNDERSTAND AND ACCEPT THE OBLIGATIONS WHICH IT IMPOSES UPON ME WITHOUT RESERVATION.  NO PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME TO INDUCE ME TO SIGN THIS AGREEMENT.  I SIGN THIS AGREEMENT VOLUNTARILY AND FREELY, IN DUPLICATE, WITH THE UNDERSTANDING THAT COMPANY WILL RETAIN ONE COUNTERPART AND THE OTHER COUNTERPART WILL BE RETAINED BY ME.**

July 15, 2023                                                                 Employee

*Joshua Leviloff*

Signature

Josh Leviloff
Name (Printed)

Accepted and Agreed to:
**Middesk, Inc.**

By

Name   Kyle Mack

Title   CEO

<u>APPENDIX A</u>

**If I am employed by Company in California, California Labor Code Section 2870 is as follows:**

Application of provision providing that employee shall assign or offer to assign rights in invention to employer.

a.   Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

   1.   Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

   2.   Result from any work performed by the employee for his employer.

b.   To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

**If I am employed by Company in Delaware, Title 19, Section 805 of the Delaware Code Ann. is as follows:**

Any provision in an employment agreement which provides that the employee shall assign or offer to assign any of the employee's rights in an invention to the employee's employer shall not apply to an invention that the employee developed entirely on the employee's own time without using the employer's equipment, supplies, facility or trade secret information, except for those inventions that; (i) relate to the employer's business or actual or demonstrably anticipated research or development, or (ii) result from any work performed by the employee for the employer.  To the extent a provision in an employment agreement purports to apply to the type of invention described, it is against the public policy of this State and is unenforceable.  An employer may not require a provision of an employment agreement made unenforceable under this section as a condition of employment or continued employment.

**If I am employed by Company in Illinois, Chapter 765, Section 1060/2 of the Illinois Compiled Statutes is as follows:**

(1)    A provision in an employment agreement which provides that an employee shall assign or offer to assign any of the employee's rights in an invention to the employer does not apply to an invention for which no equipment, supplies, facilities, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) to the business of the employer, or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the employer. Any provision which purports to apply to such an invention is to that extent against the public policy of this State and is to that extent void and unenforceable. The employee shall bear the burden of proof in establishing that his invention qualifies under this subsection.

(2)    An employer shall not require a provision made void and unenforceable by subsection (1) of this Section as a condition of employment or continuing employment. This Act shall not preempt existing common law applicable to any shop rights of employers with respect to employees who have not signed an employment agreement.

(3)    If an employment agreement entered into after January 1, 1984, contains a provision requiring the employee to assign any of the employee's rights in any invention to the employer, the employer must also, at the time the agreement is made, provide a written notification to the employee that the agreement does not apply to an invention for which no equipment, supplies, facility, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) to the business of the employer, or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the employer.

**If I am employed by Company in Kansas, Sections 44-130 of the Kansas Labor and Industries Code is as follows:**

(a)    Any provision in an employment agreement which provides that an employee shall assign or offer to assign any of the employee's rights in an invention to the employer shall not apply to an invention for which no equipment, supplies, facilities or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless:

   (1)    The invention relates to the business of the employer or to the employer's actual or demonstrably anticipated research or development; or

   (2)    The invention results from any work performed by the employee for the employer.

(b)    Any provision in an employment agreement which purports to apply to an invention which it is prohibited from applying to under subsection (a), is to that extent against the public policy of this state and is to that extent void and unenforceable. No employer shall require a provision made void and unenforceable by this section as a condition of employment or continuing employment.

(c)    If an employment agreement contains a provision requiring the employee to assign any of the employee's rights in any invention to the employer, the employer shall provide, at the time the agreement is made, a written notification to the employee that the agreement does not apply to an invention for which no equipment, supplies, facility or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless:

   (1)    The invention relates directly to the business of the employer or to the employer's actual or demonstrably anticipated research or development; or

   (2)    The invention results from any work performed by the employee for the employer.

(d)    Even though the employee meets the burden of proving the conditions specified in this section, the employee shall disclose, at the time of employment or thereafter, all inventions being developed by the employee, for the purpose of determining employer and employee rights in an invention.

**If I am employed by Company in Minnesota, Section 181.78 of the Minnesota Labor, Industry Code is as follows:**

Subdivision 1. Inventions not related to employment. Any provision in an employment agreement which provides that an employee shall assign or offer to assign any of the employee's rights in an invention to the employer shall not apply to an invention for which no equipment, supplies, facility or trade secret information of the employer was used and which was developed entirely on the employee's own time, and (1) which does not relate (a) directly to the business of the employer or (b) to the employer's actual or demonstrably anticipated research or development, or (2) which does not result from any work performed by the employee for the employer. Any provision which purports to apply to such an invention is to that extent against the public policy of this state and is to that extent void and unenforceable.

Subdivision 2. Effect of subdivision 1. No employer shall require a provision made void and unenforceable by subdivision 1 as a condition of employment or continuing employment.

Subdivision 3. Notice to employee. If an employment agreement entered into after August 1, 1977 contains a provision requiring the employee to assign or offer to assign any of the employee's rights in any invention to an employer, the employer must also, at the time the agreement is made, provide a written notification to the employee that the agreement does not apply to an invention for which no equipment, supplies, facility or trade secret information of the employer was used and which was developed entirely on the employee's own time, and (1) which does not relate (a) directly to the business of the employer or (b) to the employer's actual or demonstrably anticipated research or development, or (2) which does not result from any work performed by the employee for the employer.

**If I am employed by Company in North Carolina, §§ 66-57.1 and 66-57.2 of the North Carolina Gen. Stat. is as follows:**

§ 66-57.1.  Employee's right to certain inventions.

Any provision in an employment agreement which provides that the employee shall assign or offer to assign any of his rights in an invention to his employer shall not apply to an invention that the employee developed entirely on his own time without using the employer's equipment, supplies, facility or trade secret information except for those inventions that (i) relate to the employer's business or actual or demonstrably anticipated research or development, or (ii) result from any work performed by the employee for the employer.  To the extent a provision in an employment agreement purports to apply to the type of invention described, it is against the public policy of this State and is unenforceable.  The employee shall bear the burden of proof in establishing that his invention qualifies under this section.

§ 66-57.2.  Employer's rights.

An employer may not require a provision of an employment agreement made unenforceable under G.S. 66-57.1 as a condition of employment or continued employment.  An employer, in an employment agreement, may require that the employee report all inventions developed by the employee, solely or jointly, during the term of his employment to the employer, including those asserted by the employee as nonassignable, for the purpose of determining employee or employer rights.  If required by a contract between the employer and the United States or its agencies, the employer may require that full title to certain patents and inventions be in the United States.

**If I am employed by Company in Utah, Sections 34-39-2 and 34-39-3 of Utah Code Ann. are as follows:**
34-39-2.  Definitions.
As used in this chapter:

(1) "Employment invention" means any invention or part thereof conceived, developed, reduced to practice, or created by an employee which is:
(a) conceived, developed, reduced to practice, or created by the employee:
        (i) within the scope of his employment;
        (ii) on his employer's time; or
        (iii) with the aid, assistance, or use of any of his employer's property, equipment, facilities, supplies, resources, or intellectual property;
(b) the result of any work, services, or duties performed by an employee for his employer;
(c) related to the industry or trade of the employer; or
(d) related to the current or demonstrably anticipated business, research, or development of the employer.

(2) "Intellectual property" means any and all patents, trade secrets, know-how, technology, confidential information, ideas, copyrights, trademarks, and service marks and any and all rights, applications, and registrations relating to them.

34-29-3. Scope of Act -- When agreements between an employee and employer are enforceable or unenforceable with respect to employment inventions -- Exceptions.
(1) An employment agreement between an employee and his employer is not enforceable against the employee to the extent that the agreement requires the employee to assign or license, or to offer to assign or license, to the employer any right or intellectual property in or to an invention that is:
(a) created by the employee entirely on his own time; and
(b) not an employment invention.

(2) An agreement between an employee and his employer may require the employee to assign or license, or to offer to assign or license, to his employer any or all of his rights and intellectual property in or to an employment invention.

(3) Subsection (1) does not apply to:

(a) any right, intellectual property or invention that is required by law or by contract between the employer and the United States government or a state or local government to be assigned or licensed to the United States; or

(b) an agreement between an employee and his employer which is not an employment agreement.

(4) Notwithstanding Subsection (1), an agreement is enforceable under Subsection (1) if the employee's employment or continuation of employment is not conditioned on the employee's acceptance of such agreement and the employee receives a consideration under such agreement which is not compensation for employment.

(5) Employment of the employee or the continuation of his employment is sufficient consideration to support the enforceability of an agreement under Subsection (2) whether or not the agreement recites such consideration.

(6) An employer may require his employees to agree to an agreement within the scope of Subsection (2) as a condition of employment or the continuation of employment.

(7) An employer may not require his employees to agree to anything unenforceable under Subsection (1) as a condition of employment or the continuation of employment.

(8) Nothing in this chapter invalidates or renders unenforceable any employment agreement or provisions of an employment agreement unrelated to employment inventions.

**If I am employed by Company in Washington, Section 49.44.140 of the Revised Code of Washington is as follows:**

(1)    A provision in an employment agreement which provides that an employee shall assign or offer to assign any of the employee's rights in an invention to the employer does not apply to an invention for which no equipment, supplies, facilities, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) directly to the business of the employer, or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the employer. Any provision which purports to apply to such an invention is to that extent against the public policy of this state and is to that extent void and unenforceable.

(2)    An employer shall not require a provision made void and unenforceable by subsection (1) of this section as a condition of employment or continuing employment.

(3)    If an employment agreement entered into after September 1, 1979, contains a provision requiring the employee to assign any of the employee's rights in any invention to the employer, the employer must also, at the time the agreement is made, provide a written notification to the employee that the agreement does not apply to an invention for which no equipment, supplies, facility, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) directly to the business of the employer, or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the employer.

<u>APPENDIX B</u>

PRIOR MATTER