**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MIDDESK, INC.,**<br><br>          **Plaintiff,**<br><br>          **v.**<br><br>**OSIRIS RATINGS, INC., et al.**<br><br>          **Defendants.** | CIVIL ACTION NO.  1:25-cv-02677-PKC |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS**
**MOTION FOR LEAVE TO AMEND COMPLAINT**

Plaintiff Middesk, Inc. ("Middesk"), by and through its undersigned counsel, hereby submits this Reply in Support of its Motion for Leave to Amend its Complaint (the "Motion").

**I.**       **INTRODUCTION**

It is no secret that the focus of this case has dramatically expanded since Middesk first filed its Complaint on March 31, 2025. Limited preliminary discovery and forced admissions by Defendants have revealed that Defendant Osiris Ratings, Inc. d/b/a Baselayer ("Baselayer") and Defendant Jonathan Awad ("Awad") have at least two thousand Middesk documents within the company's possession, including hundreds of trade secrets. Middesk only recently learned that **Timothy Hyde ("Hyde"), Baselayer's co-founder and Chief Technology Officer, also has unrestricted access to each and every one of those documents**. Only on Friday, June 6, 2025 did Middesk gained access to the computer forensics of Awad's, Baselayer's, and Hyde's devices that this Court ordered in April 2025 be imaged and produced. However, even without these computer forensics, the undisputed facts and well-pled allegations within the proposed Amended Complaint—combined with the low bar to amend—provide a detailed and convincing set of facts

justifying Middesk's motion for leave to amend.

Middesk's proposed Amended Complaint, attached to its Motion as Exhibit 1 (i) adds Hyde as a defendant in this action, (ii) provides additional factual allegations to support its claims against Hyde, and (iii) expands the injunctive relief sought against Defendants. *See generally* Dkt. 72-1. Defendants Baselayer and Awad oppose Middesk's Motion as futile and in bad faith (both of which Middesk denies), but Defendants do not dispute that Middesk supports its proposed Amended Complaint with evidence: sworn testimony from multiple defendants and early document productions.

## II.    ARGUMENT

The standard for this Court to grant Middesk leave to amend its Complaint is exceedingly low. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(a) "reflects two of the most important principles behind the Federal Rules: pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated . . . and 'mere technicalities' should not prevent cases from being decided on the merits." *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 283 (2d. Cir. 2000) (internal citations omitted). Whether to grant leave to amend is within the sole discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 330 (1971).

### A.  The Hyde Amendments Are Not Futile.

Defendants Baselayer and Awad argue that Middesk's proposed claims for Tortious Interference with Contractual Relations and misappropriation under the Defend Trade Secrets Act ("DTSA") are futile. Courts assess futility "through the prism that would apply to a Rule 12(b)(6) motion[,]" and Middesk's proposed Amended Complaint is full of well-pled facts to support both claims against Hyde. *BLT Restaurant Group LLC v. Tourondel*, 855 F. Supp. 2d 4, 14 (S.D.N.Y.

2012). For the reasons set forth below, this Court should find that the claims in Middesk's proposed Amended Complaint are not futile and should grant Middesk's Motion accordingly.

1. *The Proposed Amended Complaint States a Claim Against Hyde for Trade Secret Misappropriation.*

To state a claim for trade secret misappropriation under the DTSA, Middesk must allege that (i) it possessed a trade secret, and (ii) Hyde misappropriated it. *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020). There is no heightened pleading requirement under the DTSA, but courts "routinely require that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated." *Id.* (quoting *Medidata Sol., Inc. v. Veeva Sys. Inc.*, 2018 WL 6173349, at *3 (S.D.N.Y. 2018)). The DTSA defines a trade secret as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing" so long as "(A) the owner has taken reasonable measures to keep such information secret" *and* "(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information; . . . ." 18 U.S.C. § 1839(3). Middesk's proposed Amended Complaint sufficiently pleads a DTSA misappropriation claim against Hyde.

First, the proposed Amended Complaint sufficiently alleges that Middesk possessed trade secrets. In the proposed Amended Complaint, Middesk identifies the trade secrets in dispute as "among other things, marketing materials, business plans, internal organizational materials, client information and potential client information, and pricing information." Dkt 72-1, ¶ 142. Middesk

3

further provides that "[i]t has taken Middesk multiple years, thousands of people hours, and millions of dollars to build out the data infrastructure, vendor relationships, and technology that powers Middesk's products" and that

> [t]his non-public data would otherwise be very difficult for competitors and new entrants to the market to learn. Middesk employs a comprehensive, data-driven methodology to evaluate and select optimal data vendors for each of its products. This selection process incorporates proprietary data accumulated over multiple years, which Middesk leverages to refine its product partner selection, differentiate its products in the market, and optimize service delivery to customers. Through strategic, long-term vendor relationships, Middesk has developed exclusive, non-public data solutions that address its customer challenges in innovative ways. Further, Middesk has made substantial investments in securing preferential commercial terms and pricing structures with these data partners, creating significant competitive advantages and adding value for its customers.

*Id.* ¶ 27. Middesk also alleges facts that show it has "taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3). Specifically, Middesk

> (1) requires employees with access to Middesk confidential and proprietary information and trade secrets to execute Proprietary Information and Inventions Agreements (like the ones that both Leviloff and Awad executed); (2) maintaining policies that forbid employees from disseminating Middesk confidential, proprietary, trade secret information and disseminating those policies to all employees through the Employee Handbook, which both Awad and Leviloff signed; (3) implementing electronic security measures such as use of passwords, two-factor authentication, security timeouts on computers and cellular phones, disabling removable media on company computers, and segregating confidential information; (4) limiting the Middesk employees who have access to the Company's confidential information; and (5) requiring Middesk employees, including Leviloff, to attend cyber security training.

*Id.* ¶ 29. This plainly satisfies the first element under the DTSA: the proposed Amended Complaint sufficiently pleads that Middesk possessed trade secrets.

Second, the proposed Amended Complaint sufficiently alleges that Hyde misappropriated Middesk's trade secrets through well-pled facts. Indeed, the Amended Complaint is rife with factual allegations that Hyde misappropriated Middesk's trade secrets:

4

- "…Awad and Hyde launched Baselayer, which offers products and services competitive to Middesk's products and services. Awad and Hyde did this while in improper possession of thousands of pages of Middesk documents, including Middesk's confidential, proprietary and trade secret information." *Id.* ¶ 8.

- "…Awad and Hyde obtained and secured funding and customers for Baselayer by leveraging Middesk's confidential and proprietary information, and trade secrets." *Id.* ¶ 9.

- "Through Middesk's recent investigation, computer forensics, and early discovery, evidence has come to light showing that Awad knowingly breached the terms of the Awad Agreement, and that Awad, Hyde, and Baselayer are in possession of nearly two thousand Middesk documents, containing confidential, proprietary, and trade secret information." *Id.* ¶ 36.

- "Because Folder 2 was on Baselayer's corporate Google Drive, Awad, Hyde, and other Baselayer employees had access to Folder 2 and its contents, presumably for a number of years." *Id.* ¶ 51.

- "…Awad, Hyde, and other Baselayer employees accessed and used these documents while building a competitive business, Baselayer." *Id.* ¶ 56.

- "Further, after Leviloff started working at Baselayer, Awad and Hyde, Baselayer's Co-Founder and CTO, directed Leviloff to disclose confidential information and trade secrets related to Middesk's product design." Am. Compl. ¶ 4.

- "Awad and Hyde knowingly and deliberately enlisted Leviloff, a then-current Middesk employee, to steal and/or disclose Middesk's confidential and proprietary information and trade secrets for Awad, Hyde, and Baselayer's benefit. This included sensitive and confidential pricing information, product pipeline plans, and other trade secrets." *Id.* ¶ 11.

- "Leviloff obtained access to the Middesk information that Awad and Hyde instructed him to collect for Baselayer's benefit by using his password-protected access to various Middesk platforms." *Id.* ¶ 13.

- "Leviloff obtained access to the Middesk information that Awad and Hyde instructed him to collect for Baselayer's benefit by using his password-protected access to various Middesk platforms." *Id.* ¶ 14.

- "Awad, Hyde, and Baselayer, aided by Leviloff, have exposed Middesk to significant harm." *Id.* ¶ 15.

- "However, what Baselayer, Awad, and Hyde have done (both directly and indirectly through Leviloff) is not competition at all: it is theft. Defendants unlawfully took Middesk's highly sensitive confidential information. Upon information and belief,

5

Awad, Hyde, and Baselayer have used, and are still using this ill-begotten information to unfairly compete with and cause harm to Middesk." *Id.* ¶ 17.

These allegations are not simply supported by "information and belief," and instead the well-pled allegations come directly from Defendants' admissions and sworn testimony. *See e.g.*, Dkt. 35-1 (Exhibit A, Leviloff Declaration) at ¶ 5 ("In addition, after I joined, Awad and another employee of Baselayer asked me about overall product performance time at Middesk…"); **Exhibit A**, Leviloff Deposition Transcript 91:6-13 (Q: So when you're saying in this sentence, "In addition, after I joined Awad and another employee of Baselayer asked me… that other employee is Tim Hyde? A: Yes").

Therefore, the proposed Amended Complaint sufficiently alleges a claim against Hyde for Misappropriation of Trade Secrets under the DTSA. As a result, Middesk's claim against Hyde is not futile, and this Court should grant Middesk's Motion accordingly.

2. *The Proposed Amended Complaint States a Claim Against Hyde for Tortious Interference with Contractual Relations.*

To state a claim for tortious interference with contractual relations, Middesk must allege (1) the existence of a valid contract between Middesk and a third party; (2) Mr. Hyde's knowledge of such contract; (3) Mr. Hyde's intentional procurement of the third party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom. *See JPMorganChase Bank, N.A. v. 29-33 Ninth Ave., LLC*, 710 F. Supp. 3d 259, 279 (S.D.N.Y. 2024). Middesk's proposed Amended Complaint sufficiently pleads its tortious interference claim against Hyde because it alleges well-pled facts to satisfy each element of its claim.

*First*, Middesk's proposed Amended Complaint alleges that Middesk and Defendant Leviloff entered a valid contract. *See* Dkt 72-1, ¶ 63 ("As a condition of Leviloff's employment, and due to Leviloff's access to Middesk's trade secrets and confidential and proprietary

6

information, Middesk required Leviloff to execute a Proprietary Information and Inventions Agreement . . . on July 15, 2023).

*Second*, the proposed Amended Complaint alleges Hyde's knowledge of Middesk's contract with Leviloff through Baselayer. *See id.* ¶ 130 ("Awad and Baselayer knew or should have known of Leviloff's confidentiality agreement with Middesk.").[1]

*Third*, the proposed Amended Complaint alleges that Mr. Hyde intentionally procured Leviloff's breach of contract. *See id.* ¶ 4 ("Awad and Hyde, Baselayer's Co-Founder and CTO, directed Leviloff to disclose confidential information and trade secrets related to Middesk's product design."); ¶ 11 ("Awad and Hyde knowingly and deliberately enlisted Leviloff…to steal and/or disclose Middesk's confidential and proprietary information").

*Fourth*, the proposed Amended Complaint alleges that Leviloff breached his contract with Middesk. *Compare id.* ¶ 64 ("In Section 4 of the Leviloff Agreement, Leviloff promised to 'hold in confidence and not disclose or, except within the scope [of his employment] use any Proprietary Information.'") *with* ¶ 13 ("Leviloff obtained access to the Middesk information that Awad and Hyde instructed him to collect for Baselayer's benefit").

*Fifth*, and finally, the proposed Amended Complaint alleges that Middesk suffered damages as a result of Hyde's tortious interference. *See id.* ¶ 89 ("Awad and Baselayer have gained access to the information in the Middesk Model Validation and are using, or are planning to use, that information to compete with Middesk"); ¶ 88 ("The information in this document would be very valuable to a competitor"); ¶ 138 ("Middesk has been damaged by the foregoing

---

[1] To the extent this Court finds that Middesk must allege Hyde's individual knowledge of Middesk's contract with Leviloff, Middesk requests this Court allow Middesk to cure this "mere technicality" and elect to "not prevent [this claim] from being decided on the merits." *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 283 (2d. Cir. 2000)

[tortious interference] and is entitled to an award of injunctive relief, compensatory damages, exemplary damages, and attorneys' fees.").

Therefore, the proposed Amended Complaint pleads a *prima facie* claim against Hyde for tortious interference with contractual relations, and as a result, the proposed Amended Complaint is not futile. Accordingly, this Court should grant Middesk's Motion and allow Middesk to assert its tortious interference claim against Hyde.

### B.  The Remaining Amendments Are Not in Bad Faith.

Defendants' claim that Middesk seeks leave to amend its Complaint is in bad faith is both conclusory and baseless. Courts consistently reject conclusory allegations of bad faith, and so too should this Court here. *See, e.g.*, *Perez v. Escobar Constr., Inc.*, 342 F.R.D. 378, 382 (S.D.N.Y. 2022); *Agerbrink v. Model Service LLC*, 155 F. Supp. 3d 448, 453-54 (S.D.N.Y. 2016). These complaints are a distraction from the merits of the pending motion for leave to amend.  Middesk does not seek to amend its Complaint in bad faith. Rather, given how Middesk's investigation and the preliminary discovery have quickly and dramatically expanded the scope of this litigation, Middesk seeks to amend its Complaint with expediency and so Defendants have fair disclosure about the claims being asserted and their factual basis early in the litigation. Amendment is proper so that Middesk may be afforded a fair "opportunity to test [its] claim[s] on the merits" (*Foman v. Davis*, 371 U.S. 178, 182 (1962)) and "dispose of all contentions between the parties in one lawsuit." *Kreisler v. P.T.Z. Realty, L.L.C.* 318 F.R.D. 704, 706 (S.D.N.Y. 2016).

Defendants conclusorily allege that "there can be no purpose for the additional allegations against Defendants other than to embarrass them," but Defendants ignore the fact that Middesk has obtained new evidence that supports its new and amended claims, none of which was alleged in Middesk's original Complaint. *See* Dkt 83 at 7; Dkt. 71 at 1-2. That new evidence has provided

new underlying facts, circumstances, a party, and claims that are a proper subject of relief for Middesk to seek. *Foman*, 371 U.S. at 182. Defendants' argument is not persuasive, and Defendants offer no evidence to support the charge that Middesk has the intent to "embarrass" them. Middesk has the right to include all pertinent facts, parties, and claims in its Amended Complaint, and Middesk's allegations simply reflect what the evidence to date has revealed.

Defendants also argue that Middesk "should not have brought its claims in the first place if it did not have legitimate grounds for the allegations and believed that it needed more 'clarity' and 'precision' to its causes of action." Dkt. 83 at 8. This contention is frivolous. Middesk (1) had legitimate grounds for the allegations in its original Complaint and (2) it has since learned of even more, then-undisclosed facts that both further support its original claims and set forth the grounds for Middesk's proposed new claims.

Finally, Defendants argue that they will be unduly prejudiced by (1) "having to file yet another Answer" and (2) "deny allegations . . . that Defendants spoliated evidence." Dkt. 83 at 8. Neither of these arguments constitutes the kind of prejudice that counts. "[M]ere allegations that an amendment "will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice" or bad faith. *Christians of Cal., Inc. v. Clive Christian N.Y., LLP*, 2014 WL 3605526, at *5 (S.D.N.Y. 2014) (internal quotation marks and alterations omitted). And although Defendants will be faced with responding to the proposed Amended Complaint's allegations about spoliation, this allegation is directly tied to Defendant Awad's own admission that he received a preservation letter from Middesk on March 3, 2025 and then deleted a folder containing Middesk files from Baselayer's Google Drive on March 17, 2025. Dkt. 33-1, ¶ 23. Defendants must respond to allegations about spoliation because they chose to spoliate evidence, the underlying facts of which are not in dispute.

III.    **CONCLUSION**

For all of the foregoing reasons, Middesk respectfully requests this Court grant its Motion

for Leave to Amend its Complaint.

DATED: June 9, 2025

/s/  *Justin K. Victor*
Jason D. Burns
Shira M. Poliak
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9294
Jason.Burns@gtlaw.com
Shira.Poliak@gtlaw.com

Justin K. Victor (*phv*)
Fredric J. Bold, Jr. (*phv*)
Rushton Pope (*phv*)
GREENBERG TRAURIG, LLP
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
(678) 553-2100
victorj@gtlaw.com
rick.bold@gtlaw.com
rushton.pope@gtlaw.com

*Counsel for Plaintiff Middesk, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on June 9, 2025, a copy of the foregoing was served electronically by filing on ECF, which in turn will serve the foregoing on all parties of record.

Dated: June 9, 2025

*<u>/s/ Justin K. Victor</u>*
Justin K. Victor