**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

MIDDESK, INC.,

        Plaintiff,

    v.

OSIRIS RATINGS, INC., et al.,

        Defendants.

CIVIL ACTION NO. 1:25-cv-02677-PKC

**DEFENDANTS OSIRIS RATINGS, INC., JONATHAN AWAD,
AND TIMOTHY HYDE'S ANSWER AND AMENDED COUNTERCLAIMS
TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR
<u>INJUNCTIVE RELIEF AND MONETARY DAMAGES</u>**

Defendants Osiris Ratings, Inc. d/b/a Baselayer ("Baselayer" or the "Company"), Jonathan Awad ("Mr. Awad"), and Timothy Hyde ("Mr. Hyde") (collectively, "Defendants"), by and through their attorneys, Wilson Sonsini Goodrich & Rosati, P.C., in response to Plaintiff Middesk, Inc.'s ("Middesk") First Amended Complaint for Injunctive Relief and Monetary Damages (the "Amended Complaint") allege, deny, and aver as follows.  All allegations in the Complaint are denied unless expressly admitted.

## I.  PRELIMINARY STATEMENT

1.     Defendants admit that Mr. Awad is Baselayer's Chief Executive Officer and co-founder.  Defendants deny the remaining allegations in Paragraph 1 of the Amended Complaint.

2.     Mr. Awad and Baselayer deny the allegations in the declaration and deposition testimony referred to in Paragraph 2 of the Amended Complaint.  Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 2 and, on that basis, denies them.

3.     Defendants admit that after Defendant Josh Leviloff ("Mr. Leviloff") left his employment at Middesk, Mr. Leviloff joined Baselayer as an employee. Mr. Awad and Baselayer deny the remaining allegations in Paragraph 3 of the Amended Complaint. Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 3 and, on that basis, denies them.

4.     Defendants deny the allegations in Paragraph 4 of the Amended Complaint.

5.     Mr. Awad and Baselayer admit that while Mr. Awad was employed at Middesk, he sent emails from his Middesk email account to his personal email account during his Middesk employment.  Mr. Awad and Baselayer deny the remaining allegations in Paragraph 5 of the Amended Complaint.  Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 5 and, on that basis, denies them.

6. Mr. Awad and Baselayer deny the allegations in Paragraph 6 of the Amended Complaint. Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 6 and, on that basis, denies them.

7. Defendants admit the allegations in the first two sentences of Paragraph 7 of the Amended Complaint. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 7 and, on that basis, deny them.

8. Mr. Awad and Baselayer admit that Mr. Awad worked at Middesk from June 2021 through January 17, 2023 and that during his employment with Middesk, he sent emails from his Middesk email account to his personal email account. Mr. Awad and Baselayer also admit that he saved Middesk files in folders located in his personal Google Drive and Baselayer's company Google Drive. Defendants admit that Mr. Awad and Mr. Hyde launched Baselayer after Mr. Awad's departure from Middesk. Defendants deny the remaining allegations in Paragraph 8 of the Amended Complaint.

9. Mr. Awad and Baselayer deny the allegations in Paragraph 9 of the Amended Complaint. Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 9 and, on that basis, denies them.

10. Mr. Awad and Baselayer deny the allegations in Paragraph 10 of the Amended Complaint. Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 10 and, on that basis, denies them.

11. Mr. Awad and Baselayer deny the allegations in Paragraph 11 of the Amended Complaint. Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 11 and, on that basis, denies them.

12.     Defendants admit that Mr. Awad offered Mr. Leviloff employment with Baselayer in early 2025.  Defendants deny the remaining allegations in Paragraph 12 of the Amended Complaint.

13.     Defendants deny that they instructed Mr. Leviloff to access and collect Middesk information for Baselayer's benefit. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 13 of the Amended Complaint and, on that basis, deny them.

14.     Defendants admit that on or around February 24, 2025, Leviloff started working at Baselayer. Mr. Awad and Baselayer also admit that Mr. Leviloff had a notebook that contained Middesk information.  Defendants deny the remaining allegations in Paragraph 14 of the Amended Complaint.

15.     Mr. Awad admits that he removed certain folders containing Middesk documents from Baselayer's Google Drive in March 2025 so that those files were no longer on Baselayer's company systems.  Defendants deny the remaining allegations in Paragraph 15 of the Amended Complaint.

16.     Defendants deny the allegations in Paragraph 16 of the Amended Complaint.

17.     Defendants deny that Middesk welcomes fair competition.  Defendants deny that Middesk is entitled to any relief from Defendants for the claims alleged in the Amended Complaint.  Defendants deny the remaining allegations in Paragraph 17 of the Amended Complaint.

## II.    <u>JURISDICTION</u>

18.     The allegation in Paragraph 18 of the Amended Complaint is a legal conclusion to which no response is required.

19.     The allegation in Paragraph 19 of the Amended Complaint is a legal conclusion to which no response is required.

## III.    THE PARTIES

20.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 20 of the Amended Complaint and, on that basis, deny them.

21.     Defendants admit that Baselayer is a Delaware corporation with its principal place of business located at 445 Grand Street, Brooklyn, NY 11211; that Baselayer is a New York City based start-up with employees working and living in New York, including Mr. Awad; and that Baselayer transacts business within the State of New York and has contracts to supply services in New York.  Defendants deny the remaining allegations in Paragraph 21 of the Amended Complaint.

22.     Defendants admit that Mr. Awad is a citizen of the United States of America. Defendants deny the remaining allegations in Paragraph 22 of the Amended Complaint.

23.     Defendants admit that Mr. Hyde resides in San Francisco, CA and rents the property at 445 Grand Street in Brooklyn, NY.  Defendants deny the remaining allegations in Paragraph 23 of the Amended Complaint.

24.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 24 of the Amended Complaint and, on that basis, deny them.

## IV.    FACTUAL ALLEGATIONS

### A.    Middesk

25.     Defendants deny that Middesk is a leading data provider of business verification, credit assessment, and entity management products.  Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 25 of the Amended Complaint and, on that basis, deny them.

26.    Defendants deny that they have stolen and misappropriated any Middesk trade secrets or other confidential and proprietary information.  Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 26 of the Amended Complaint and, on that basis, deny them.

27.    Defendants deny that they directed Mr. Leviloff to obtain non-public data that would otherwise be difficult for competitors and new entrants to the market to learn.  Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 27 of the Amended Complaint and, on that basis, deny them.

28.    The allegations in Paragraph 28 of the Amended Complaint are legal conclusions to which no response is required.  To the extent that any response to the allegations in this Paragraph is required, Defendants deny that they misappropriated any Middesk trade secrets, and Defendants further state that they lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 28 of the Amended Complaint and, on that basis, deny them.

B.    **Middesk Confidentiality Policies and Protection of Confidential Information**

29.    Defendants deny that Middesk takes sufficient steps to protect the confidentiality of its information.  Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 29 of the Amended Complaint and, on that basis, deny them.

C.    **Awad's Employment at Middesk**

30.    Mr. Awad and Baselayer admit the allegations in Paragraph 30 of the Amended Complaint. Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 30 and, on that basis, denies them.

31.    Mr. Awad and Baselayer admit the allegations in Paragraph 31 of the Amended Complaint. Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 31 and, on that basis, denies them.

32.    Mr. Awad and Baselayer admit Mr. Awad was exposed to certain information that Middesk may consider confidential and proprietary information during his employment with Middesk.  Mr. Awad and Baselayer deny the remaining allegations in Paragraph 32 of the Amended Complaint.  Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 32 and, on that basis, denies them.

33.    Mr. Awad and Baselayer admit that Mr. Awad executed a Proprietary Information and Inventions Agreement on or about May 28, 2021.  Mr. Awad and Baselayer deny the remaining allegations in Paragraph 33 of the Amended Complaint. Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 33 and, on that basis, denies them.

34.    Mr. Awad and Baselayer state that the terms of the Proprietary Information and Inventions Agreement speak for themselves.  Mr. Awad and Baselayer deny the allegations in Paragraph 34 of the Amended Complaint to the extent that they contradict or characterize the explicit language of the Proprietary Information and Inventions Agreement.  Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 34 and, on that basis, denies them.

35.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 35 of the Amended Complaint and, on that basis, deny them.

36.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 36 of the Amended Complaint about Middesk's alleged

investigation and computer forensics and, on that basis, deny them.  Mr. Awad and Baselayer admit that Mr. Awad sent emails from his Middesk email account to his personal email account during his Middesk employment. Mr. Awad and Baselayer further admit that they have had certain folders in their Google Drives containing Middesk files. Defendants deny the remaining allegations in Paragraph 36 of the Amended Complaint.

### D.  Awad Steals Middesk's Confidential, Proprietary and Trade Secret Information Via Email

37.    Mr. Awad and Baselayer admit that while Mr. Awad was employed at Middesk, he sent emails from his Middesk email account to his personal email account.  Mr. Awad and Baselayer deny that those emails contained Middesk confidential, proprietary, and trade secret information.  Mr. Awad and Baselayer lack sufficient knowledge or information to form a belief about the dates of those emails and, on that basis, deny this allegation.  Mr. Awad and Baselayer deny the remaining allegations in Paragraph 37 of the Amended Complaint.  Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 37 and, on that basis, denies them.

38.    Defendants lack sufficient knowledge or information to form a belief about whether information in the referenced documents is generally known to Middesk's competitors and, on that basis, deny such allegation.  Defendants deny the remaining allegations in Paragraph 38 of the Amended Complaint.

39.    Mr. Awad and Baselayer deny the allegations in Paragraph 39 of the Amended Complaint. Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 39 and, on that basis, denies them.

40.    Mr. Awad and Baselayer admit that Mr. Awad sent emails from his Middesk email account to his personal email account.  Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 40 and, on that basis, denies them.

41.    Mr. Awad and Baselayer deny the allegations in Paragraph 41 of the Amended Complaint.  Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 41 and, on that basis, denies them.

42.    Mr. Awad admits that he sent a text message in or around March 2022 stating. "I found a CTO." Baselayer and Mr. Hyde lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 42 and, on that basis, deny them.

43.    Mr. Awad admits that the potential CTO referred to in this particular text message is Timothy Hyde.  Baselayer and Mr. Hyde lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 43 and, on that basis, deny them.

44.    Defendants admit the allegations in Paragraph 44 of the Amended Complaint.

45.    Defendants deny the allegations in Paragraph 45 of the Amended Complaint.

46.    Mr. Awad admits that he conceived of the idea for a company potentially named, "Pricing Desk," while he was employed by Middesk.  Defendants deny the remaining allegations in Paragraph 46 of the Amended Complaint.

47.    Mr. Awad states that the text messages referred to in Paragraph 47 of the Amended Complaint speak for themselves. Mr. Awad denies the allegations in Paragraph 47 of the Amended Complaint to the extent that they contradict or characterize the explicit language of the text messages Middesk refers to.  Baselayer and Mr. Hyde lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 47 and, on that basis, deny them.

48.     Mr. Awad states that the text message referred to in Paragraph 48 of the Amended Complaint speaks for itself.  Mr. Awad denies the allegations in Paragraph 48 of the Amended Complaint to the extent that they contradict or characterize the explicit language of the text message Middesk refers to.  Baselayer and Mr. Hyde lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 48 and, on that basis, deny them.

E.     **Awad Steals Middesk's Confidential, Proprietary and Trade Secret Information Via Other Means**

49.     Mr. Awad admits that he stored folders containing Middesk files on his personal Google Drive and Baselayer's Google Drive. Mr. Awad denies that he was forced to admit that while employed by Middesk he downloaded a folder of Middesk files.

50.     Defendants admit that folders containing Middesk files have been on Mr. Awad's and Baselayer's Google Drives since Mr. Awad's departure from Middesk.  Defendants deny the remaining allegations in Paragraph 50 of the Amended Complaint.

51.     Defendants admit that Mr. Awad, Mr. Hyde, and another Baselayer employee could have accessed folders on the Baselayer Google Drive.  Defendants deny the remaining allegations in Paragraph 51 of the Amended Complaint.

52.     Mr. Awad admits that he removed certain folders containing Middesk documents from Baselayer's Google Drive in March 2025 so that those files were no longer on Baselayer's company systems.  Defendants deny the remaining allegations in Paragraph 52 of the Amended Complaint.

53.     Mr. Awad understands that Middesk is referring in Paragraph 53 of the Amended Complaint to a Declaration that he submitted in this case.  Mr. Awad states that the statements in that Declaration speak for themselves and he denies the allegations in Paragraph 53 of the Amended Complaint to the extent that they contradict or characterize the statements in that

Declaration. Mr. Awad admits that he removed certain folders containing Middesk documents from Baselayer's Google Drive in March 2025 so that those files were no longer on Baselayer's company systems. Defendants deny the remaining allegations in Paragraph 53 of the Amended Complaint.

54.     Defendants admit that Baselayer has produced folders containing Middesk files through discovery in this case. Defendants state that the files in those folders speak for themselves and deny the allegations in Paragraph 54 of the Amended Complaint to the extent that they contradict or characterize the content of the files in these folders. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 54 of the Amended Complaint and, on that basis, deny them.

55.     Defendants deny the allegations in Paragraph 55 of the Amended Complaint.

56.     Mr. Awad admits that the folders containing Middesk files were the same on Baselayer's Google Drive and his personal Google Drive. Defendants admit that Mr. Awad, Mr. Hyde, and another Baselayer employee could have accessed folders on the Baselayer Google Drive. Defendants deny the remaining allegations in Paragraph 56 of the Amended Complaint.

### F.     Awad Launches Baselayer

57.     Defendants admit that Mr. Awad, alongside Mr. Hyde, founded and incorporated Baselayer in February 2023. Defendants deny the remaining allegations in Paragraph 57 of the Amended Complaint.

58.     Defendants admit that Baselayer's website has stated that the Company "equips businesses with fully automated solutions for KYB, Risk, and Fraud management…" Baselayer further admits that it offers the products listed in the first sentence of Paragraph 58 of the Amended Complaint. Defendants deny the remaining allegations in Paragraph 58 of the Amended Complaint.

59.    Defendants admit the allegations in Paragraph 59 of the Amended Complaint.

60.    Defendants deny the allegations in Paragraph 60 of the Amended Complaint.

**G.    Leviloff's Employment with Middesk**

61.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 61 of the Amended Complaint and, on that basis, deny them.

62.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 62 of the Amended Complaint and, on that basis, deny them.

63.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 63 of the Amended Complaint and, on that basis, deny them.

64.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 64 of the Amended Complaint and, on that basis, deny them.

65.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 65 of the Amended Complaint and, on that basis, deny them.

66.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 66 of the Amended Complaint and, on that basis, deny them.

67.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 67 of the Amended Complaint and, on that basis, deny them.

**H.    Awad Directs Leviloff to Breach His Contractual and Common Law Obligations to Middesk, Instructs Him to Keep Quiet, and Offers Thousands of Dollars for Specific Information**

68.    Defendants admit that on January 20, 2025, Mr. Leviloff contacted Mr. Awad on LinkedIn regarding an open role at Baselayer.  Mr. Awad had never previously met or corresponded with Mr. Leviloff.  Defendants lack sufficient knowledge or information to form a belief about Middesk's alleged computer forensics described in Paragraph 68 of the Amended

-11-

Complaint and, on that basis, deny this allegation.  Defendants deny the remaining allegations in Paragraph 68 of the Amended Complaint.

69.    Defendants admit that on February 1, 2025, Mr. Leviloff signed an offer letter to be employed by Baselayer.  Defendants lack sufficient knowledge or information to form a belief about Mr. Leviloff's resignation or what he allegedly told Middesk about his departure and, on that basis, deny these allegations.  Defendants deny the remaining allegations in Paragraph 69 of the Amended Complaint.

70.    Mr. Awad and Baselayer admit that on February 2, 2025, Mr. Awad texted Mr. Leviloff: "2 things: -don't sign any termination agreement from them if they offer it (that's where they put the non compete in & offer you money to sign.  They offered me shit money) -no need to rush telling [Middesk] where you're going right away… the LinkedIn update will be very fun." Mr. Awad and Baselayer admit that Mr. Awad made a tongue-in-cheek reference to when Mr. Leviloff inevitably discloses publicly his employment with Baselayer because he thought Middesk may be displeased by one of its employees deciding to join Baselayer.  Mr. Awad and Baselayer deny the remaining allegations in Paragraph 70 of the Amended Complaint. Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 70 and, on that basis, denies them.

71.    Mr. Awad and Baselayer deny the allegations in Paragraph 71 of the Amended Complaint.  Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 71 and, on that basis, denies them.

72.    Mr. Awad and Baselayer admit that Mr. Awad communicated with Mr. Leviloff via text message and phone calls in early February 2025.  Mr. Awad and Baselayer deny the remaining allegations in Paragraph 72 of the Amended Complaint.  Mr. Hyde lacks sufficient knowledge or

information to form a belief as to the truth of the allegations in Paragraph 72 and, on that basis, denies them.

>>> a) **Awad Instructs Leviloff on What Middesk Trade Secrets and Confidential Information To Gather During His Two-Week's Notice Period – Customers and Prospects.**

73. Mr. Awad and Baselayer deny the allegations in Paragraph 73 of the Amended Complaint. Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 73 and, on that basis, denies them.

74. Mr. Awad and Baselayer admit that Mr. Leviloff had a notebook that contained Middesk information. Mr. Awad and Baselayer deny the remaining allegations in Paragraph 74 of the Amended Complaint. Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 74 and, on that basis, denies them.

>>> b) **Awad Instructs Leviloff on What Middesk Trade Secrets and Confidential Information To Gather During His Two-Week's Notice Period – Data Providers.**

75. Defendants admit that Mr. Awad communicated with Mr. Leviloff via text message and phone calls in February 2025. Defendants deny the remaining allegations in Paragraph 75 of the Amended Complaint.

76. Mr. Awad and Baselayer admit that the text message from Mr. Awad to Mr. Leviloff on February 4, 2025 stated, "Ask around and validate this with anyone in product before you head out: people litigations = [Court Vendor] and some other source? Criminal history = [Criminal History Vendor] people liens = ? If you feel weird doing that, all good, just lmk. Shouldn't be an issue but I don't mind either way. Just a curious person :)". Mr. Awad and Baselayer deny the remaining allegations in Paragraph 76 of the Amended Complaint. Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 76 and, on that basis, denies them.

77.    Mr. Awad and Baselayer admit that Mr. Leviloff responded to Mr. Awad's text message, saying, "Not at all I think that's a completely fair ask, and I plan to."  Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 77 and, on that basis, denies them.

78.    Defendants deny the allegations in Paragraph 78 of the Amended Complaint.

79.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 79 of the Amended Complaint and, on that basis, deny them.

80.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 80 of the Amended Complaint and, on that basis, deny them.

81.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 81 of the Amended Complaint and, on that basis, deny them.  Mr. Awad never told Mr. Leviloff to lie to anyone at Middesk.  Mr. Awad has no knowledge of what Middesk's "Product & Data Partnerships Tracker" is and he did not ask Mr. Leviloff to obtain it.

82.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 82 of the Amended Complaint about Leviloff's conduct and, on that basis, deny them.  Defendants deny the remaining allegations in Paragraph 82 of the Amended Complaint.

83.    Defendants deny the allegations in Paragraph 83 of the Amended Complaint.

84.    Mr. Awad admits that he knew Mr. Leviloff worked for Middesk, but denies the remaining allegations in Paragraph 84 of the Amended Complaint.  Baselayer and Mr. Hyde lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 84 of the Amended Complaint and, on that basis, deny them.

85. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 85 of the Amended Complaint and, on that basis, deny them.

### c) Awad and Hyde Prod Leviloff for Information About Middesk's Product Performance Instructs Leviloff on What Middesk Trade Secrets and Confidential Information To Gather During His Two-Week's Notice Period – Data Providers.

86. Defendants deny the allegations in Paragraph 86 of the Amended Complaint.

87. Defendants deny that Mr. Leviloff used a Baselayer device to download a file titled "Middesk Model Validation." Defendants further deny that Mr. Leviloff misappropriated any trade secrets from Middesk on their behalf. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 87 of the Amended Complaint and, on that basis, deny them.

88. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 88 of the Amended Complaint and, on that basis, deny them.

89. Defendants deny the allegations in Paragraph 89 of the Amended Complaint.

90. Defendants deny that Mr. Leviloff was accessing the internal Middesk documents referenced in this Paragraph at Mr. Awad and Baselayer's direction. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 90 of the Amended Complaint and, on that basis, deny them.

### d) Leviloff accesses and obtains sensitive data from Salesforce without a valid business purpose.

91. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 91 of the Amended Complaint and, on that basis, deny them.

92. Defendants deny that on February 1, 2024, Mr. Leviloff signed his offer letter with Baselayer. Mr. Awad and Baselayer admit that Mr. Leviloff sent Mr. Awad a text message on February 1, 2025 stating, "I'm going to be in vail with my girlfriend and her family this week, so

might be slow to respond but I'm absolutely PSYCHED". Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 92 and, on that basis, denies them.

93.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 93 of the Amended Complaint and, on that basis, deny them.

94.    Defendants deny that Mr. Leviloff accessed Middesk's Salesforce platform from a Baselayer device. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 94 of the Amended Complaint and, on that basis, deny them.

95.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 95 of the Amended Complaint and, on that basis, deny them.

   e)    **Leviloff attempts to cover his tracks while maintaining access to confidential Middesk data on his personal device.**

96.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 96 of the Amended Complaint and, on that basis, deny them.

97.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 97 of the Amended Complaint and, on that basis, deny them.

98.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 98 of the Amended Complaint and, on that basis, deny them.

99.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 99 of the Amended Complaint and, on that basis, deny them.

100.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 100 of the Amended Complaint and, on that basis, deny them.

101.    Defendants deny that they possess any Middesk confidential information that could be exploited by Baselayer to unfairly compete with Middesk. Defendants lack sufficient

knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 101 of the Amended Complaint and, on that basis, deny them.

102.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 102 of the Amended Complaint and, on that basis, deny them.

### I.    <u>**Awad Engages In Deliberate Spoliation**</u>

103.    Mr. Awad and Baselayer admit that Mr. Awad received a letter from Middesk's prior counsel dated March 3, 2025.  Mr. Awad and Baselayer deny the allegations in Paragraph 103 of the Amended Complaint to the extent that they contradict or characterize the text of the March 3, 2025 letter.  Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 103 and, on that basis, denies them.

104.    Mr. Awad and Baselayer deny the allegations in Paragraph 104 of the Amended Complaint.  Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 104 and, on that basis, denies them.

105.    Mr. Awad admits that he removed certain folders containing Middesk documents from Baselayer's Google Drive in March 2025 so that those files were no longer on Baselayer's company systems.

106.    Mr. Awad admits that the forensic analysis conducted on the folders with Middesk files on his personal Google Drive show that only approximately four files therein were opened since he left Middesk in 2023 and that there is no record of the "Middesk Model Validation" file in Baselayer's systems or of it being distributed to anyone.  Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in the second sentence of Paragraph 106 of the Amended Complaint and, on that basis, deny them.  Defendants deny the remaining allegations in Paragraph 106 of the Amended Complaint.

**J.**    **Middesk Will Be Harmed if the Court Does Not Prevent Further Breaches of Defendants' Agreements and Defendants' Use of Middesk Confidential and Proprietary Information and Trade Secrets**

107.    Defendants deny the allegations in Paragraph 107 of the Amended Complaint.

108.    Defendants deny the allegations in Paragraph 108 of the Amended Complaint.

109.    Defendants admit that Mr. Awad is the Chief Executive Officer of Baselayer, Mr. Hyde is the Chief Technology Officer of Baselayer, and they are the co-founders of Baselayer. Defendants deny the remaining allegations in Paragraph 109 of the Amended Complaint.

110.    Mr. Awad and Baselayer admit that while Mr. Awad was employed at Middesk, he sent emails from his Middesk email account to his personal email account.  Mr. Awad and Baselayer deny the remaining allegations in Paragraph 110 of the Amended Complaint.  Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 110 and, on that basis, denies them.

111.    Defendants deny the allegations in Paragraph 111 of the Amended Complaint.

112.    Defendants deny the allegations in Paragraph 112 of the Amended Complaint.

**COUNT** I
**Breach of Contract**
**(Against Defendant Leviloff)**

113.    Defendants incorporate by reference each of the foregoing paragraphs as if fully set forth at length herein.

114.    The allegations in Paragraph 114 of the Amended Complaint are legal conclusions to which no response is required.  To the extent that any response to the allegations in this Paragraph is required, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 114 of the Amended Complaint and, on that basis, deny them.

115. The allegations in Paragraph 115 of the Amended Complaint are legal conclusions to which no response is required. To the extent that any response to the allegations in this Paragraph is required, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 115 of the Amended Complaint and, on that basis, deny them.

116. Defendants deny that Mr. Awad instructed Mr. Leviloff to access confidential, proprietary, and trade secret information for the purpose of sharing the information with Mr. Awad and Baselayer.

117. Defendants deny the allegations in Paragraph 117 of the Amended Complaint.

118. The allegations in Paragraph 118 of the Amended Complaint are legal conclusions to which no response is required. To the extent that any response to the allegations in this Paragraph is required, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 118 of the Amended Complaint and, on that basis, deny them.

119. The allegations in Paragraph 119 of the Amended Complaint are legal conclusions to which no response is required. To the extent that any response to the allegations in this Paragraph is required, Defendants deny that Middesk has suffered any damages as a result of Defendants' conduct.

**COUNT II**
**Breach of Contract**
**(Against Defendant Awad)**

120. Defendants incorporate by reference each of the foregoing paragraphs as if fully set forth at length herein.

121. The allegations in Paragraph 121 of the Amended Complaint are legal conclusions to which no response is required. To the extent that any response to the allegations in this

Paragraph is required, Defendants deny the allegations in Paragraph 121 of the Amended Complaint.

122.    The written terms of the Awad Agreement speak for themselves.  To the extent that Paragraph 122 of the Amended Complaint is intended to describe how the Awad Agreement should be interpreted, the allegations constitute legal conclusions to which no response is required. To the extent that any response is required to the allegations in Paragraph 122 of the Amended Complaint, Defendants deny them.

123.    Mr. Awad and Baselayer admit that while Mr. Awad was employed at Middesk, he sent emails from his Middesk email account to his personal email account.  Mr. Awad and Baselayer lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 123 of the Amended Complaint and, on that basis, deny them.  Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 123 and, on that basis, denies them.

124.    Defendants admit that Mr. Awad founded Baselayer after his departure from Middesk.  Defendants deny the remaining allegations in Paragraph 124 of the Amended Complaint.

125.    Defendants deny the allegations in Paragraph 125 of the Amended Complaint.

126.    Defendants deny the allegations in Paragraph 126 of the Amended Complaint.

127.    Defendants deny that Middesk has been damaged by their actions and that Middesk is entitled to any of the relief described in Paragraph 127 of the Amended Complaint.

**COUNT III**
**Tortious Interference with Contractual Relations**
**(Against the Defendants Awad, Hyde, and Baselayer)**

128.    Defendants incorporate by reference each of the foregoing paragraphs as if fully set forth at length herein.

129.    The allegation is Paragraph 129 of the Amended Complaint is a legal conclusion to which no response is required.  To the extent that any response to the allegation in Paragraph 129 of the Amended Complaint is required, Defendants deny it.

130.    The allegation that Middesk has a valid and enforceable confidentiality agreement with Mr. Leviloff is a legal conclusion to which no response is required.  To the extent that any response to these allegations is required, Defendants deny them.  Defendants deny the remaining allegations in Paragraph 130 of the Amended Complaint.

131.    The allegations in Paragraph 131 of the Amended Complaint are legal conclusions to which no response is required.  To the extent that any response to these allegations is required, Defendants deny them.

132.    Mr. Awad and Baselayer deny that Mr. Awad executed an agreement with Middesk that is identical to Mr. Leviloff's.  The agreements are clearly different from one another.  Mr. Awad and Baselayer deny the remaining allegations in Paragraph 132 of the Amended Complaint. Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 132 and, on that basis, deny them.

133.    Defendants deny the allegations in Paragraph 133 of the Amended Complaint.

134.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegation that Mr. Leviloff accessed dozens of Middesk files and, on that basis, deny it. Defendants deny the remaining allegations in Paragraph 134 of the Amended Complaint.

135.    Defendants deny the allegations in Paragraph 135 of the Amended Complaint.

136.    The allegations in Paragraph 136 of the Amended Complaint are legal conclusions to which no response is required.  To the extent that any response to the allegations in Paragrpah 136 of the Amended Complaint is required, Defendants deny them.

-21-

137.    The allegations in Paragraph 137 of the Amended Complaint are legal conclusions to which no response is required.  To the extent that any response to the allegations in Paragraph 137 of the Amended Complaint is required, Defendants deny them.

138.    Defendants deny that Middesk has been damaged by their actions and that Middesk is entitled to any of the relief described in Paragraph 138 of the Amended Complaint.

## COUNT IV
## Defend Trade Secrets Act (18 U.S.C. § 1836(B))
### (Against All Defendants)

139.    Defendants incorporate by reference each of the foregoing paragraphs as if fully set forth at length herein.

140.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 140 of the Amended Complaint and, on that basis, deny them.

141.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 141 of the Amended Complaint and, on that basis, deny them.

142.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 142 of the Amended Complaint and, on that basis, deny them.

143.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 143 of the Amended Complaint and, on that basis, deny them.

144.    The allegations in Paragraph 144 of the Amended Complaint are legal conclusions to which no response is required.  To the extent that any response to the allegations in Paragraph 144 of the Amended Complaint is required, Defendants deny them.

145.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in the first sentence of Paragraph 145 of the Amended Complaint and, on that basis, deny them.  Defendants deny the remaining allegations in Paragraph 145 of the Amended Complaint.

-22-

146.    Defendants deny the allegations in Paragraph 146 of the Amended Complaint.

147.    Mr. Awad and Baselayer admit that while Mr. Awad was employed at Middesk, he sent emails from his Middesk email account to his personal email account.  Mr. Awad and Baselayer deny the remaining allegations in Paragraph 147 of the Amended Complaint.  Mr. Hyde lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 147 and, on that basis, denies them.

148.    Defendants deny the allegations in Paragraph 148 of the Amended Complaint.

149.    Defendants deny the allegations in Paragraph 149 of the Amended Complaint.

150.    Defendants deny the allegations in Paragraph 150 of the Amended Complaint.

151.    Defendants deny the allegations in Paragraph 151 of the Amended Complaint.

152.    The allegations in the first sentence of Paragraph 152 of the Amended Complaint are legal conclusions to which no response is required.  To the extent that any response to the allegations in Paragraph 152 of the Amended Complaint is required, Defendants deny them.  Defendants deny that Middesk has been damaged by their actions and, on that basis, deny the remaining allegations in Paragraph 152 of the Amended Complaint.

153.    The allegations in Paragraph 153 of the Amended Complaint are legal conclusions to which no response is required.  To the extent that any response to the allegations in Paragraph 153 of the Amended Complaint is required, Defendants deny them.

154.    Defendants deny that Middesk has been damaged by their actions and that Middesk is entitled to any of the relief described in Paragraph 154 of the Amended Complaint.

### COUNT V
### **Breach of Fiduciary Duty**
### (Against Defendant Leviloff and Awad)

155.    Defendants incorporate by reference each of the foregoing paragraphs as if fully set forth at length herein.

-23-

156.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 156 of the Amended Complaint, and on that basis, deny them.

157.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 157 of the Amended Complaint, and on that basis, deny them.

158.    The allegations in Paragraph 158 of the Amended Complaint are legal conclusions to which no response is required.  To the extent that any response to the allegations in Paragraph 158 of the Amended Complaint is required, Defendants deny them.

159.    The allegations in Paragraph 159 of the Amended Complaint are legal conclusions to which no response is required.  To the extent that any response to the allegations in this Paragraph is required, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 159 of the Amended Complaint and, on that basis, deny them.

160.    Mr. Awad denies the allegations in Paragraph 160 of the Amended Complaint.

161.    Mr. Awad denies the allegations in Paragraph 161 of the Amended Complaint.

162.    Mr. Awad denies the allegations in Paragraph 162 of the Amended Complaint.

163.    The allegations in Paragraph 163 of the Amended Complaint are legal conclusions to which no response is required.  To the extent that any response to the allegations in Paragraph 163 of the Amended Complaint is required, Defendants deny them.

### COUNT VI
### Aiding & Abetting Breach of Fiduciary Duty
### (Against Defendants Awad and Baselayer)

164.    Defendants incorporate by reference each of the foregoing paragraphs as if fully set forth at length herein.

165.    The allegations in Paragraph 165 of the Amended Complaint are legal conclusions to which no response is required.  To the extent that any response to the allegations in this

Paragraph is required, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 165 of the Amended Complaint and, on that basis, deny them.

166. The allegations in Paragraph 166 of the Amended Complaint are legal conclusions to which no response is required. To the extent that any response to the allegations in Paragraph 166 of the Amended Complaint is required, Defendants deny them.

167. Defendants deny the allegations in Paragraph 167 of the Amended Complaint.

168. The allegations in Paragraph 168 of the Amended Complaint are legal conclusions to which no response is required. To the extent that any response to the allegations in Paragraph 168 of the Amended Complaint is required, Defendants deny them.

169. Defendants deny the allegations in Paragraph 169 of the Amended Complaint.

170. The allegations in Paragraph 170 of the Amended Complaint are legal conclusions to which no response is required. To the extent that any response to the allegations in Paragraph 170 of the Amended Complaint is required, Defendants deny them.

171. The allegations in Paragraph 171 of the Amended Complaint are legal conclusions to which no response is required. To the extent that any response to the allegations in Paragraph 171 of the Amended Complaint is required, Defendants deny them.

172. Defendants deny that Mr. Awad and Baselayer's actions, omissions, or misconduct have caused any harm to Middesk.

173. Defendants deny that Middesk has been damaged by Mr. Awad and Baselayer's actions and that Middesk is entitled to any of the relief described in Paragraph 173 of the Amended Complaint.

## COUNT VII
## Unfair Competition
### (Against All Defendants)

174.    Defendants incorporate by reference each of the foregoing paragraphs as if fully set forth at length herein.

175.    The allegations in Paragraph 175 of the Amended Complaint are legal conclusions to which no response is required.  To the extent that any response to the allegations in Paragraph 175 of the Amended Complaint is required, Defendants deny them.

176.    The allegations in Paragraph 176 of the Amended Complaint are legal conclusions to which no response is required.  To the extent that any response to the allegations in Paragraph 176 of the Amended Complaint is required, Defendants deny them.

177.    The allegations in Paragraph 177 of the Amended Complaint are legal conclusions to which no response is required.  To the extent that any response to the allegations in Paragraph 177 of the Amended Complaint is required, Defendants deny them.

178.    The allegations in Paragraph 178 of the Amended Complaint are legal conclusions to which no response is required.  To the extent that any response to the allegations in Paragraph 178 of the Amended Complaint is required, Defendants deny them.

179.    Defendants deny that Middesk has been damaged by their actions and that Middesk is entitled to any of the relief described in Paragraph 179 of the Amended Complaint.

### PRAYER FOR RELIEF

WHEREFORE, Defendants deny that Middesk is entitled to any of the relief requested in the Amended Complaint, and pray for judgment as follows:

a.   That Middesk takes nothing by way of its Amended Complaint;

b.   That judgment be entered in favor of Defendants and against Plaintiff;

c.   For costs incurred herein;

-26-

d.  For reasonable attorneys' fees and costs incurred herein to the extent permitted by law; and

e.  For such other and further relief as the Court may deem just and proper.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses, without assuming the burden of proof as to any such defenses or portions thereunder, which would otherwise rest with Middesk.

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

All claims asserted in the Amended Complaint against Defendants should be dismissed for failure to state a claim for which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
### (Unclean Hands)

Middesk is barred from recovery, in whole or in part, by virtue of Middesk's unclean hands.

### THIRD AFFIRMATIVE DEFENSE
### (Lack of Damages)

Middesk's claims against Defendants must be dismissed because Middesk has not suffered damages resulting from any conduct by Defendants.

### FOURTH AFFIRMATIVE DEFENSE
### (Estoppel)

Middesk's claims against Defendants are barred by the doctrine of estoppel.

### FIFTH AFFIRMATIVE DEFENSE
### (Bad Faith)

Middesk is barred from recovery, in whole or in part, by virtue of having brought its claims against Defendants in bad faith.

### SIXTH AFFIRMATIVE DEFENSE
### (Waiver)

Middesk's claims against Defendants are barred by the doctrine of waiver.

-27-

## SEVENTH AFFIRMATIVE DEFENSE
### (Laches)

Middesk's claims against Defendants are barred, in whole or in part, by the equitable doctrine of laches to the extent that Middesk unreasonably delayed before pursuing their alleged claims, including, but not limited to, the claims arising from Mr. Awad's alleged conduct as a Middesk employee.

## EIGHTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

Middesk's claims against Defendants are barred, in whole or in part, because Middesk failed to take reasonable steps to mitigate its asserted damages.

## NINTH AFFIRMATIVE DEFENSE
### (Ready Ascertainability)

To the extent that ready ascertainability is deemed an affirmative defense rather than an ordinary defense, Middesk is barred from claiming trade secret misappropriation as to any items of information that were readily ascertainable within the meaning of that defense under the Defend Trade Secrets Act at the time of the alleged misappropriation.

## TENTH AFFIRMATIVE DEFENSE
### (Independent Derivation)

To the extent it is deemed an affirmative defense (and Defendants do not believe it is, such that the burden of proof remains with Middesk), Baselayer independently derived its technology, information, and any other items claimed by Middesk to be its trade secret information.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Absence of Vicarious Liability and/or Joint and Several Liability)

To the extent it is deemed an affirmative defense (and Baselayer does not believe it is), Baselayer is not vicariously liable or jointly and severally liable for the allegations made against Mr. Leviloff or for his actions undertaken in his personal capacity.

-28-

## TWELFTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

Middesk's claims are barred, in whole or in part, by the applicable statute(s) of limitations.

## RESERVATION OF ADDITIONAL DEFENSES

Defendants reserve the right to assert additional affirmative and other defenses in the event that discovery or other analysis indicates that additional defenses are applicable.

## STATEMENT OF INTENTION TO PURSUE BAD FAITH REMEDIES

Because Defendants believe that Middesk acted in bad faith within the meaning of the Defend Trade Secrets Act of 2016 in asserting a DTSA claim against Defendants, including, but not limited to, making allegations against Mr. Hyde which have no factual basis, Defendants reserve the right to seek all fees and costs permitted by this statute.

## AMENDED COUNTERCLAIMS

Defendant Osiris Ratings, Inc. d/b/a Baselayer ("Baselayer" or the "Company"), by and through its attorneys, Wilson Sonsini Goodrich & Rosati, P.C., asserts the following Counterclaims and allege as follows:

1.      Baselayer and Plaintiff Middesk Inc. ("Middesk") are both involved in the highly competitive industry of business identity verification (among other products that Baselayer provides).  Although the data sources powering the companies' respective products, and the design of the products themselves, are distinct from one another, the two companies regularly compete head-to-head for business.

2.      Middesk's actions since filing this lawsuit show that it is not interested in competing fairly with Baselayer; instead, it seeks to use the claims against Baselayer as a means of improperly disrupting Baselayer's actual and prospective customer relationships and winning business that it otherwise would not win if the parties were competing fairly.

-29-

3.      Indeed, upon information and belief, on at least two occasions since the lawsuit was filed, Middesk has used improper means to try to take business away from Baselayer.  In the first instance, Middesk tried to disrupt Baselayer's biggest client relationship.  In the second instance, Middesk caused Baselayer to lose out on a $600,000 deal in a competitive bidding process that Baselayer had already won prior to Middesk's interference.

4.      This is not the first time Middesk has actively sought to damage Baselayer's business.

5.      Mr. Awad is a former employee of Middesk and, currently, Chief Executive Officer and Co-Founder of Baselayer.

6.      Mr. Awad founded and incorporated Baselayer in February 2023 after parting ways with Middesk. When Mr. Awad founded the Company, he intended to partner with Middesk to use Middesk's business identity data set (the "Identity Data Set") to obtain the information necessary to support Baselayer's real-time fraud consortium, and essentially resell Middesk to Baselayer's customers.  It is common practice for Middesk to partner with other companies in this manner and something Mr. Awad was responsible for while employed by Middesk.

7.      On July 21, 2023, Baselayer and Middesk entered into an Integration & Reseller Agreement (the "Reseller Agreement"), which was executed by Middesk's CEO, Kyle Mack ("Mr. Mack"), and Mr. Awad (attached hereto as Exhibit A).  Under the Reseller Agreement, Baselayer would be a reseller of Middesk's Identity Data Set by using it as a source of information for its real-time fraud consortium.

8.      From July to mid-November 2023, Baselayer used Middesk's Identity Data Set to test and refine its product.  Baselayer relied solely on Middesk and its Identity Data Set to power the real-time fraud consortium because, without Middesk, Baselayer would have had no way to

pull the necessary business identity information for its real-time fraud consortium.  In simple terms, Baselayer could not serve any customers at that time without Middesk's Identity Data Set.

9.      Baselayer relied on Middesk's promises and obligations under the Reseller Agreement to line up customers for when Baselayer was ready to launch its product. By mid-November 2023, Baselayer had three customers lined up to start using Baselayer's product and was expecting $50,000 to $60,000 in annual revenue to start coming in from these potential customers.

10.     Middesk had other ideas though once Baselayer launched its website in or about mid-November 2023.  Once the website was live, Middesk's Partnership Manager, Jared Gilmore ("Mr. Gilmore"), called Mr. Awad to inform him that after extensively viewing Baselayer's website, Mr. Mack, thought Middesk might want to eventually create its own version of such a product and, as a result, Middesk would no longer perform its obligations under the Reseller Agreement, and it would be terminating the parties' agreement.

11.     Pursuant to the terms of the Reseller Agreement, Middesk could terminate the contract without cause "upon no less than 90 days' prior written notice." Ex. A, § 8.3.3. Middesk terminated the agreement immediately and without any prior notice to Baselayer, thereby breaching the express terms of the contract.

12.     Because Middesk breached the Reseller Agreement and refused to perform its obligations thereunder, Baselayer was forced, in a short time frame, to find new sources for the business identity information Middesk was no longer providing.

13.     After months of hard work, Baselayer was able to fill the data gap necessary to adequately provide the real-time fraud consortium to its customers, finally launching its product in March 2024.  Baselayer was forced to spend hundreds of thousands of dollars to replace

Middesk and lost at least $20,000 in revenue from potential customers who had to delay their contracts with Baselayer because it did not have access to Middesk's Identity Data Set.

14.    Middesk filed the Complaint in this case on March 31, 2025.

15.    Very soon thereafter, upon information and belief, Mr. Mack, emailed Customer 1 with the clear intent to damage Baselayer's relationship with Customer 1 by informing them of the Complaint and the unfounded allegations therein, despite no evidence that Baselayer improperly used any of Middesk's trade secrets or that Middesk has improperly lost any business to Baselayer. Mr. Mack encouraged Customer 1 to terminate its relationship with Baselayer based on misrepresentations made about Mr. Awad and Baselayer as part of the lawsuit. Middesk has admitted to its communications with Customer 1 about Mr. Awad, Baselayer, the allegations in the Complaint, the claims asserted against Mr. Awad and Baselayer, and/or the fact that it filed this lawsuit.

16.    Baselayer then sent Middesk a letter on April 3, 2025 putting Middesk on clear notice that any further attempts to use this lawsuit or misrepresentations about Baselayer and Mr. Awad to tortiously interfere with Baselayer's actual or prospective business relations would result in counterclaims against Middesk.

17.    Nonetheless, within approximately two weeks thereafter, Middesk also improperly caused Baselayer to lose out on a significant deal with a prospective customer, Fora Financial ("Fora").

18.    On or about April 14, 2025, Fora informed Baselayer that it had won a head-to-head data test competition with Middesk for a two-year contract worth $300,000 annually. According to Fora, Baselayer performed at a higher match rate than Middesk on a few products and Baselayer had significantly higher coverage on another one of its products.

19.     While the final details of the written contract with Fora were being negotiated, upon information and belief, Middesk contacted Fora to relay misrepresentations about Mr. Awad and Baselayer.

20.     Approximately ten days later on or about April 24, 2025, and despite the fact that Fora had already confirmed that Baselayer won the contract, Fora told Baselayer that they had rethought their decision and chosen Middesk instead.

21.     Upon information and belief, Fora would not have rescinded its decision to choose Baselayer without improper interference by Middesk.

22.     As a result of the conduct described above, Middesk has caused significant damage to Baselayer, including, but not limited to, the loss of business and damage to its reputation in an amount no less than $600,000.

23.     Middesk has admitted that it has had communications with at least eight other customers or prospective customers about Mr. Awad, Baselayer, the allegations in the Complaint, the claims asserted against Mr. Awad and Baselayer, and/or the fact that it filed this lawsuit.

**COUNT I**
**(Breach of Contract)**

24.     Baselayer realleges and incorporates by reference each and every allegation contained in Amended Counterclaim Paragraphs 1 through 23 set forth above.

25.     The Reseller Agreement was a valid and enforceable contract between Baselayer and Middesk, though it included a draconian and unenforceable limitation on liability clause.

26.     Baselayer performed all of its obligations under the Reseller Agreement while the contract was in effect.

27.     Middesk breached the Reseller Agreement by failing to perform its obligation to act as a reseller and terminating the agreement immediately and without notice in or about mid-

November 2023, despite a contractual obligation to provide ninety days' advance notice before terminating the contract without cause.

28.    Middesk did not have cause to terminate the contract under the terms set forth therein.

29.    Because Middesk declined to perform its obligations under the Reseller Agreement and terminated the contract without the requisite notice, Middesk left Baselayer, upon its imminent product launch, without the ability to run its real-time fraud consortium.

30.    Baselayer was forced to delay its product launch by several months as a result, scrambling to find new sources for the identity information Middesk was no longer providing.

31.    Middesk's breach of the Reseller Agreement was the proximate cause of significant monetary damages to Baselayer, including, but not limited to, the loss of customer revenue and the costs of having to obtain new data sources to run its product.

32.    Middesk's aforementioned misconduct renders the Reseller Agreement's limitation of liability provision unenforceable and void as against public policy because, among other reasons, Middesk acted in bad faith, with the reckless indifference to Baselayer's rights and the rights of its potential customers, and hindered and sabotaged Baselayer's imminent product launch for purposes of harming Baselayer's nascent business.

33.    As a result of Middesk's breach, Baselayer is entitled to an award of declaratory judgment, compensatory damages, consequential damages, liquidated damages, punitive damages, exemplary damages, nominal damages, pre- and post-judgment interest, its attorneys' fees pursuant to the terms of the Reseller Agreement, and such other relief that the Court deems appropriate.

## COUNT II
### (Tortious Interference of Contractual Relations)

34.    Defendants reallege and incorporate by reference each and every allegation contained in Amended Counterclaim Paragraphs 1 through 33 set forth above.

35.    Baselayer has an actual contractual and economic relationship with Customer 1, pursuant to which Customer 1 signed a three-year contract with Baselayer for Baselayer's Know Your Business ("KYB") product for approximately $800,000 per year.

36.    Baselayer had an expected contractual and economic relationship with Fora, pursuant to which Fora would, for two years, purchase several of Baselayer's products (including its KYB, litigation search, liens search, and portfolio monitoring products) for $300,000 per year.

37.    Middesk knows about Baselayer's relationship with Customer 1, as well as Baselayer's expected relationship with Fora, because Baselayer and Middesk competed head-to-head for the prospect's business.

38.    Upon information and belief, Middesk has interfered with Baselayer's actual contractual and economic relationship with Customer 1, as well as its expected economic and contractual relationship with Fora, by improper means, including, but not limited to, leveraging the allegations and misrepresentations in the lawsuit to encourage Customer 1 to cease doing business with Baselayer and end its relationship.

39.    Upon information and belief, Middesk contacted Customer 1 and Fora for the express purpose of damaging or destroying Baselayer's contractual relationship with its client, as well as potential contractual relationships with its prospective client.

40.    Middesk's actions were intentional, willful, malicious, and was undertaken with indifference to the rights and relationships of Baselayer, entitling Baselayer to an award of punitive damages.

41.     Baselayer has been damaged by Middesk's conduct, including, but not limited to, by losing out on a $600,000 two-year contract with Fora, and, as a result, Baselayer is entitled to an award of declaratory judgment, compensatory damages, punitive damages, attorneys' fees, and such other relief that the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Baselayer prays that judgment be entered in its favor and against Middesk as follows:

a.     Declare that Middesk breached its Reseller Agreement with Baselayer;

b.     Declare that Middesk interfered with Baselayer's contractual relations with both existing and prospective customers;

c.     Direct Middesk to pay all damages sustained by Baselayer arising from Middesk's breach of the Reseller Agreement and tortious interference, including, but not limited to, actual damages, compensatory damages, punitive damages, consequential damages, liquidated damages, exemplary damages, nominal damages, pre-judgment interest, and post-judgment interest;

d.     Award Baselayer its reasonable attorneys' fees pursuant to the terms of the Reseller Agreement; and

e.     Afford such other and further relief, including attorneys' fees and costs, as the Court deems appropriate.

Dated: July 1, 2025                          Respectfully submitted,

                                             WILSON SONSINI GOODRICH & ROSATI
                                             Professional Corporation


                                             s/ *Matt Gorman*
                                             Matt Gorman
                                             One Boston Place
                                             201 Washington Street, Suite 2000
                                             Boston, MA 02108
                                             Telephone: (212) 999-5800
                                             Email: mgorman@wsgr.com


                                             s/ *Heather G. Diles*
                                             Heather G. Diles
                                             1301 Avenue of the Americas, 40th Floor
                                             New York, NY 10019
                                             Telephone: (212) 999-5800
                                             Email: hdiles@wsgr.com

                                             *Attorneys for Defendants Osiris Ratings, Inc. d/b/a*
                                             *Baselayer, Jonathan Awad, and Timothy Hyde*