**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **MIDDESK, INC.,** | CIVIL ACTION NO.  1:25-cv-02677-PKC |
| **Plaintiff,** | |
| **v.** | |
| **OSIRIS RATINGS, INC., et al.** | |
| **Defendants.** | |

**PLAINTIFF MIDDESK, INC.'S ANSWER TO DEFENDANTS OSIRIS RATINGS, INC., JONATHAN AWAD, AND TIMOTHY HYDE'S AMENDED COUNTERCLAIMS TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND MONETARY DAMAGES**

Plaintiff Middesk, Inc. ("Middesk"), by and through its undersigned counsel, hereby answers the Amended Counterclaims asserted by Defendants Osiris Ratings, Inc. d/b/a Baselayer ("Baselayer" or the "Company"), Jonathan Awad ("Mr. Awad"), and Timothy Hyde ("Mr. Hyde") (collectively, "Defendants"), [Dkt. 101] ("Amended Counterclaims") and in doing so states and alleges as follows:

**AMENDED COUNTERCLAIMS**

1.      Baselayer and Plaintiff Middesk, Inc. ("Middesk") are both involved in the highly competitive industry of business identity verification (among other products that Baselayer provides).  Although the data sources powering the companies' respective products, and the design of the products themselves, are distinct from one another, the two companies regularly compete head-to-head for business.

**RESPONSE**:  **Middesk admits that "Baselayer and Middesk are both involved in the highly competitive industry of business identity verification (among other products that Baselayer provides)." Middesk denies the remaining allegations within Paragraph 1.**

2.      Middesk's actions since filing this lawsuit show that it is not interested in competing fairly with Baselayer; instead, it seeks to use the claims against Baselayer as a means of improperly disrupting Baselayer's actual and prospective customer relationships and winning business that it otherwise would not win if the parties were competing fairly.

**RESPONSE:  Denied.  By way of further explanation, Middesk's claims and causes of action are supported by admissions, sworn testimony under oath, and computer forensics.**

3.      Indeed, upon information and belief, on at least two occasions since the lawsuit was filed, Middesk has used improper means to try to take business away from Baselayer.  In the first instance, Middesk tried to disrupt Baselayer's biggest client relationship.  In the second instance, Middesk caused Baselayer to lose out on a $600,000 deal in a competitive bidding process that Baselayer had already won prior to Middesk's interference.

**RESPONSE**: **Denied.  By way of further explanation, Middesk's claims and causes of action are supported by admissions, sworn testimony under oath, and computer forensics.**

4.      This is not the first time Middesk has actively sought to damage Baselayer's business.

**RESPONSE: Denied.  By way of further explanation, Middesk's claims and causes of action are supported by admissions, sworn testimony under oath, and computer forensics.**

5.      Mr. Awad is a former employee of Middesk and, currently, Chief Executive Officer and Co-Founder of Baselayer.

**RESPONSE**:  **Admitted.**

6.      Mr. Awad founded and incorporated Baselayer in February 2023 after parting ways with Middesk. When Mr. Awad founded the Company, he intended to partner with Middesk to use Middesk's business identity data set (the "Identity Data Set") to obtain the information necessary to support Baselayer's real-time fraud consortium, and essentially resell Middesk to Baselayer's customers.  It is common practice for Middesk to partner with other companies in this manner and something Mr. Awad was responsible for while employed by Middesk.

**RESPONSE**:  **Denied.**

7.      On July 21, 2023, Baselayer and Middesk entered into an Integration & Reseller Agreement (the "Reseller Agreement"), which was executed by Middesk's CEO, Kyle Mack ("Mr. Mack"), and Mr. Awad (attached hereto as Exhibit A).   Under the Reseller Agreement, Baselayer would be a reseller of Middesk's Identity Data Set by using it as a source of information for its real-time fraud consortium.

**RESPONSE**: **Middesk admits that a Reseller Agreement was executed between Middesk and Baselayer. Middesk denies the remaining allegations and characterizations within Paragraph 7.**

8.      From July to mid-November 2023, Baselayer used Middesk's Identity Data Set to test and refine its product.  Baselayer relied solely on Middesk and its Identity Data Set to power the real-time fraud consortium because, without Middesk, Baselayer would have had no way to pull the necessary business identity information for its real-time fraud consortium.  In simple terms, Baselayer could not serve any customers at that time without Middesk's Identity Data Set.

**RESPONSE**: **Denied.**

9.    Baselayer relied on Middesk's promises and obligations under the Reseller Agreement to line up customers for when Baselayer was ready to launch its product. By mid-November 2023, Baselayer had three customers lined up to start using Baselayer's product and was expecting $50,000 to $60,000 in annual revenue to start coming in from these potential customers.

**RESPONSE**: **Denied.**

10.    Middesk had other ideas though once Baselayer launched its website in or about mid-November 2023.  Once the website was live, Middesk's Partnership Manager, Jared Gilmore ("Mr. Gilmore"), called Mr. Awad to inform him that after extensively viewing Baselayer's website, Mr. Mack, thought Middesk might want to eventually create its own version of such a product and, as a result, Middesk would no longer perform its obligations under the Reseller Agreement, and it would be terminating the parties' agreement.

**RESPONSE**: **Denied.**

11.    Pursuant to the terms of the Reseller Agreement, Middesk could terminate the contract without cause "upon no less than 90 days' prior written notice." Ex. A, § 8.3.3. Middesk terminated the agreement immediately and without any prior notice to Baselayer, thereby breaching the express terms of the contract.

**RESPONSE**: **Denied.**

12.    Because Middesk breached the Reseller Agreement and refused to perform its obligations thereunder, Baselayer was forced, in a short time frame, to find new sources for the business identity information Middesk was no longer providing.

**RESPONSE**: **Denied.**

4

13. After months of hard work, Baselayer was able to fill the data gap necessary to adequately provide the real-time fraud consortium to its customers, finally launching its product in March 2024. Baselayer was forced to spend hundreds of thousands of dollars to replace Middesk and lost at least $20,000 in revenue from potential customers who had to delay their contracts with Baselayer because it did not have access to Middesk's Identity Data Set.

**RESPONSE**: **Denied.**

14. Middesk filed the Complaint in this case on March 31, 2025.

**RESPONSE**: **Admitted.**

15. Very soon thereafter, upon information and belief, Mr. Mack, emailed Customer 1 with the clear intent to damage Baselayer's relationship with Customer 1 by informing them of the Complaint and the unfounded allegations therein, despite no evidence that Baselayer improperly used any of Middesk's trade secrets or that Middesk has improperly lost any business to Baselayer. Mr. Mack encouraged Customer 1 to terminate its relationship with Baselayer based on misrepresentations made about Mr. Awad and Baselayer as part of the lawsuit. Middesk has admitted to its communications with Customer 1 about Mr. Awad, Baselayer, the allegations in the Complaint, the claims asserted against Mr. Awad and Baselayer, and/or the fact that it filed this lawsuit.

**RESPONSE**: **Denied. By of way of further explanation, sworn testimony by Defendant Joshua Leviloff, admissions by Defendants, and computer forensics support the allegations within Middesk's Amended Complaint.**

16. Baselayer then sent Middesk a letter on April 3, 2025 putting Middesk on clear notice that any further attempts to use this lawsuit or misrepresentations about Baselayer and Mr.

Awad to tortiously interfere with Baselayer's actual or prospective business relations would result in counterclaims against Middesk.

**RESPONSE**: **Denied. By of way of further explanation, sworn testimony by Defendant Joshua Leviloff, admissions by Defendants, and computer forensics support the allegations within Middesk's Amended Complaint.**

17.     Nonetheless, within approximately two weeks thereafter, Middesk also improperly caused Baselayer to lose out on a significant deal with a prospective customer, Fora Financial ("Fora").

**RESPONSE**: **Denied. By of way of further explanation, sworn testimony by Defendant Joshua Leviloff, admissions by Defendants, and computer forensics support the allegations within Middesk's Amended Complaint.**

18.     On or about April 14, 2025, Fora informed Baselayer that it had won a head-to-head data test competition with Middesk for a two-year contract worth $300,000 annually. According to Fora, Baselayer performed at a higher match rate than Middesk on a few products and Baselayer had significantly higher coverage on another one of its products.

**RESPONSE**: **Denied.**

19.     While the final details of the written contract with Fora were being negotiated, upon information and belief, Middesk contacted Fora to relay misrepresentations about Mr. Awad and Baselayer.

**RESPONSE**: **Denied. By of way of further explanation, sworn testimony by Defendant Joshua Leviloff, admissions by Defendants, and computer forensics support the allegations within Middesk's Amended Complaint.**

20.    Approximately ten days later on or about April 24, 2025, and despite the fact that Fora had already confirmed that Baselayer won the contract, Fora told Baselayer that they had rethought their decision and chosen Middesk instead.

**RESPONSE**: **Denied.**

21.    Upon information and belief, Fora would not have rescinded its decision to choose Baselayer without improper interference by Middesk.

**RESPONSE**: **Denied.    By of way of further explanation, sworn testimony by Defendant Joshua Leviloff, admissions by Defendants, and computer forensics support the allegations within Middesk's Amended Complaint.**

22.    As a result of the conduct described above, Middesk has caused significant damage to Baselayer, including, but not limited to, the loss of business and damage to its reputation in an amount no less than $600,000.

**RESPONSE**: **Denied.**

23.    Middesk has admitted that it has had communications with at least eight other customers or prospective customers about Mr. Awad, Baselayer, the allegations in the Complaint, the claims asserted against Mr. Awad and Baselayer, and/or the fact that it filed this lawsuit.

**RESPONSE**: **Denied.    By of way of further explanation, sworn testimony by Defendant Joshua Leviloff, admissions by Defendants, and computer forensics support the allegations within Middesk's Amended Complaint.**

**COUNT I**
**(Breach of Contract)**

24.    Baselayer realleges and incorporates by reference each and every allegation contained in Amended Counterclaim Paragraphs 1 through 23 set forth above.

**RESPONSE**: **Denied.**

25.     The Reseller Agreement was a valid and enforceable contract between Baselayer and Middesk, though it included a draconian and unenforceable limitation on liability clause.

**RESPONSE**: **Middesk admits that the Reseller Agreement is valid. Middesk also admits that the Reseller Agreement includes a limitation of liability clause that makes Baselayer's counterclaims frivolous.    Middesk denies the remaining allegations and characterizations within Paragraph  25.**

26.     Baselayer performed all of its obligations under the Reseller Agreement while the contract was in effect.

**RESPONSE**:  **Denied.**

27.     Middesk breached the Reseller Agreement by failing to perform its obligation to act as a reseller and terminating the agreement immediately and without notice in or about mid-November 2023, despite a contractual obligation to provide ninety days' advance notice before terminating the contract without cause.

**RESPONSE**: **Denied.**

28.     Middesk did not have cause to terminate the contract under the terms set forth therein.

**RESPONSE**: **Denied.**

29.     Because Middesk declined to perform its obligations under the Reseller Agreement and terminated the contract without the requisite notice, Middesk left Baselayer, upon its imminent product launch, without the ability to run its real-time fraud consortium.

**RESPONSE**:  **Denied.**

30.     Baselayer was forced to delay its product launch by several months as a result, scrambling to find new sources for the identity information Middesk was no longer providing.

**RESPONSE**: **Denied.**

31.    Middesk's breach of the Reseller Agreement was the proximate cause of significant monetary damages to Baselayer, including, but not limited to, the loss of customer revenue and the costs of having to obtain new data sources to run its product.

**RESPONSE**:  **Denied.**

32.    Middesk's aforementioned misconduct renders the Reseller Agreement's limitation of liability provision unenforceable and void as against public policy because, among other reasons, Middesk acted in bad faith, with the reckless indifference to Baselayer's rights and the rights of its potential customers, and hindered and sabotaged Baselayer's imminent product launch for purposes of harming Baselayer's nascent business.

**RESPONSE**: **Denied. By way of further explanation, Middesk asserts that Defendants' only reasoning for bringing the baseless counterclaims is an attempt to distract from Defendants' own conduct.**

33.     As a result of Middesk's breach, Baselayer is entitled to an award of declaratory judgment, compensatory damages, consequential damages, liquidated damages, punitive damages, exemplary damages, nominal damages, pre- and post-judgment interest, its attorneys' fees pursuant to the terms of the Reseller Agreement, and such other relief that the Court deems appropriate.

**RESPONSE**: **Denied. By way of further explanation, Middesk asserts that Defendants' only reasoning for bringing the baseless counterclaims is an attempt to distract from Defendants' own conduct.**

## COUNT II
### (Tortious Interference of Contractual Relations)

34.    Defendants reallege and incorporate by reference each and every allegation contained in Amended Counterclaim Paragraphs 1 through 33 set forth above.

**RESPONSE**:  **Denied.**

35.    Baselayer has an actual contractual and economic relationship with Customer 1, pursuant to which Customer 1 signed a three-year contract with Baselayer for Baselayer's Know Your Business ("KYB") product for approximately $800,000 per year.

**RESPONSE**: **Denied.**

36.    Baselayer had an expected contractual and economic relationship with Fora, pursuant to which Fora would, for two years, purchase several of Baselayer's products (including its KYB, litigation search, liens search, and portfolio monitoring products) for $300,000 per year.

**RESPONSE**: **Denied.**

37.    Middesk knows about Baselayer's relationship with Customer 1, as well as Baselayer's expected relationship with Fora, because Baselayer and Middesk competed head-to-head for the prospect's business.

**RESPONSE**: **Denied. By way of further explanation, Middesk asserts that Defendants' only reasoning for bringing the baseless counterclaims is an attempt to distract from Defendants' own conduct.**

38.    Upon information and belief, Middesk has interfered with Baselayer's actual contractual and economic relationship with Customer 1, as well as its expected economic and contractual relationship with Fora, by improper means, including, but not limited to, leveraging the allegations and misrepresentations in the lawsuit to encourage Customer 1 to cease doing business with Baselayer and end its relationship.

**RESPONSE**: **Denied. By way of further explanation, Middesk asserts that Defendants' only reasoning for bringing the baseless counterclaims is an attempt to distract from Defendants' own conduct.**

39.    Upon information and belief, Middesk contacted Customer 1 and Fora for the express purpose of damaging or destroying Baselayer's contractual relationship with its client, as well as potential contractual relationships with its prospective client.

**RESPONSE**: **Denied. By way of further explanation, Middesk asserts that Defendants' only reasoning for bringing the baseless counterclaims is an attempt to distract from Defendants' own conduct.**

40.    Middesk's actions were intentional, willful, malicious, and was undertaken with indifference to the rights and relationships of Baselayer, entitling Baselayer to an award of punitive damages.

**RESPONSE**: **Denied. By way of further explanation, Middesk asserts that Defendants' only reasoning for bringing the baseless counterclaims is an attempt to distract from Defendants' own conduct.**

41.    Baselayer has been damaged by Middesk's conduct, including, but not limited to, by losing out on a $600,000 two-year contract with Fora, and, as a result, Baselayer is entitled to an award of declaratory judgment, compensatory damages, punitive damages, attorneys' fees, and such other relief that the Court deems appropriate.

**RESPONSE**: **Denied. By way of further explanation, Middesk asserts that Defendants' only reasoning for bringing the baseless counterclaims is an attempt to distract from Defendants' own conduct.**

## PRAYER FOR RELIEF

WHEREFORE, Baselayer prays that judgment be entered in its favor and against Middesk as follows:

a.      Declare that Middesk breached its Reseller Agreement with Baselayer;

b.      Declare that Middesk interfered with Baselayer's contractual relations with both existing and prospective customers;

c.      Direct Middesk to pay all damages sustained by Baselayer arising from Middesk's breach of the Reseller Agreement and tortious interference, including, but not limited to, actual damages, compensatory damages, punitive damages, consequential damages, liquidated damages, exemplary damages, nominal damages, pre-judgment interest, and post-judgment interest;

d.      Award Baselayer its reasonable attorneys' fees pursuant to the terms of the Reseller Agreement; and

e.      Afford such other and further relief, including attorneys' fees and costs, as the Court deems appropriate.

**RESPONSE**: **Denied. By way of further explanation, Middesk asserts that Defendants' only reasoning for bringing the baseless counterclaims is an attempt to distract from Defendants' own conduct.**

### STATEMENT OF INTENTION TO PURSUE BAD FAITH REMEDIES

Because Defendants believe that Middesk acted in bad faith within the meaning of the Defend Trade Secrets Act of 2016 in asserting a DTSA claim against Defendants, including, but not limited to, making allegations against Mr. Hyde which have no factual basis, Defendants reserve the right to seek all fees and costs permitted by this statute.

**RESPONSE: Denied. By of way of further explanation, sworn testimony by Defendant Joshua Leviloff, admissions by Defendants, and computer forensics support the allegations within Middesk's Amended Complaint.**

## AFFIRMATIVE DEFENSES

Plaintiff asserts the following affirmative defenses, without assuming the burden of proof as to any such defenses or portion thereunder, which would otherwise rest with Defendants.

## FIRST AFFIRMATIVE DEFENSE

All claims asserted in the Amended Counterclaims against Plaintiff should be dismissed for failure to state a claim for which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Defendants are barred from recovery, in whole or in part, by virtue of having brought their claims against Plaintiff in bad faith and as an attempt to distract from conduct Defendants have engaged in.

## THIRD AFFIRMATIVE DEFENSE

Defendants' claims against Plaintiff must be dismissed because Defendants have not suffered damages resulting from any conduct by Plaintiff.

## FOURTH AFFIRMATIVE DEFENSE

Defendants' claims against Plaintiff are barred by the doctrine of estoppel.

## FIFTH AFFIRMATIVE DEFENSE

Defendants' claims are barred, in whole or in part, by the clear limitations of liability within the Reseller Agreement.

## SIXTH AFFIRMATIVE DEFENSE

Defendants' claims against Plaintiff are barred by the doctrine of waiver.

## SEVENTH AFFIRMATIVE DEFENSE

Defendants' claims are barred, in whole or in part, by the litigation privilege.

## EIGHT AFFIRMATIVE DEFENSE

Defendants' claims are barred, in whole or in part, by failure to bring claims related to Reseller Agreement in the Parties' agreed-upon forum and venue.

## NINTH AFFIRMATIVE DEFENSE

Defendants' claims are barred, in whole or in part, because Defendants consented to the terms and conditions at issue.

## TENTH AFFIRMATIVE DEFENSE

Defendants' claims are barred, in whole or in part, by the doctrine of unclean hands because Defendants acted unethically and in bad faith.

## RESERVATION OF ADDITIONAL DEFENSES

Plaintiff reserves the right to assert additional affirmative and other defenses in the event that discovery or other analysis indicates that additional defenses are applicable.

Dated: July 18, 2025

/s/   *Justin K. Victor*
Jason D. Burns
Shira M. Poliak
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9294
Jason.Burns@gtlaw.com
Shira.Poliak@gtlaw.com

Justin K. Victor (*phv*)
Fredric J. Bold, Jr. (*phv*)
Rushton Pope (*phv*)
GREENBERG TRAURIG, LLP
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
(678) 553-2100

14

victorj@gtlaw.com
rick.bold@gtlaw.com
rushton.pope@gtlaw.com

*Counsel for Plaintiff Middesk, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2025, I electronically filed the foregoing **PLAINTIFF MIDDESK, INC.'S ANSWER TO DEFENDANTS OSIRIS RATINGS, INC., JONATHAN AWAD, AND TIMOTHY HYDE'S AMENDED COUNTERCLAIMS TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND MONETARY DAMAGES** with the Clerk of Court using the ECF system which will automatically send email notification of such filing to all parties of record.

Dated: July 18, 2025

*/s/   Justin K. Victor*

*Counsel for Plaintiff Middesk, Inc.*